**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| CORINNE BUTLER and ANDREA FITZSIMMONS, on behalf of themselves, individually, and on behalf of all others similarly situated, | ) ) ) ) | Civil Action No.:  Case No |
| | ) | |
| Plaintiffs, | ) ) | **CLASS ACTION COMPLAINT** |
| | ) | |
| v. | ) ) | |
| HOLY CROSS HOSPITAL ("HCH"), SINAI HEALTH SYSTEM ("SINAI"), WAYNE LERNER, DIANE HOWARD, JOHN R. BALL, M.D, BARBARA FAHEY, SATYA AHUJA, M.D., CHIA HUANG, M.D., LARRY MARGOLIS, SIVARAMAPRASAD TUMMALA, M.D., HOWARD BERMAN, GARY J. NIEDERPRUEM, SHARON ROSSMARK, YOGI AHULUWALIA, M.D., JOHN BENEVIDES, CHARLES BROWN, DANIEL CANTRELL, ALAN H. CHANNING, JOHN DANAHER, M.D., LESLIE DAVIS, MARK J. FRISCH, AIDA GIACHELLO, NEAL GOLDSTEIN, ALBERT GRACE, JONATHAN JONAS, GARY KELLER, KENNETH A. LUCCIONI, ROBERT MARKIN, GLORIA MATERRE, BRET MAXWELL, WAYNE PIERCE, MAURICE SCHWARTZ, ROBERT SHAKNO, BEN SOLDINGER, ALAN SOLOW, ROBERT STEELE, STEVE TOPEL, TERRY WHEAT, and JOHN and JANE DOES, each an individual, 1-40, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | **CLAIM OF UNCONSTITUTIONALITY** |
| Defendants. | | |

2143907.1

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................. 1

II.     JURISDICTION AND VENUE ........................................................................... 3

III.    PARTIES ............................................................................................................. 4

      A.    Plaintiffs ................................................................................................... 4

      B.    Defendants ............................................................................................... 6

      C.    Non-Parties ........................................................................................... 14

IV.    THE HCH PLAN .............................................................................................. 15

      1.    The HCH Pension Plan Promised that Employees Would Accrue Pension Benefits Based on Hours of Service............................................. 15

      2.    In 1993, HCH Wrongfully Claimed Church Plan Status, Which It Invoked Retroactively to 1975 .................................................................. 17

      3.    Although HCH Committed to Funding the Plan, HCH Discontinued All Contributions to the Plan in 2007, Causing the Plan to Become Underfunded ...................................................................... 18

      4.    HCH Merges With Sinai Only After Purporting to Transfer Sponsorship of the Plan to SSC .................................................................. 18

      5.    After Abandoning its Pension Plan Liabilities to the Detriment of Plan Participants, the HCH / Sinai Merger Closed .................................... 20

      6.    Despite Being Unlawfully Appointed Plan Sponsor, SSC Terminated the Underfunded Plan ............................................................. 20

      7.    Wrongful Termination of the Underfunded Plan Injured Plan Participants ............................................................................................... 22

      8.    The HCH Plan Is Not A Church Plan ....................................................... 23

      9.    In the Alternative, Even if HCH Somehow Qualified as a Church Plan under ERISA, the Church Plan Exemption Applied to the HCH Plan Would Violate the Establishment Clause of the First Amendment of the Constitution, and Therefore Is Void and Ineffective ............................................................................................... 24

V.     CLASS ALLEGATIONS ................................................................................. 25

      A.    Numerosity.............................................................................................. 25

      B.    Commonality........................................................................................... 26

      C.    Typicality ............................................................................................... 27

      D.    Adequacy ............................................................................................... 27

      E.    Rule 23(b)(1) Requirements .................................................................. 28

i

F.  Rule 23(b)(2) Requirements ........................................................................... 28

G.  Rule 23(b)(3) Requirements ........................................................................... 29

VI.  CAUSES OF ACTION ............................................................................................. 30

COUNT I ............................................................................................................................ 30

COUNT II ........................................................................................................................... 30

COUNT III .......................................................................................................................... 32

COUNT IV .......................................................................................................................... 33

COUNT V ........................................................................................................................... 37

COUNT VI .......................................................................................................................... 38

COUNT VII ......................................................................................................................... 39

COUNT VIII ....................................................................................................................... 40

COUNT IX .......................................................................................................................... 41

COUNT X ........................................................................................................................... 43

COUNT XI .......................................................................................................................... 47

COUNT XII ......................................................................................................................... 49

VII.  PRAYER FOR RELIEF .......................................................................................... 52

2143907.1

Plaintiffs Corinne Butler and Andrea Fitzsimmons, individually and on behalf of all those similarly situated, by and through their attorneys, hereby allege as follows:

## I.     INTRODUCTION

1.     This case concerns Defendants' failure to comply with the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1001 et seq., based on the wrongful claim that the Pension Plan for Employees of Holy Cross Hospital (the "Pension Plan" or the "Plan") qualified as a church plan.  It is brought as a class action on behalf of participants and beneficiaries of the Pension Plan, a defined benefit pension plan that was established, maintained, administered and sponsored by Holy Cross Hospital.

2.     Holy Cross Hospital ("HCH") is a non-profit healthcare corporation. HCH's Pension Plan does not qualify for ERISA's church-plan exemption because, as the Seventh Circuit has recently held, a church plan must be established by a church or a convention or association of churches, *Stapleton v. Advocate*, 817 F.3d 517 (7th Cir. Mar. 17, 2016), and HCH is not a church (or a convention or association of churches).  By wrongfully claiming church plan status, HCH acted in its own interest by attempting to circumvent legal protections available to Plan participants.

3.     HCH sought to benefit itself to the detriment of the Plan and its participants and beneficiaries in several ways, including but not limited to:  a) not adequately funding the Plan; b) not providing ERISA-required notices to participants and beneficiaries regarding the Plan underfunding and Plan freeze; and, c) not paying for federal pension insurance issued by the Pension Benefit Guarantee Corporation ("PBGC").

4.     HCH's conduct was even more egregious because it operated the Plan as an ERISA plan for nearly 19 years, until 1993, before retroactively claiming church-plan status and obtaining reimbursement for premiums that HCH had paid to PBGC.

5.     In August 2012, HCH signed a Letter of Intent to merge with Sinai Health System ("Sinai").   As a term and condition of the merger, HCH committed to abandoning the $31 million under-funded Plan and HCH's resultant liabilities to the Plan.

6.     In its effort to shed Plan liabilities, HCH attempted to transfer Plan sponsorship to the Sisters of Saint Casimir of Chicago ("SSC"), an entity with little or no assets, the day before the HCH / Sinai merger.   To achieve this, HCH improperly amended the definition of "employer" in the Plan to SSC.   This change to the Plan was invalid because HCH employees were not employees of SSC; HCH always operated independently from SSC; and HCH was governed by a separate Board of Directors.

7.     The purported transfer of Plan sponsorship also was invalid because it was an effort to avoid or evade Plan liability within five years of the Plan's termination.   Thus, Defendants HCH and Sinai remain liable to reimburse the Plan for the Plan's underfunding under ERISA § 4069, 29 U.S.C. § 1369.

8.     Within two years of the illegal transfer, SSC notified participants that the underfunded Plan would be terminated and benefits distributed in an amount drastically less than what had been promised by the Plan to its participants and beneficiaries based on the utilization of a termination discount rate of 13.5%.   A discount rate attempts to provide the "present value" of a future payment of money.   Notably, a 13.5% discount rate assumes that participants could invest their lump sum payment and generate investment returns of 13.5%, which is three times higher than the 4% discount rate that would have been applied under ERISA.

2143907.1

9.      Through use of this unreasonably high discount rate, the participants were paid, in some instances, less than half the amount they were entitled to receive in a lump sum distribution of their pension benefits.  This reduction in earned benefits was a prohibited cutback in violation of ERISA §204(g), 29 U.S.C. §1054(g).

10.     Thereafter, the Plan was not lawfully terminated pursuant to ERISA § 4041, 29 U.S.C. § 1341, which prohibits termination of plans with insufficient assets.

11.     In light of the invalid transfer and termination of the Plan, the Plan must be reinstated as an ERISA-covered plan, and Plan participants and their beneficiaries are entitled to receive the full amount of benefits that they were promised under the Plan by HCH.

12.     As alleged above, the HCH Plan is not a church plan because HCH is not a church. In fact, even if the law permitted certain non-church entities to establish church plans, the HCH Plan does not meet the various other requirements of a church plan. And if the HCH Plan did meet all the statutory requirements for church plan status, the statute would then be, to the extent, and as applied to HCH, an unconstitutional accommodation under the Establishment Clause of the First Amendment as is alleged in detail below.

13.     Plaintiffs accordingly seek an Order requiring Defendants HCH and Sinai to comply with ERISA and afford the Class all accrued benefits to which they are entitled and which they were promised under the terms of the Pension Plan and ERISA.

## II.      JURISDICTION AND VENUE

14.     **Subject Matter Jurisdiction.**  This Court has jurisdiction over Counts I through XIV pursuant to 28 U.S.C. § 1331 because this is a civil action arising under the laws of the United States and pursuant to ERISA § 502(e)(1) and § 4070 (c), 29 U.S.C. § 1132(e)(1) and § 1370(c), which provide for federal jurisdiction of actions brought under Title I and Title IV of ERISA.

15.     **Personal Jurisdiction.**  This Court has personal jurisdiction over all Defendants because ERISA provides for nationwide service of process.  ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2) and ERISA § 4070(c), 29 U.S.C. § 1370(c).  All of the Defendants are either residents of the United States or subject to service in the United States, and the Court therefore has personal jurisdiction over them.  The Court also has personal jurisdiction over Defendants pursuant to Fed. R. Civ. P. 4(k)(1)(A) because they would all be subject to suit before a court of general jurisdiction in Illinois as a result of HCH and Sinai being headquartered in, transacting business in, and having significant contacts with this District.

16.     **Venue.**  Venue is proper in this district pursuant to ERISA §§ 502(e)(2) and 4070(c), 29 U.S.C. § 1132(e)(2) and 1370(c), because (a) the Pension Plan was administered in this District, (b) some or all of the violations of ERISA took place in this District, and/or (c) HCH and Sinai may be found in this District.

## III.     PARTIES

### A.     Plaintiffs

17.     **Plaintiff Corinne Butler.**  Plaintiff Butler was employed as an occupational therapist at HCH from June 1971 until June 12, 1987.  In 2011, upon attaining age 65, Ms. Butler began drawing pension benefits in the form of a single life annuity of $530.40 per month.  When the Plan purportedly terminated, Ms. Butler was offered a lump sum distribution of $40,812.79, calculated using a discount rate that improperly assumed she could generate 13.5% per year on that amount.  The improper termination procedure effectively cut her promised pension benefits by more than half.  As a result, Ms. Butler declined to return a lump sum election form or otherwise authorize the improper benefit distribution.  Plaintiff Butler is a vested participant in the Pension Plan because she was eligible for a pension benefit under the Pension Plan, began receiving a pension benefit from the Pension Plan in 2011 at normal retirement age, and received

4

a substantially reduced pension benefit when the Pension Plan was improperly terminated. Additionally and alternatively, Plaintiff Butler has a colorable claim to additional benefits under the Plan and is a participant within the meaning of ERISA § 3(7), 29 U.S.C. § 1002(7), and is therefore entitled to maintain an action with respect to the Pension Plan pursuant to ERISA §§ 502(a)(1)(A) and (B), (a)(2), (a)(3), and (c)(1) and (3), 29 U.S.C. §§ 1132(a)(1)(A) and (B), (a)(2), (a)(3), and (c)(1) and (3). As a participant, Plaintiff Butler is also entitled to maintain an action with respect to the Pension Plan pursuant to ERISA § 4070, 29 U.S.C. § 1370.

18. **Plaintiff Andrea Fitzsimmons.** Plaintiff Fitzsimmons was employed as a nurse at HCH from October 5, 1987 until September 2005. When the Plan was wrongfully terminated, Ms. Fitzsimmons was offered a lump sum payment of $24,378.54, calculated using an improper discount rate that assumed she could invest her payment and yield 13.5% interest per year on her investments. The improper termination procedure effectively cut her promised pension benefits by more than half. As a result, Ms. Fitzsimmons declined to return a lump sum election form or otherwise authorize the improper benefit distribution. Plaintiff Fitzsimmons is a vested participant in the Pension Plan because she was eligible for a pension benefit under the Pension Plan and received a substantially reduced pension benefit when the Pension Plan was improperly terminated. Additionally and alternatively, Plaintiff Fitzsimmons has a colorable claim to additional benefits under the Plan and is a participant within the meaning of ERISA § 3(7), 29 U.S.C. § 1002(7), and is therefore entitled to maintain an action with respect to the Pension Plan pursuant to ERISA §§ 502(a)(1)(A) and (B), (a)(2), (a)(3), and (c)(1) and (3), 29 U.S.C. §§ 1132(a)(1)(A) and (B), (a)(2), (a)(3), and (c)(1) and (3). As a participant, Plaintiff Fitzsimmons is also entitled to maintain an action with respect to the Pension Plan pursuant to ERISA § 4070, 29 U.S.C. § 1370.

2143907.1

B.      **Defendants**

19.      **Defendant Holy Cross Hospital ("HCH").**  Defendant HCH is a 501(c)(3) non-profit corporation organized under the laws of Illinois.  HCH is headquartered in Chicago, Illinois.

20.      Defendant HCH is and was the employer of employees covered by the Pension Plan which HCH established in 1967 and maintained through January 15, 2013, when it improperly and ineffectively sought to evade liability for its underfunded Plan.  HCH is, therefore, the plan sponsor of the Pension Plan within the meaning of ERISA § 3(16)(B), 29 U.S.C. § 1002(16)(B).

21.      Defendant HCH, by and through its Director of Human Resources and/or the Holy Cross Hospital Pension Plan Administration Committee, also served as the plan administrator for the Pension Plan and was, at relevant times, the plan administrator of the Pension Plan within the meaning of ERISA §3 (16)(A), 29 U.S.C. § 1002(16)(A) and ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A). On information and belief, HCH appointed the members of the HCH Board of Directors.  As a result, at all relevant times, HCH was a fiduciary within the meaning of ERISA § (21), 29 U.S.C. § 1002(21).

22.      **Defendants Holy Cross Hospital Pension Plan Administration Committee and Defendants Johns and Jane Does 1-10, Members of the HCH Pension Committee ("HCH Pension Committee").**  On information and belief, Defendant HCH Pension Committee at relevant times had sole responsibility for administration of the Plan and the management of the Plan assets as designated by the terms of the Plan document, including the power to construe and interpret the Plan, authorize payment of benefits, prepare and distribute information regarding the Plan, receive, review, and report on the financial condition of the Plan, appoint, employ or designate individuals to assist in the administration of the Plan, and exercise any powers and

6

2143907.1

duties the HCH Board may delegate to the Committee. In light of the foregoing duties and responsibilities, the Defendant HCH Pension Committee was the administrator of the Plan within the meaning of ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A), a named fiduciary of the Plan within the meaning of ERISA § 402(a), 29 U.S.C. § 1102(a), as well as a de facto fiduciary within the meaning of ERISA § 3(21), 29 U.S.C. § 1002(21), in that Defendant HCH Pension Committee had and/or exercised discretionary authority or discretionary control with respect to management or administration of the Plan and exercised authority or control with respect to management or disposition of the Plan's assets. The as yet to be identified members of the HCH Pension Committee, who are collectively referred to as the "HCH Pension Committee Members," are named fictitiously, as Defendants John and Jane Does 1-10. Once their true identities are ascertained, Plaintiffs will seek to join them under their true names.

23. **Defendant Members of the HCH Board of Directors/Trustees ("HCH Board").** On information and belief, during the relevant period, the HCH Board had the power to appoint and remove and did appoint and remove the members of the HCH Pension Committee and other Plan fiduciaries. Under the terms of the Plan, the HCH Board also had the power to amend, modify, or terminate the Plan at any time. Following the merger with Sinai, the HCH Board, as appointed by Sinai, continued to manage the business and affairs of HCH. In light of the foregoing duties, responsibilities, and actions, the Members of the HCH Board are fiduciaries within the meaning of ERISA § 3(21), 29 U.S.C. § 1002(21), in that they exercised discretionary authority or discretionary control with respect to management of the Plan and exercised authority or control with respect to management or disposition of the Plan's assets through the appointment of the members of the HCH Pension Committee. On January 15, 2013, the HCH Board attempted to unlawfully transfer sponsorship of the Plan to SSC as a term and condition of

2143907.1

the HCH / Sinai merger which closed the following day. HCH's January 15, 2013 amendment to the Plan became effective retroactive to January 1, 2012. The Members of the HCH Board include, among others, the following individuals:

a) **Wayne Lerner** served as the HCH President and Chief Executive Officer from 2006 until April of 2013, and was a member of the HCH Board in 2011.

b) **Diane Howard** served as the Chair of the HCH Board in 2011.

c) **John R. Ball, M.D.** served as the Vice-Chair of the HCH Board in 2011.

d) **Barbara Fahey** served as a member of the HCH Board from 2005 until at least 2011.

e) **Satya Ahuja, M.D.** served as a member of the HCH Board in 2011.

f) **Chia Huang, M.D.** served as a member of the HCH Board in 2011.

g) **Larry Margolis** served as a member of the HCH Board in 2011.

h) **Sivaramaprasad Tummala, M.D.** served as a member of the HCH Board in 2011.

i) **Howard Berman** served as a member of the HCH Board in 2011. On information and belief, at that time Berman was also the chair of the HCH Board Finance Committee.

j) **Gary J. Niederpruem** served as the Chairman of the HCH Board in 2012 and 2013, and also served as the Chairman of the HCH/Sinai Board from at least 2013 until the present.

k) **Sharon Rossmark** served as the Vice-Chair of the HCH Board in 2012 and 2013, and also served as a member of the HCH/Sinai Board from at least 2012 until 2013.

l)      **Yogi Ahluwalia, M.D.** served as a member of the HCH Board in 2012 and 2013, and also served as a member of the HCH/Sinai Board at least as of 2012 until 2013.

m)      **John Benevides** served as a member of the HCH Board in 2013, and also served as a member of the HCH/Sinai Board at least as of 2013 until at least 2015.

n)      **Charles Brown** served as a member of the HCH Board in 2012 and also served as a member of the HCH/Sinai Board in at least 2012.

o)      **Daniel Cantrell** served as a member of the HCH Board in 2012 and also served as a member of the HCH/Sinai Board in at least 2012.

p)      **Alan H. Channing** served as the President and Chief Executive Officer of Sinai Health System from 2004 until 2014, and was a member of the HCH Board in 2012. Channing also served as a member of the HCH/Sinai Board in at least 2012.

q)      **John Danaher M.D.** served as a member of the HCH Board in 2012 and 2013, and also served as a member of the HCH/Sinai Board at least as of 2012 until 2013.

r)      **Leslie Davis** served as a member of the HCH Board in 2012 and 2013, and also served as a member of the HCH/Sinai Board at least as of 2012 until at least 2015.

s)      **Mark J. Frisch** served as a member of the HCH Board in 2012 and 2013, and also served as a member of the HCH/Sinai Board at least as of 2012 until at least 2015.

t)      **Aida Giachello** served as a member of the HCH Board in 2012 and 2013, and also served as a member of the HCH/Sinai Board at least as of 2012 until at least 2015.

9

u) **Neal Goldstein** served as a member of the HCH Board in 2012 and also served as a member of the HCH/Sinai Board in at least 2012.

v) **Albert Grace** served as a member of the HCH Board in 2012 and 2013, and also served as a member of the HCH/Sinai Board at least as of 2012 until at least 2015.

w) **Jonathan Jonas** served as a member of the HCH Board in 2012 and 2013, and also served as a member of the HCH/Sinai Board at least as of 2012 until at least 2015.

x) **Gary Keller** served as a member of the HCH Board in 2012 and 2013, and also served as a member of the HCH/Sinai Board at least as of 2012 until at least 2015.

y) **Kenneth A. Luccioni** served on the HCH Board and as the HCH Corporate Treasurer in at least 2012 and 2013, and also served as a member of the HCH/Sinai Board from at least 2012 until at least 2015.

z) **Robert Markin** served as a member of the HCH Board in 2012 and 2013, and also served as a member of the HCH/Sinai Board at least as of 2012 until at least 2015.

aa) **Gloria Materre** served as a member of the HCH Board in 2012 and 2013, and also served as a member of the HCH/Sinai Board at least as of 2012 until at least 2013.

bb) **Bret Maxwell** served as a member of the HCH Board in 2012 and 2013, and also served as a member of the HCH/Sinai Board at least as of 2012 until at least 2013.

cc) **Wayne Pierce** served as a member of the HCH Board in 2012 and 2013, and also served as a member of the HCH/Sinai Board at least as of 2012 until at least 2015.

dd) **Maurice Schwartz** served as a member of the HCH Board in 2012 and 2013, and also served as a member of the HCH/Sinai Board at least as of 2012 until at least 2013.

ee) **Robert Shakno** served as a member of the HCH Board in 2012 and 2013, and also served as a member of the HCH/Sinai Board at least as of 2012 until at least 2015.

ff) **Ben Soldinger** served as a member of the HCH Board in 2012 and 2013, and also served as a member of the HCH/Sinai Board at least as of 2012 until at least 2013.

gg) **Alan Solow** served as a member of the HCH Board in 2012 and also served as a member of the HCH/Sinai Board in at least 2012.

hh) **Robert Steele** served as a member of the HCH Board in 2012 and 2013, and also served as a member of the HCH/Sinai Board at least as of 2012 until at least 2015.

ii) **Steve Topel** served as a member of the HCH Board in 2012 and 2013, and also served as a member of the HCH/Sinai Board at least as of 2012 until 2015.

jj) **Terry Wheat** served as a member of the HCH Board in 2012 and 2013, and also served as a member of the HCH/Sinai Board at least as of 2012 until at least 2015.

11

24. **Defendants John and Jane Does 11-20.** Defendants John and Jane Does 11-20 are individuals who, through discovery, are found to have fiduciary responsibilities with respect to the Pension Plan and are fiduciaries within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A). These individuals will be added by name as Defendants in this action upon motion by Plaintiffs at an appropriate time.

25. Defendant Members of the HCH Board, and John and Jane Does 1-20, are referred to herein collectively as the "Individual Defendants."

26. **Defendant Sinai Health System ("Sinai").** Defendant Sinai is a 501(c)(3) non-profit corporation organized under Illinois law and headquartered in Chicago, Illinois. Effective January 16, 2013, Defendant Sinai became the sole corporate member of HCH. Defendant Sinai has the authority to appoint the HCH Board, which governs and manages the business and affairs of HCH.

27. Sinai is the sole corporate member of HCH, and the following other affiliated entities: Mount Sinai Hospital Medical Center of Chicago and Subsidiaries, Schwab Rehabilitation Hospital & Care Network, Mount Sinai Community Foundation d/b/a Sinai Medical Group, and Sinai Community Institute (collectively the "Affiliated Entities").

28. Sinai operates a network of health care service providers to residents of the Chicago, Illinois metropolitan area through its Affiliated Entities, over which Sinai has direct control. The Affiliated Entities provide healthcare and social services, including behavioral health, therapeutic, diagnostic, rehabilitation, and wellness and nutrition educational services.

29. Sinai provides the Affiliated Entities, including HCH, with all program and administrative support for their operations. As the sole corporate member of the Affiliated

12

Entities, Sinai appoints the boards, officers and key employees of the Affiliated Entities, including HCH.

30.     Pursuant to criteria set forth in the Internal Revenue Code and elaborated upon in the Treasury Department's regulations, a controlled group includes:

[O]ne or more chains of organizations conducting trades or businesses connected through ownership of a controlling interest with a common parent organization if –

> (i)     A controlling interest in each of the organizations, except the common parent organization, is owned (directly and with the application of § 1.414(c)-4(b)(1), relating to options) by one or more of the other organizations; and

> (ii)    The common parent organization owns (directly and with the application of § 1.414(c)-4(b)(1), relating to options) a controlling interest in at least one of the other organizations, excluding, in computing such controlling interest, any direct ownership interest by such other organizations.

26 C.F.R. § 1.414(c)-2(b).

31.     A "controlling interest" is defined as ownership of 80% or more of the voting stock or stock value of a corporation, or ownership of an 80% or greater profits or capital interest in a partnership.  See 26 C.F.R. §§ 1.414(c)-2(b)(2)(i)(A) & (C).

32.     Upon information and belief, under the foregoing test, Defendant Sinai holds a controlling interest in Defendant HCH and thus is a member of the controlled group for Defendant HCH (under ERISA § 4001(a)(14), 29 U.S.C. § 1301(a)(14), and implementing regulations at 26 C.F.R. § 1.414(c)-2(b)). As a member of HCH's controlled group, Defendant

13

Sinai is jointly and  severally liable for satisfying "the minimum funding standard applicable to the plan for any plan year," pursuant to ERISA § 302(a) and § 302(b)(2), as well as jointly and severally liable for "the total amount of the unfunded benefit liabilities (as of the termination date) to all participants and beneficiaries under the plan, together with interest" under ERISA §§ 4062(a), 4062(b)(1)(A), 29 U.S.C. §§1362(a), 1362(b)(1)(A).

33.     Sinai executed a Letter of Intent to merge with HCH on August 10, 2012.  The Letter of Intent stipulated that HCH would transfer sponsorship of the Pension Plan to SSC prior to the merger.

34.     Pursuant to the Letter of Intent, following the merger of HCH and Sinai effective on January 16, 2013, Sinai became responsible for all of HCH's liabilities.

### C.     Non-Parties

35.     **Non-Party Sisters of Saint Casimir of Chicago ("SSC").**  Non-Party SSC is a 501(c)(3) non-profit corporation organized under Illinois law, and headquartered in Chicago, Illinois.  On or about January 15, 2013, SSC purportedly became successor "Sponsor of the Plan" to HCH through an invalid, void, and ineffective attempt to define SSC as the "Employer" under the terms of the amended Plan.  On information and belief, as of January 1, 2012, SSC served as the plan administrator for the Pension Plan within the meaning of ERISA § 3(16)(A), 29 U.S.C. § 1002(16)(A) and ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).

36.     **Non-Party Pension Committee of the Board of Directors of the Sisters of Saint Casimir of Chicago ("SSC Pension Committee").**  Pursuant to the Pension Plan for Employees of Holy Cross Hospital, as amended and restated generally effective as of January 1, 2012, the SSC Pension Committee was improperly designated Plan Administrator on January 15, 2013 and purported to have  sole responsibility for administration of the Plan and the management of the Plan assets.

14

## IV.     THE HCH PLAN

37.     HCH established the Pension Plan, effective as of January 1, 1967.  The Pension Plan, by its express terms and surrounding circumstances, promised to provide retirement income to HCH employees.  As such, the Pension Plan meets the definition of "employee pension benefit plan" within the meaning of ERISA § 3(2)(A), 29 U.S.C. § 1002(2)(A).

38.     The Pension Plan is a "defined benefit" pension plan within the meaning of ERISA § 3(35), 29 U.S.C. § 1002(35).

39.     The Plan has been fully frozen since June 1, 2011.

40.     As a result of the freeze, Plan participants were not permitted to accrue additional benefits under the Plan after June 1, 2011.  However, Plaintiffs and all other similarly situated members of the Class who were participants in the Plan at the time the Plan was frozen remained entitled to receive accrued pension benefits as defined under the Plan based on service they performed prior to June 1, 2011.

### 1.     The HCH Pension Plan Promised that Employees Would Accrue Pension Benefits Based on Hours of Service.

41.     As the employer of employees covered by the Plan, HCH was, at all relevant times, the sponsor of the Plan within the meaning of ERISA § 3(16)(B), 29 U.S.C. § 1002(16)(B).

42.     HCH promoted the Plan as a major portion of its employees' benefit program, provided by HCH in appreciation for employees' years of service.  Plan participants were told that "[t]he cost of the plan is paid entirely by the hospital."

43.      At least as late as December of 1990, HCH advised Plan participants that: "participants in the plan and their beneficiaries have certain rights and protections under ERISA."

15

44.      Under the terms of the Plan, an employee became eligible to participate in the Plan after performing 1,000 hours of service.  Once eligible to participate in the Plan, an employee earned one year of Credited Service for each calendar year in which the employee worked 1,000 hours or more.

45.      Under the Plan, an employee with five years of Vesting Service became vested in the Plan and was entitled to begin receiving a normal monthly retirement benefit at the age of 65, or, if the employee had 10 years of Vesting Service and so elected, a reduced monthly benefit at the age of 55.  The normal monthly benefits under the Plan are determined based upon a formula which multiplies .75% of a participant's Final Average Pay up to the Compensation Breakpoint (calculated yearly based on the percentage that the maximum taxable Social Security wage base increases) plus 1.5% of Final Average Pay above the Compensation Breakpoint by the number of years of Credited Service, up to a maximum of 30 years.  Thus the more years of Credited Service a participant worked and the higher the participant's Average Monthly Earnings, the greater the benefit he or she would receive under the Plan.

46.      HCH promised Plan participants, "as a result of satisfying the vesting service requirements of [the Plan] prior to your termination of employment, you are entitled to a monthly deferred vested pension benefit under the Plan, commencing at your normal requirement date."

47.      HCH also informed Plan participants that "if the plan is changed, the benefit you have earned up to that time will not be reduced by the plan's modification."

48.      The Plan allowed for lump sum, or single sum, distributions of benefits.  Under the terms of the Plan, up until January 1, 2012, single sum cash distributions of pension benefits were calculated using a 7% interest rate assumption to discount the lump sum to present value.

16

49.     However, effective January 1, 2012, HCH amended the Plan so that single sum cash distributions of pension benefits would be calculated using a 7.5% interest rate assumption, "or any such other rate as is determined to be appropriate in the circumstances by the Plan Administrator."

**2.      In 1993, HCH Wrongfully Claimed Church Plan Status, Which It Invoked Retroactively to 1975**

50.     On information and belief, through at least some part of 1993, HCH assured participants that the Pension Plan was subject to ERISA, which offered participants certain rights and protections, and that the benefits under the Plan were guaranteed by the PBGC.

51.     In 1993, Defendant HCH sought a private letter ruling from the Internal Revenue Service that the Pension Plan qualified as a "church plan."

52.     Defendant HCH took this action for its own benefit and to the detriment of Plan participants.  By improperly claiming church plan status, the Plan was able to disregard many of the protections afforded to participants by ERISA, including minimum funding requirements and the obligation to pay premiums to the PBGC to guarantee a certain level of benefits in the event the Plan is terminated in an underfunded state.

53.     In a letter dated December 22, 1993, the IRS issued a private letter ruling stating that, based entirely on HCH's representations, the Pension Plan qualified as a church plan retroactively as of March 1, 1974.

54.     Upon information and belief, HCH did not share its receipt of the private IRS letter ruling with Plan participants.  Neither Plaintiffs nor other participants of the Plan were informed that the Plan was not being administered in accordance with the requirements of ERISA, including ERISA's funding requirements, until after they learned that the Plan would be terminated in November 2013.

17

55.     Upon information and belief, after wrongfully claiming church plan status, HCH sought a refund of all the premium payments it had made to the PBGC through the life of the Plan.

56.     On information and belief, Plan Participants were not informed that the Pension Plan was no longer insured until November 2013, when they learned that the Plan would be terminated.

### 3. Although HCH Committed to Funding the Plan, HCH Discontinued All Contributions to the Plan in 2007, Causing the Plan to Become Underfunded

57.     On information and belief, for decades the Summary Plan Description ("SPD") distributed to Plan participants informed participants that all assets of the Pension Plan would be held in a trust fund used to pay benefits and that contributions would be made to the Plan based on the advice of actuaries taking into account the cost of benefits, the available funds, and the requirements of federal law.

58.     To adequately fund the Plan, HCH was required to establish a funding policy and method so that the Plan trust fund's assets were sufficient to pay accrued benefits. Under the terms of the Plan, HCH was required to finance the benefits under the Plan by entering into one or more Trust Agreements or insurance contracts to be held under a Trust Agreement.

59.     On information and belief, HCH did not establish or implement a Funding Policy to assure that the Employer's contributions and the Plan's investment performance were adequate to meet the expected benefit payments.

60.     The Plan continued to be underfunded from at least 2007.

### 4. HCH Merges With Sinai Only After Purporting to Transfer Sponsorship of the Plan to SSC

18

61.     On information and belief, sometime in 2011 HCH initiated negotiations with Sinai to join Sinai Health Systems. SSC's involvement was limited to finding a merger partner that would protect HCH's Catholic identity.

62.     On or about August 10, 2012, HCH, Sinai, and SSC signed a Letter of Intent ("LOI") evidencing the intent to merge HCH with Sinai.

63.     On or about September 10, 2012, Sinai and HCH filed an Application for Permit with the Illinois Health Facilities and Services Review Board.  The Application represented that HCH operated independently from SSC and was governed by a separate board of directors. The Application identified the merger as being "limited to a change of the control and ownership of Holy Cross Hospital."  Pursuant to the LOI, "the business and affairs of HCH shall be governed and managed by the HCH Board of Directors ("HCH Board") as appointed by Sinai."

64.     Under the terms of the LOI, no consideration, or $0, was to be paid by Sinai for the merger with HCH and acquisition of HCH's $18.65 million in assets.

65.     Under the terms of the LOI, Sinai planned to retain and utilize the then-current HCH and Sinai workforce.  Sinai also committed to operating HCH as a licensed hospital, using the physical building and medical equipment in operating HCH, and continuing to "provide the HCH services offered as of the Closing Date."

66.     The LOI acknowledged that HCH maintained a frozen defined benefit pension plan for certain of its current and former employees.  As a term and condition of the LOI, at the close of the Transaction, HCH committed to transferring sponsorship of the Pension Plan to SSC, or SSC's designee.

67.     Thereafter, HCH purported to amend the Plan to make SSC the successor "Sponsor of the Plan" to HCH and to re-define SSC as the "Employer" under the terms of the amended Plan.  HCH had previously been defined as the "Employer" in the Plan document.

68.     SSC could not act as the Plan sponsor or the "Employer" because it was not ever in fact the employer of the HCH employees who participated in the Plan.  Without the employer-employee relationship required under ERISA to create an employee benefit plan, the purported Plan amendment, intended to be effective on or about January 15, 2013, was invalid, void, and ineffective.

**5.      After Abandoning its Pension Plan Liabilities to the Detriment of Plan Participants, the HCH / Sinai Merger Closed**

69.     On information and belief, Sinai's merger with HCH became effective on or about January 16, 2013 ("January 2013 Transaction").  This occurred one day after the purported Plan amendment attempting to re-define SSC as the Employer and Plan sponsor, and thereby shift all Plan liabilities away from HCH or Sinai.

70.     Following the January 2013 Transaction which transferred ownership and control of HCH to Sinai, Sinai became the sole corporate member of HCH.  The business and affairs of HCH were, and are governed and managed by the HCH Board of Directors, as appointed by Sinai.

71.     After the merger of HCH with Sinai, HCH continues doing business as HCH, employs most of the same employees who had previously been employed by HCH, and continues to use the same buildings and medical equipment to provide the services HCH previously offered prior to the merger.

**6.      Despite Being Unlawfully Appointed Plan Sponsor, SSC Terminated the Underfunded Plan**

72.     By letter dated November 1, 2013, SSC informed Plan participants that, as part of the transfer of HCH to Sinai, SSC assumed oversight of the Pension Plan.  On information and belief, that was the first time that participants were made aware of the Plan's wrongful claim that it was a church plan.

73.     The letter further informed participants that at some point in the near future they would be given the value of their entire Plan benefit in the form of a single sum cash distribution, and that each participant currently receiving benefits would be given a single payment representing the value of all remaining monthly benefits.

74.     By letter dated January 31, 2014, SSC submitted a request to the IRS for a determination letter regarding its intention to terminate the Plan and pay out all pension benefits to participants in the form of lump sum payments.

75.     By letter dated May 20, 2015, SSC informed Plan participants that the IRS had issued a favorable determination letter, and SSC would begin to wind down the Plan.

76.     In another letter, dated June 26, 2015, SSC informed Plan participants that lump sum payments would be given (1) to replace the recurring monthly annuity payments that would otherwise have been paid out based on the form of annuity previously elected by the participant, or (2) the single life monthly annuity beginning at age sixty-five for participants who had not commenced benefits.  The June 26, 2015 letter from SSC to Plan participants also informed them that the lump sum would be based on (1) the frozen normal retirement benefit under the Plan at age 65, (2) life expectancy determined under the Plan's actuarial assumptions, and (3) the amount of funds available in the Plan's trust (which was currently underfunded).

2143907.1

77.     By letter dated August 31, 2015, SSC sent an individual Plan Termination Package and Election Form to each participant of the Plan and informed participants that the discount rate for calculating the lump sum benefit would be 13.5%.

78.     The 13.5% interest rate was used even though HCH had previously told participants that any benefit they had earned would not be reduced by subsequent amendments to the Plan.  SSC claimed that if lower rate had been used, the Plan assets would not have been sufficient to pay out all of the lump sum benefits.

### 7.     Wrongful Termination of the Underfunded Plan Injured Plan Participants

79.     Plaintiff Butler, who worked as an occupational therapist at HCH for sixteen years, relied upon HCH's pension promise and carefully planned and made critical financial decisions in consideration of the retirement benefits she had accrued in her years of service at HCH.  Butler, who raised two children alone, had hoped to be able to retire at age 70.  She believed that she would be able to do so with the assistance of her HCH Pension Plan income and other savings.

80.     When Butler received her lump sum calculation from HCH in August of 2015, she believed that her lump sum was calculated improperly.  For that reason, she declined to return a lump sum election form or otherwise authorize the improper benefit distribution.

81.     Despite Butler's refusal to accept the lump sum payment that was offered to her, HCH nonetheless deposited an incorrect and inadequate lump sum benefit of $40,812.79 into an individual retirement account selected by SSC.  This lump sum benefit is less than half of the benefit which Butler was entitled to receive under the terms of the Plan and under ERISA.

82.     Because of the drastic reduction in her HCH pension benefits, Butler now believes she will be unable to retire when she turns 70 this year.

83.     Plaintiff Fitzsimmons, who worked as a nurse at HCH for eighteen years, planned her retirement carefully around and based financial decisions upon, among other things, the pension benefits promised by HCH.  Upon the HCH / Sinai merger, Fitzsimmons was told by HCH management that the HCH pension was secure.

84.     When Fitzsimmons received her lump sum calculation from HCH in August of 2015, she believed that her lump sum was calculated improperly.  For that reason, she declined to return a lump sum election form or otherwise authorize the improper benefit distribution.

85.     Despite her refusal to accept the lump sum distribution offered to her, HCH nonetheless deposited an incorrect and inadequate lump sum benefit of $24,378.54 into an individual retirement account selected by SSC.  This lump sum benefit is less than half of the benefit which Fitzsimmons was entitled to receive under the terms of the Plan and under ERISA.

### 8.     The HCH Plan Is Not A Church Plan

86.     HCH does not qualify for the church plan exemption because the HCH Plan was not established by a church or a convention or association of churches.  *Stapleton v. Advocate Health Care Network,* 817 F.3d 517 (7th Cir. 2016).

87.     HCH is not and never has been a church.

88.     HCH is not and never has been a convention of churches or an association of churches.

89.     HCH is not and never has been owned or operated by a church.

90.     The principal purpose of HCH is to operate a hospital.

91.     On information and belief, HCH does not receive and has never received funding from a church.

92.     On information and belief, HCH has not claimed at any time that a church has any liability for HCH's debts or obligations.

23

2143907.1

**9. In the Alternative, Even if HCH Somehow Qualified as a Church Plan under ERISA, the Church Plan Exemption Applied to the HCH Plan Would Violate the Establishment Clause of the First Amendment of the Constitution, and Therefore Is Void and Ineffective**

93. The Church Plan exemption is an accommodation for churches that establish and maintain pension plans, and it allows such plans to be exempt from ERISA.

94. The Establishment Clause guards against the establishment of religion by the government. The government "establishes religion" when, among other activities, it privileges those with religious beliefs (e.g. exempts them from neutral regulations) at the expense of non-adherents and/or while imposing legal and other burdens on nonmembers.

95. Extension of the Church Plan exemption to HCH, a non-church entity, would privilege HCH for its claimed faith at the expense of its employees, who are told that their faith is not relevant to their employment, yet who are then denied the benefit of insured, funded pensions, as well as many other important ERISA protections.

96. Similarly, HCH, a non-church entity, would have a privileged economic advantage over its competitors in the commercial arena it has chosen, based solely on HCH's claimed religious beliefs. This too is prohibited by the Establishment Clause.

97. Simply put, when government provides a regulatory exemption "exclusively to religious organizations that is not required by the Free Exercise Clause and that . . . burdens nonbeneficiaries," it has endorsed religion in violation of the Establishment Clause. *See, e.g., Tex. Monthly, Inc. v. Bullock*, 489 U.S. 1, 15, 18 n. 8 (1989) (plurality opinion).

98. Extension of the Church Plan accommodation to HCH, which is not a church, would violate the Establishment Clause.

99. Under Establishment Clause case law, an exemption from ERISA for HCH would be permissible only if the exemption was necessary to further the stated purposes of the

24

exemption (which was to ensure the confidentiality of a church's books and records), or it relieved HCH of some genuine religious burden imposed by ERISA, or the exemption avoided government entanglement with religious beliefs. None of these requirements for granting the exemption are present here. Moreover, granting HCH an exemption from ERISA would harm HCH workers and place HCH's competitors at an economic disadvantage, and in fact create more, not less, government entanglement with HCH's alleged religious beliefs than would compliance with ERISA.

100.    Accordingly, as alleged in more detail below, if the Church Plan exemption did extend to HCH, it would be void and ineffective and HCH would still be subject to ERISA.

## V.    CLASS ALLEGATIONS

101.    Plaintiffs bring this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and the following putative class of persons similarly situated:

> All participants or beneficiaries of the Pension Plan who suffered a reduction in accrued benefits under the Plan at the time the Plan was terminated. Excluded from the Class are any high level executives at HCH and/or SSC or any employees who had responsibility for or involvement in the administration of the Plan or who are subsequently determined to be fiduciaries of the Pension Plan, including the Individual Defendants.

### A.    Numerosity

102.    On information and belief, as of December 2015 the Plan had approximately 2,000 participants. On information and belief, as a result of the underfunding of the Pension Plan, all of the participants of the Pension Plan and their beneficiaries suffered reductions in pension benefits under the Plan at the time the Pension Plan was terminated. As all of the participants and beneficiaries are members of the Class, the Class is so numerous that joinder of all members is impracticable.

2143907.1

B.      **Commonality**

103.     The issues regarding liability in this case present common questions of law and fact, with answers that are common to all members of the Class, including:  (1) whether the Pension Plan is subject to ERISA, and, if so; (2) whether the fiduciaries of the Pension Plan have failed to administer and failed to enforce the funding obligations of the Plan in accordance with ERISA; (3) whether the fiduciaries of the Plan improperly terminated the Plan without complying with the requirements of ERISA; (4) whether as a consequence of the failure to properly terminate the Plan, HCH continues to be liable for payment of unfunded benefits due to the participants under the Plan and unpaid minimum funding contributions, 29 U.S.C. § 1362, 29 U.S.C. § 1364; (5) and, whether Sinai, as the sole corporate member of HCH is part of a controlled group that is jointly and severally liable, along with HCH, for any unfunded benefits under the Plan

104.     The issues regarding the relief sought are also common to the members of the Class as the relief will consist of:  (1) a declaration that the Pension Plan is an ERISA-covered plan; (2) a declaration that the Plan was not properly terminated under ERISA and therefore continues to be an ERISA-covered plan; (3) an order reforming the Pension Plan, and requiring that the Pension Plan be funded, administered, and terminated in compliance with ERISA; (4) a declaration that HCH is obligated to comply with the terms of the Plan and provide each member of the Class the full amount of benefits provided under the Plan; (5) a declaration that Sinai, as the sole corporate member of HCH, is part of a controlled group that is jointly and severally liable along with HCH for any unfunded benefits under the Plan; and (6) an order requiring HCH to pay civil penalties to the Class in the same statutory daily amount for each member of the Class.

### C.      Typicality

105.    Plaintiffs' claims are typical of the claims of the other members of the Class because their claims arise from the same event, practice and/or course of conduct, namely Defendants' failure to maintain the Plan in accordance with ERISA.  Plaintiffs' claims are also typical because all Class members are similarly affected by Defendants' wrongful conduct.

106.    Plaintiffs' claims are also typical of the claims of the other members of the Class because, to the extent Plaintiffs seek equitable relief, it will affect all Class members equally. Specifically, the equitable relief sought consists primarily of:  (i) a declaration that the Pension Plan is an ERISA-covered plan that must comply with the administration and funding requirements of ERISA; (ii) a declaration that the Pension Plan was not terminated in compliance with ERISA and therefore continues to be an ERISA-covered plan; (iii) a declaration that HCH is obligated to comply with the terms of the Plan and provide each member of the Class the full amount of benefits provided under the Plan, unpaid minimum funding contributions, and termination premiums; and (iv) a declaration that Sinai, as the sole corporate member of HCH, is part of a controlled group that is jointly and severally liable along with HCH, for any unfunded benefits under the Plan.  In addition, to the extent Plaintiffs seek monetary relief, it is for civil fines to the Class in the same statutory daily amount for each member of the Class.

107.    Neither HCH, the HCH Pension Committee, Sinai, nor any of the Individual Defendants have any defenses unique to Plaintiffs' claims that would make Plaintiffs' claims atypical of the remainder of the Class.

### D.      Adequacy

108.    Plaintiffs will fairly and adequately represent and protect the interests of all members of the Class.

2143907.1

109.    Plaintiffs do not have any interests antagonistic to or in conflict with the interests of the Class.

110.    Defendants HCH, the HCH Pension Committee, Sinai, and the Individual Defendants have no unique defenses against the Plaintiffs that would interfere with Plaintiffs' representation of the Class.

111.    Plaintiffs have engaged counsel with extensive experience prosecuting class actions in general and ERISA class actions in particular.

**E.      Rule 23(b)(1) Requirements**

112.    The requirements of Rule 23(b)(1)(A) are satisfied because prosecution of separate actions by the members of the Class would create a risk of establishing incompatible standards of conduct for Defendants.

113.    The requirements of Rule 23(b)(1)(B) are satisfied because adjudications of these claims by individual members of the Class would, as a practical matter, be dispositive of the interests of the other members not parties to the actions, or substantially impair or impede the ability of other members of the Class to protect their interests.

**F.      Rule 23(b)(2) Requirements**

114.    Class action status is also warranted under Rule 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive, declaratory, or other appropriate equitable relief with respect to the Class as a whole.

2143907.1

### G. Rule 23(b)(3) Requirements

115.    Alternatively, if the Class is not certified under Rule 23(b)(1) or (b)(2) then certification under (b)(3) is appropriate because questions of law or fact common to members of the Class predominate over any questions affecting only individual members.  The common issues of law or fact that predominate over any questions affecting only individual members include: (1) whether the Pension Plan is subject to ERISA, and, if so; (2) whether the fiduciaries of the Plan have failed to administer and enforce funding of the Plan in accordance with ERISA; and (3) if the Court concludes that the Pension Plan is a Church Plan, whether application of the Church Plan exemption to the HCH Plan violates the First Amendment's Establishment Clause. A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

A.    Individual Class members do not have an interest in controlling the prosecution of these claims in individual actions rather than a class action because the equitable relief sought by any Class member will either inure to the benefit of the Plan or affect each Class member equally;

B.    Individual Class members also do not have an interest in controlling the prosecution of these claims because the monetary relief that they could seek in any individual action is identical to the relief that is being sought on their behalf herein;

C.    There is no other litigation begun by any other Class member concerning the issues raised in this litigation;

D.    This litigation is properly concentrated in this forum, which is where Defendants HCH and Sinai are headquartered; and

E.    There are no difficulties managing this case as a class action.

2143907.1

## VI.    CAUSES OF ACTION

### COUNT I

**(Claim for Equitable Relief Pursuant to ERISA § 502(a)(3))**
**Against Defendants HCH and Sinai**

116.    Plaintiffs repeat and re-allege the allegations contained in all foregoing paragraphs herein.

117.    ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), authorizes a participant or beneficiary to bring a civil action to obtain "appropriate equitable relief . . . to enforce any provisions of [Title I of ERISA]." Pursuant to that provision, 28 U.S.C. §§ 2201 and 2202, and Federal Rule of Civil Procedure 57, Plaintiffs seek declaratory relief that the Pension Plan is an ERISA-covered Plan within the meaning of ERISA § 3(2), 29 U.S.C. § 1002(2) and thus is subject to the provisions of Title I of ERISA and that HCH is the Pension Plan's sponsor.

118.    As the Pension Plan meets the definition of a pension plan under ERISA § 3(2), 29 U.S.C. § 1002(2), the Pension Plan should be declared to be an ERISA-covered pension plan; and HCH that as the Plan Sponsor, and/or Sinai as the successor to HCH's liabilities, should be ordered to bring the Plan into compliance with ERISA, including by remedying the violations set forth below.

### COUNT II

**(Claim for Failure to Terminate the Plan in Compliance with ERISA § 4041)**
**Against Defendants HCH and Sinai**

119.    Plaintiffs incorporate and re-allege by reference to the foregoing paragraphs as if fully set forth herein.

120.    ERISA § 4070(a), 29 U.S.C. § 1370(a), authorizes a participant or beneficiary to bring a civil action to obtain "appropriate equitable relief" to enforce and redress violations of Title IV of ERISA, including violations of ERISA §§ 4041, 4062 and 4069, 29 U.S.C. §§ 1341,

1362 and 1369. Pursuant to that provision, 28 U.S.C. §§ 2201 and 2202, and Federal Rule of Civil Procedure 57, Plaintiffs seek declaratory relief that: (i) HCH unlawfully transferred Plan sponsorship to SSC, an entity which could not properly sponsor or terminate the Plan in compliance with ERISA § 4041(c), 29 U.S.C. § 1341(c); (ii) the Plan was not terminated in compliance with ERISA; and (iii) to the extent the Plan was not fully funded upon such termination, pursuant to ERISA § 4062(a) and (b), 29 U.S.C § 1362(a) and (b), HCH and Sinai, as successor to HCH's liabilities, are liable to all participants and beneficiaries for the total amount of the unfunded benefits due under the Plan. Pursuant to 28 U.S.C. §§ 2201 and 2202, and Federal Rule of Civil Procedure 57, Plaintiffs further seek an injunction requiring the Plan to be re-established in order to allow for proper termination in compliance with ERISA.

121. ERISA § 4041(c), 29 U.S.C. § 1341(c), provides the exclusive means for a distress termination of an underfunded pension plan and, among other things, requires that: (i) the Plan Administrator provide affected parties, including the participants and beneficiaries of the Plan, with at least 60 days advance notice of intent to terminate; (ii) the Plan Administrator file with the PBGC a distress termination notice no later than 120 days after the proposed termination date; and (iii) the PBGC determines that each contributing sponsor of the plan and each member of its controlled group satisfy one of the distress criteria under ERISA § 4041(c)(2)(B), 29 U.S.C. § 1341(c)(2)(B).

122. In order to meet the requirements for a distress termination, each contributing sponsor and each member of its controlled group must satisfy at least one of the following criteria under ERISA § 4041(c)(2)(B), 29 U.S.C. § 1341(c)(2)(B): (i) liquidation, (ii) reorganization, (iii) inability to continue in business, or (iv) unreasonably burdensome pension costs. Neither HCH nor Sinai satisfied any of these criteria for distress termination.

2143907.1

123.     HCH as the proper Plan Administrator did not file notices of termination with the participants of the Plan and the PBGC which complied with 29 C.F.R. §§ 4041.43 and 4041.45 and the PBGC did not make the required determination that HCH or Sinai satisfied one of the distress criteria under 29 C.F.R. § 4041.41(c)(2)(B), in that they were not: (i) in a liquidation proceeding under federal bankruptcy law; (ii) in a reorganization proceeding under federal bankruptcy law; (iii) unable to pay their debts when due; and (iv) the cost of providing pension coverage had not become unreasonably burdensome due solely to the decline in the workforce covered by the controlled group members' pension plans.

124.     HCH and/or Sinai did not comply with the requirements of ERISA § 4041(c) when HCH improperly transferred sponsorship to SSC and permitted SSC to declare on August 31, 2015, that the Pension Plan was terminated effective September 1, 2015, and therefore HCH and/or Sinai's actions did not have the effect of properly terminating the Plan in compliance with ERISA.

## COUNT III

### (Claim for Failure to Provide Minimum Funding)
### Against Defendants HCH and Sinai

125.     Plaintiffs incorporate and re-allege by reference to the foregoing paragraphs as if fully set forth herein.

126.     ERISA § 302, 29 U.S.C. § 1082, establishes minimum funding standards for defined benefit plans that require employers to make minimum contributions to their plans so that each plan will have assets available to fund plan benefits if the employer maintaining the plan is unable to pay benefits out of its general assets.

127.     ERISA § 302(b)(2), 29 U.S.C. § 1082(b)(2) provides if an employer that is responsible for making contributions under the Plan is a member of a controlled group, "each

32

member of such group shall be jointly and severally liable for payment of such contributions." As 29 C.F.R. § 4001.2 makes clear, "[a]ny reference to a plan's controlled group means all contributing sponsors of the plan and all members of each contributing sponsor's controlled group."

128.    As alleged above, Sinai is a member of the HCH's controlled group because Defendant Sinai holds a controlling interest in Defendant HCH.

129.    As such, HCH and Sinai are jointly and severally liable for the contributions to the Plan due under ERISA § 302, 29 U.S.C. § 1082.

130.    HCH failed to make contributions to the Plan sufficient to meet the minimum funding standards of ERISA § 302, 29 U.S.C. § 1082.

131.    By failing to make the required contributions to the Plan, either in whole or in partial satisfaction of the minimum funding requirements established by ERISA § 302, Defendant HCH violated ERISA § 302, 29 U.S.C. § 1082.

132.    Accordingly Defendants HCH and Sinai are jointly and severally liable to make all contributions due to the Plan (which has not been properly terminated as set forth in Count II) under ERISA § 302, 29 U.S.C. § 1082.

133.    Alternatively, Defendants HCH and Sinai are jointly and severally liable to make all contributions due to the Plan under ERISA § 302, 29 U.S.C. § 1082 prior to the 2012 termination and are still jointly and severally liable to the Plaintiffs and the Class for those unpaid contributions plus interest under ERISA § 502(a)(3), 29 U.S.C. 1132(a)(3).

## COUNT IV

**(Claim for Violation of Reporting and Disclosure Provisions)**
**Against Defendants HCH and the HCH Pension Committee**

2143907.1

134.     Plaintiffs incorporate and re-allege by reference to the foregoing paragraphs as if fully set forth herein.

135.     ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), also authorizes a participant or beneficiary to bring a civil action "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." Pursuant to these provisions, Plaintiffs seek an order directing HCH /Sinai as the sponsor and/or administrator of the Pension Plan, to reform the Pension Plan and bring it into compliance with ERISA.

### Summary Plan Descriptions

136.     At no time since 1993 have Defendants HCH and/or the HCH Pension Committee, provided Plaintiffs or any member of the Class with a Summary Plan Description with respect to the Pension Plan that meets the requirements of ERISA § 102, 29 U.S.C. § 1022, and the regulations promulgated thereunder.

137.     Because HCH and/or the HCH Pension Committee have been the Plan Administrators at all relevant times, HCH and/or the HCH Pension Committee have violated ERISA § 104, 29 U.S.C. § 1024, by failing to provide Plaintiffs and members of the Class with adequate Summary Plan Descriptions.

### Annual Reports

138.     At no time since 1993 have Defendants HCH and/or the HCH Pension Committee filed annual reports with respect to the Pension Plan with the Secretary of Labor in compliance with ERISA § 103, 29 U.S.C. § 1023. Nor has a Form 5500 and associated schedules and

attachments with respect to the Pension Plan been filed, which the Secretary has approved as an alternative method of compliance with ERISA § 103, 29 U.S.C. § 1023.

139.     Because HCH and/or the HCH Pension Committee, have been the Plan Administrators of the Pension Plan at all relevant times, HCH and/or the HCH Pension Committee, have violated ERISA § 104(a), 29 U.S.C. § 1024(a), by failing to file annual reports with respect to the Pension Plan with the Secretary of Labor in compliance with ERISA § 103, 29 U.S.C. § 1023, or Form 5500s and associated schedules and attachments, which the Secretary has approved as an alternative method of compliance with ERISA § 103, 29 U.S.C. § 1023.

**Summary Annual Reports**

140.     At no time since 1993 have Defendants HCH and/or the HCH Pension Committee furnished Plaintiffs or any member of the Class with a Summary Annual Report with respect to the Plan in compliance with ERISA § 104(b)(3) and the regulations promulgated thereunder.  29 U.S.C. § 1024(b)(3).

141.     Because HCH and/or the HCH Pension Committee, have been the Plan Administrators of the Pension Plan at all relevant times, HCH and/or the HCH Pension Committee, have violated ERISA § 104(b)(3), 29 U.S.C. § 1024(b)(3), by failing to furnish Plaintiffs or any member of the Class with a Summary Annual Report with respect to the Pension Plan in compliance with ERISA § 104(b)(3) and the regulations promulgated thereunder.  29 U.S.C. § 1024(b)(3).

**Notification of Failure to Meet Minimum Funding**

142.     At no time since 1993 have Defendants HCH and/or the HCH Pension Committee furnished Plaintiffs or any member of the Class with a Notice with respect to the Pension Plan pursuant to ERISA § 101(d)(1), 29 U.S.C. § 1021(d)(1), informing them that HCH had failed to

make the payments required to comply with ERISA § 302, 29 U.S.C. § 1082, with respect to the Pension Plan.

143.    Defendant HCH is the employer that established and maintained the Pension Plan at all relevant times.

144.    During the relevant period, Defendant HCH failed to fund the Pension Plan in accordance with ERISA § 302, 29 U.S.C. § 1082.

145.    As the employer maintaining the Pension Plan, Defendant HCH has violated ERISA § 302, 29 U.S.C. § 1082, by failing to fund the Pension Plan, is liable for its own violations of ERISA § 101(d)(1), 29 U.S.C. § 1021(d)(1), and as such may be required by the Court to pay Plaintiffs and each Class member up to $110 per day (as permitted by 29 C.F.R. § 2575.502(c)(3)) for each day that Defendant HCH has failed to provide Plaintiffs and each Class member with the notice required by ERISA § 101(d)(1), 29 U.S.C. § 1021(d)(1).

**Funding Notices**

146.    At no time since 1993 have Defendants HCH and/or the HCH Pension Committee furnished Plaintiffs or any member of the Class with a Funding Notice with respect to the Pension Plan in accordance with ERISA § 101(f), 29 U.S.C. § 1021(f).

147.    At all relevant times, HCH and/or the HCH Pension Committee have been the administrators of the Pension Plan.

148.    As the administrators of the Pension Plan, HCH and/or the HCH Pension Committee have violated ERISA § 101(f) by failing to provide each participant and beneficiary of the Pension Plan with the Funding Notice required by ERISA § 101(f), and as such may be required by the Court to pay Plaintiffs and each Class member up to $110 per day (as permitted

2143907.1

by 29 C.F.R. § 2575.502(c)(3)) for each day that Defendants have failed to provide Plaintiffs and each Class member with the notice required by ERISA § 101(f).  29 U.S.C. § 1021(f).

### Pension Benefit Statements

149.    At no time since 1993 have Defendants HCH and/or the HCH Pension Committee furnished Plaintiffs or any member of the Class with a Pension Benefit Statement with respect to the Pension Plan in accordance with ERISA § 105(a)(1), 29 U.S.C. § 1025(a)(1).

150.    At all relevant times, HCH and/or the HCH Pension Committee have been the administrators of the Pension Plan.

151.    As the Plan administrators, HCH and/or the HCH Pension Committee have violated ERISA § 105(a)(1) and as such may be required by the Court to pay Plaintiffs and each Class member up to $110 per day (as permitted by 29 C.F.R. § 2575.502(c)(3)) for each day that Defendants have failed to provide Plaintiffs and each Class member with the Pension Benefit Statements required by ERISA § 105(a)(1), 29 U.S.C. § 1025(a)(1).

### COUNT V

### (Claim or Failure to Establish the Plan Pursuant to a Written Instrument Meeting the Requirements of ERISA § 402) Against Defendant HCH

152.    Plaintiffs incorporate and re-allege by reference to the foregoing paragraphs as if fully set forth herein.

153.    ERISA § 402, 29 U.S.C. § 1102, provides that every plan will be established pursuant to a written instrument which will provide, among other things, "for one or more named fiduciaries who jointly or severally shall have authority to control and manage the operation and administration of the plan" and will "provide a procedure for establishing and carrying out a funding policy and method consistent with the objectives of the plan and the requirements of [Title I of ERISA]."

154.    Although the benefits provided by the Pension Plan were described to the employees and retirees of HCH in various written communications, the Pension Plan did not follow a written instrument meeting the requirements of ERISA § 402, 29 U.S.C. § 1102.

155.    Among other things, the Plan as written violates ERISA because the plan document does not provide an adequate funding policy in compliance with ERISA § 402(b)(1), 29 U.S.C. § 1102(b)(1), in that it does not require funding of accrued benefits at termination, but instead only requires that accrued benefits be provided to the extent the plan has sufficient assets.

156.    As Defendant HCH has been responsible for maintaining the Pension Plan and HCH has amendment power over the Pension Plan, Defendant HCH violated section 402 by failing to promulgate written instruments in compliance with ERISA § 402 to govern the Pension Plan's operations and administration.  29 U.S.C. § 1102.

## COUNT VI

### (Claim for Failure to Establish a Trust Meeting the Requirements of ERISA § 403) Against Defendant HCH

157.    Plaintiffs incorporate and re-allege by reference to the foregoing paragraphs as if fully set forth herein.

158.    ERISA § 403, 29 U.S.C. § 1103, provides, subject to certain exceptions not applicable here, that all assets of an employee benefit plan shall be held in trust by one or more trustees, that the trustees shall be either named in the trust instrument or in the plan instrument described in section 402(a), 29 U.S.C. § 1102(a), or appointed by a person who is a named fiduciary.

159.    Although the Pension Plan's assets have been held in trust, the trust does not meet the requirements of ERISA § 403, 29 U.S.C. § 1103.

38

160.    As Defendant HCH has been responsible for maintaining the Pension Plan and has amendment power over the Pension Plan, Defendant HCH violated section 403 by failing to put the Pension Plan's assets in trust in compliance with ERISA § 403.  29 U.S.C. § 1103.

**COUNT VII**

**(Claim for Civil Money Penalty For Failure to Provide Notice Pursuant to ERISA § 502(a)(1)(A))**
**Against Defendants HCH, Sinai, and/or the HCH Pension Committee**

161.    Plaintiffs incorporate and re-allege by reference to the foregoing paragraphs as if fully set forth herein.

162.    ERISA § 502(a)(1)(A), 29 U.S.C. § 1132(a)(1)(A), provides that a participant may bring a civil action for the relief provided in ERISA § 502(c), 29 U.S.C. § 1132(c).

163.    ERISA § 502(c)(3), 29 U.S.C. § 1132(c)(3), as amended per 29 C.F.R. § 2575.502(c)-(3), provides that an employer maintaining a plan who fails to meet the notice requirement (relating to a plan's failure to meet the minimum funding standard) of ERISA § 101(d), 29 U.S.C. § 1021(d), with respect to any participant and beneficiary may be liable for up to $110 per day from the date of such failure.

164.    ERISA § 502(c)(3), 29 U.S.C. § 1132(c)(3), as amended per 29 C.F.R. § 2575.502(c)-(3), provides that an administrator of a defined benefit pension plan who fails to meet the notice requirement (relating to defined benefit plan funding notices) of ERISA § 101(f), 29 U.S.C. § 1021(f), with respect to any participant and beneficiary may be liable for up to $110 per day from the date of such failure.

165.    ERISA § 502(c)(3), 29 U.S.C. § 1132(c)(3), as amended per 29 C.F.R. § 2575.502(c)-(3), provides that an administrator of a defined benefit pension plan who fails to provide a Pension Benefit Statement at least once every three years to a participant with a nonforfeitable accrued benefit who is employed by the employer maintaining the plan at the time

the statement is to be furnished as required by ERISA § 105(a), 29 U.S.C. § 1025(a), may be liable for up to $110 per day from the date of such failure.

166.    As Defendant HCH was the employer maintaining the Pension Plan and failed to give the notices required by ERISA § 101(d), 29 U.S.C. § 1021(d), as set forth in Count IV, Defendant HCH, and Defendant Sinai as successor to HCH's liabilities, are liable to the Plaintiffs and each member of the Class in an amount up to $110 per day from the date of such failures until such time that notices are given and the statements are provided, as the Court, in its discretion, may order.

167.    As Defendants HCH and/or the HCH Pension Committee are the Administrators of the Pension Plan and have failed to give the notice required by ERISA § 101(f), 29 U.S.C. § 1021(f), and the Pension Benefit Statement required by ERISA § 105(a), 29 U.S.C. § 1025(a), as set forth in Count IV, Defendants HCH and/or the HCH Pension Committee, and Defendant Sinai as successor to HCH's liabilities, are liable to the Plaintiffs and each member of the Class in an amount up to $110 per day from the date of such failures until such time that notices are given and the statement is provided, as the Court, in its discretion, may order.

## COUNT VIII

### (Claim for Benefits Pursuant to ERISA § 502(a)(1)(B))
### Against All Defendants

168.    Plaintiffs repeat and re-allege the allegations contained in all foregoing paragraphs as if fully set forth herein.

169.    ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), provides that a participant may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."

170.    The participants of the Pension Plan who were vested at the time the Pension Plan was frozen were eligible to receive retirement benefits at normal retirement age calculated and credited based upon their years of service and in the manner provided under the Plan.

171.    In connection with the attempt by HCH and Sinai to shed the $31 million in liabilities associated with the underfunded Plan via void and ineffective transfer of Plan sponsorship to SSC, and SSC's improper attempt to terminate the Plan, the Plan was amended so as to reduce by more than half the retirement benefits that all participants of the Plan were entitled to receive.

172.    The retirement benefits which Plaintiffs and other Class members have received following the attempted termination of the Pension Plan were calculated and distributed in a manner that was inconsistent with the provisions of the Plan in effect at the time the Pension Plan was frozen.  As a result, Plaintiffs and the Class have received substantially less in retirement benefits than they would have received under the terms of the Plan in effect at the time the Pension Plan was frozen.

173.    Plaintiffs and the Class are entitled, at a minimum, to receive retirement benefits equivalent to what they would have received under the Plan in effect at the time the Pension Plan was frozen in June 2011.

## COUNT IX

### (Claim for Violation of the Anti-Cutback Provision of ERISA § 204(g))
### Against Defendants HCH, Sinai and/or the HCH Pension Committee

174.    Plaintiffs repeat and re-allege the allegations contained in all foregoing paragraphs as if fully set forth herein.

175.    ERISA § 204(g), 29 U.S.C. § 1054(g), provides that "[t]he accrued benefit of a participant under a plan may not be decreased by an amendment of the plan."

176. Under 26 C.F.R. § 1.411(d)-3(a)(1), "a plan amendment includes any changes to the terms of a plan . . . ."

177. ERISA § 3(23), 29 U.S.C. § 1002(23), defines "accrued benefit" in the case of a defined benefit plan as "the individual's accrued benefit determined under the plan and, except as provided in section 1054(c)(3) of this title, expressed in the form of an annual benefit commencing at normal retirement age."

178. An accrued benefit is considered "decreased" for purposes of ERISA § 204(g) not only when it is eliminated entirely but also if it is reduced in size or if the plan imposes new conditions or materially greater restrictions on their receipt.

179. Each of the Plaintiffs was entitled, when they reached eligibility, to receive a retirement benefit based upon their years of service and final average pay in the form in the manner provided by the Plan payable in the form of a straight life annuity.

180. The Plan amendments, effective January 1, 2012, purported to limit payment of participants' accrued benefits upon Plan termination based on the Plan's funding status and use of an unreasonable assumption that 13.5% could be generated if the amount distributed was put in an appropriate investment vehicle, (in the form of a 13.5% discount rate) when calculating lump sum benefit payments. These amendments, which cumulatively resulted in approximately a fifty (50) percent reduction in the benefits that the Plaintiffs and members of the Class were eligible to receive under the terms of the Plan, constituted a prohibited cutback of benefits in violation of ERISA § 204(g), 29 U.S.C. § 1054(g).

181. As a result, Plaintiffs and members of the Class are entitled to a recalculation of the benefits for which they are eligible in conformity with the provisions of the Pension Plan as well as the payment of any additional benefits, including interest, which may be owed.

2143907.1

## COUNT X

### (Claim for Breach of Fiduciary Duty)
### Against Defendants HCH, the HCH Pension Committee and the Individual Defendants

182.     Plaintiffs incorporate and re-allege by reference to the foregoing paragraphs as if fully set forth herein.

183.     ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), provides that a participant may bring a civil action "for appropriate relief under section 1109 [ERISA § 409, 29 U.S.C. § 1109] of this title" including recovery of any losses to the Pension Plan from a fiduciary breach by a fiduciary of the Plan, the recovery of any profits resulting from such breach, and such other equitable or remedial relief as the Court may deem appropriate. Counts X through XII of the Complaint are brought pursuant to these provisions.

### Breach of the Duty of Prudence and Loyalty

184.     ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), provides in pertinent part that a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and –

(a)     for the exclusive purpose of:

(i)     providing benefits to participants and their beneficiaries; and

(ii)     defraying reasonable expenses of administering the plan;

(b)     with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims . . . [and]

(c)     in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this [Title I of ERISA] and Title IV. As fiduciaries with respect to the Pension Plan, all Defendants (other than Sinai) had

43

the authority to enforce each provision of ERISA alleged to have been violated in the foregoing paragraphs pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3) and ERISA § 4070(a), 29 U.S.C. § 1370(a). Having the authority to enforce the provisions of ERISA at those respective times, ERISA § 404(a)(1)(A)-(D), 29 U.S.C. § 1104(a)(1)(A)-(D), imposed on all Defendants (other than Sinai) the respective duty to enforce those provisions in the interest of the participants and beneficiaries of the Pension Plan during the times that each was a fiduciary of the Pension Plan.

185. Since at least 1993, Defendants HCH, the HCH Pension Committee and the Individual Defendants have not enforced any of the provisions of ERISA set forth in Counts I-VII with respect to the Pension Plan.

186. By failing to enforce the provisions of ERISA set forth in Counts I-VII, including the requirement that the Plan be properly terminated as required under ERISA § 4041, 29 U.S.C. § 1341, Defendants HCH, the HCH Pension Committee and the Individual Defendants breached the fiduciary duties that they owed to the Plaintiffs and the Class.

187. ERISA § 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D) imposes upon Defendants HCH, the HCH Pension Committee and the Individual Defendants the obligation to discharge their duties "in accordance with the documents and instruments governing the plan . . . ."

188. Among other things, the Pension Plan provides that no amendment to the Plan is effective to the extent that it has the effect of decreasing a participant's accrued benefit.

189. HCH's amendment to the Plan, effective January 1, 2012, which allowed the Plan to pay accrued benefits only to the extent that the Plan was funded allowed Plan fiduciaries to pay participants an amount in purported benefits that was worth substantially less than their accrued benefits.

44

190.    Defendants HCH, the HCH Pension Committee and the Individual Defendants breached their fiduciary obligations to discharge their duties in accordance with the Plan document by calculating lump sum payments at the time of the Plan's purported termination based on an unreasonable discount rate of 13.5% of which had the effect of decreasing participants' accrued benefits.

191.    ERISA § 404(a)(1)(A)-(D), 29 U.S.C. § 1104(a)(1)(A)-(D), also imposed on Defendants HCH, the HCH Pension Committee and the Individual Defendants the further duty to establish and maintain an adequate funding policy to assure that the contributions of the Employer and investment performance of the Plan were adequate to satisfy the expected benefit payments of the Plan and to thereby meet the funding obligations of the Plan.

192.    Defendants HCH, the HCH Pension Committee and the Individual Defendants breached these fiduciary obligations by failing to assure that an adequate funding policy was established and maintained such that the contributions of the Employer and investment performance of the Plan were adequate to pay the accrued benefits of the Plaintiffs and the members of the Class and meet the funding obligations of the Plan.

193.    The failure of Defendants HCH, the HCH Pension Committee and the Individual Defendants to enforce the funding obligations owed to the Plan has resulted in a loss to the Pension Plan equal to the foregone funding and earnings thereon and profited Defendants HCH and Sinai by providing them with the use of money owed to the Plan for their general business purposes.

**Prohibited Transactions**

194.    ERISA § 406(a)(1)(B), 29 U.S.C. § 1106(a)(1)(B), prohibits a fiduciary with respect to a plan from directly or indirectly causing a plan to extend credit to a party in interest,

45

as defined in ERISA § 3(14), 29 U.S.C. § 1002(14), if he or she knows or should know that such a transaction constitutes an extension of credit to a party in interest.

195. ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D), prohibits a fiduciary with respect to a plan from directly or indirectly causing a plan to use assets for the benefit of a party in interest if he or she knows or should know that such a transaction constitutes a use of plan assets for the benefit of a party in interest.

196. ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1), prohibits the use of plan assets by a fiduciary with respect to a plan in his or her own interest or for his or her own account.

197. By failing to enforce the funding obligations created by ERISA and owed to the Plan, Defendants HCH, the HCH Pension Committee and the Individual Defendants extended credit from the Pension Plan to HCH in violation of ERISA § 406(a)(1)(B), 29 U.S.C. § 1106(a)(1)(B), when Defendants knew or should have known that their failure to enforce the funding obligation constituted such an extension of credit.

198. By failing to enforce the funding obligations created by ERISA and owed to the Pension Plan, Defendants HCH, the HCH Pension Committee and the Individual Defendants used Pension Plan assets for HCH's and Sinai's own benefit, when such Defendants knew or should have known that their failure to enforce the funding obligations constituted such a use of Pension Plan assets in violation of ERISA § 406(a)(1)(D), 29 U.S.C. § 1106(a)(1)(D).

199. By failing to enforce the funding obligations created by ERISA and owed to the Pension Plan, Defendants HCH, the HCH Pension Committee and the Individual Defendants used Pension Plan assets in HCH's and Sinai's interest in violation of ERISA § 406(b)(1), 29 U.S.C. § 1106(b)(1).

200. The failure of Defendants HCH, the HCH Pension Committee and the Individual Defendants to enforce the funding obligations owed to the Pension Plan has resulted in a loss to the Pension Plan equal to the foregone funding and earnings thereon.

201. The failure of Defendants HCH, the HCH Pension Committee and the Individual Defendants to enforce the funding obligations owed to the Pension Plan has profited Defendants HCH and Sinai by providing them the use of money owed to the Pension Plan for its general business purposes.

## COUNT XI

### (Claim for Breach of Fiduciary Duty to Monitor)
### Against Defendants HCH and the HCH Board

202. Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs as if fully set forth herein.

203. During the Class Period, Defendants HCH and the members of the HCH Board were fiduciaries within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A). Thus, they were bound by the duties of loyalty, exclusive purpose, and prudence set forth in ERISA §§ 404(a)(1)(A) and (B), 29 U.S.C. §§ 1104(a)(1)(A) and (B), including the duty to monitor the performance of other fiduciaries which they had the responsibility to appoint and remove.

204. For Defendant HCH, this included the duty to monitor the fiduciaries of the Pension Plan, for whom it had responsibility to appoint and remove, including the members of the HCH Pension Committee, the Trustee, and any investment manager.

205. During the Class Period, the Members of the HCH Board were fiduciaries within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A). Thus, they were bound by the duties of loyalty, exclusive purpose, and prudence set forth in ERISA §§ 404(a)(1)(A) and (B), 29 U.S.C. §§ 1104(a)(1)(A) and (B), including the duty to monitor the performance of the

47

Members of the HCH Pension Committee, fiduciaries which the HCH Board had the responsibility to appoint and remove.

206.    Under ERISA, a monitoring fiduciary must ensure that the monitored fiduciaries are performing their fiduciary obligations, including those with respect to the investment and of plan assets, and must take prompt and effective action to protect the plan and participants when they are not.

207.    The monitoring duty further requires that appointing fiduciaries have procedures in place so that they may review and evaluate, on an ongoing basis, whether the "hands-on" fiduciaries and the appointing fiduciaries whom they appoint are doing an adequate job (for example, by requiring periodic reports on their work and the plan's performance and by ensuring that they have a prudent process for obtaining the information and resources they need).  In the absence of a viable process for monitoring their appointees, the appointing fiduciaries would have no basis for prudently concluding that their appointees were faithfully and effectively performing their obligations to Plan participants or for deciding whether to retain or remove them.

208.    Furthermore, a monitoring fiduciary must provide the monitored fiduciaries with the complete and accurate information in his or her possession that he or she knows or reasonably should know that the monitored fiduciaries must have in order to prudently manage the plan, including decisions regarding plan investments and adequate funding of the plan.

209.    Defendants HCH and the Members of the HCH Board breached their fiduciary monitoring duties by, among other things: (a) failing, at least with respect to the future funding of the Plan, to monitor their appointees, to evaluate their performances, or to have any system in place for ensuring that an adequate funding policy was established for the Pension Plan; (b) to

48

the extent any appointee lacked such information, failing to provide complete and accurate information to all of their appointees such that they could make sufficiently informed fiduciary decisions with respect to the Pension Plan's assets and level of funding; and (c) failing to remove appointees who did not establish adequate funding policies and methods to insure that the accrued benefits of the Plaintiffs and the members of the Class would be paid.

210. As a consequence of the breaches of fiduciary duty of HCH and the HCH Board, the Pension Plan became grossly underfunded such that when the Pension Plan was terminated it had insufficient assets to make the Plan's promised benefit payments.

211. If HCH and the HCH Board had discharged their fiduciary monitoring duties as described above, adequate contributions would have been made to fund sufficiently the Plan to pay accrued benefits at the time of termination. Therefore, as a direct and proximate result of the breaches of fiduciary duty alleged herein, the Pension Plan did not have the assets necessary to pay promised benefits and the benefits earned by the Plaintiffs and Class members were reduced substantially.

## COUNT XII

**(Claim, in the Alternative, for Declaratory Relief That the Church Plan Exemption Violates the Establishment Clause of the First Amendment of the Constitution, and Is Therefore Void and Ineffective)**

212. Plaintiff incorporates and re-alleges by reference the foregoing paragraphs as if fully set forth herein.

213. The ERISA Church Plan exemption is an accommodation that exempts churches and associations of churches, under certain circumstances, from compliance with ERISA.

214. The ERISA Church Plan exemption, as claimed by HCH, was an attempt to extend the accommodation beyond churches and associations of churches, to HCH—a non-profit healthcare system that has chosen to compete with commercial businesses, including other non-

49

profits as well as for-profits, by entering the economic arena and trafficking in the marketplace. Extension of the Church Plan exemption to HCH violated the Establishment Clause because it (A) was not necessary to further the stated purposes of the exemption, (B) harmed HCH workers, (C) put HCH competitors at an economic disadvantage, (D) relieved HCH of no genuine religious burden created by ERISA, and (E) creates more government entanglement with alleged religious beliefs than compliance with ERISA creates.

215. **Not Necessary to Further Stated Purpose.** Congress enacted the Church Plan exemption to avoid "examination of books and records . . . an unjustified invasion of the confidential relationship with regard to churches and their religious activities." This purpose had no application to HCH, which is neither run by nor intimately connected to any church financially. And, unlike a church, HCH had no confidential books and records to shield from government scrutiny. HCH already purported to disclose all material financial records and relationships when it sought Medicare and Medicaid reimbursements.

216. **Harmed Workers.** Employers, including HCH, are not legally required to provide pensions; instead, they choose to provide pensions in order to reap tax rewards and attract and retain employees in a competitive labor market. A prospective employee's choice of faith, or lack thereof, was not a factor in the recruiting and hiring of HCH employees. Thus, as a practical matter, HCH's pension plan participants include people of a vast number of divergent faiths, as well as those who belong to no faith. In choosing to recruit and hire from the public at large, HCH must have been willing to accept neutral regulations, such as ERISA, imposed to protect those employees' legitimate interests. To be constitutional, an accommodation such as the Church Plan exemption must not impose burdens on non-adherents without due consideration of their interests. The Church Plan exemption, as claimed by HCH, placed its longtime

50

employees' justified reliance on their pension benefits at great risk, because the Plan was terminated in an under-funded condition causing those employees to receive only 50% of their earned benefits.

217. **Put HCH's Competitors at an Economic Disadvantage.** HCH's commercial rivals faced material disadvantages in their competition with HCH because the rivals had to use their current assets to fully fund, insure (through premiums to the PBGC), and administer their pension plans, as well as providing other ERISA protections. In claiming that the HCH's Plan was an exempt Church Plan, HCH enjoyed a material competitive advantage because it is able to divert significant cash, which otherwise would be required to fund, insure (through premiums to the PBGC), and administer the HCH Plan, to its competitive growth strategy. To be constitutional, an accommodation such as the Church Plan exemption must take adequate account of harm to non-beneficiaries. The Church Plan exemption, as applied by HCH, provided no consideration of the disadvantage it created for HCH's competitors.

218. **Relieves No Genuine Religious Burden Imposed by ERISA**. An exemption exclusively for religion must alleviate a significant, state-imposed interference with religious exercise. The Church Plan exemption, as claimed by HCH, responded to no genuine burden created by ERISA on any of HCH's religious practices. ERISA is materially indistinguishable from the array of neutral Congressional enactments that do not significantly burden religious exercise when applied to commercial activities.

219. **Creates Government Entanglement with Alleged Religious Beliefs.** An HCH exemption requires courts and agencies to examine unilateral religious "convictions" of a non-church entity and determine if they are "shared" with a church, in the absence of any actual church responsible for the pensions. This creates entanglement between government and

51

putative religious beliefs. ERISA compliance, on the other hand, required zero entanglement with religion for HCH because ERISA is a neutral statute that regulates pension protections and HCH had no relevant confidential books, records or relationships. Thus, an extension of the Church Plan exemption to HCH produced state entanglement with alleged religious beliefs while compliance with ERISA created no meaningful state entanglement with alleged religious beliefs.

220.    Plaintiffs seek a declaration by the Court that the Church Plan exemption, that HCH claimed, was an unconstitutional accommodation under the Establishment Clause of the First Amendment, and is therefore void and ineffective.

## VII.    PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that judgment be entered against the Defendants on all claims and request that the Court award the following relief:

1.    Ordering a trial to a jury on any legal claims and a trial to the Court with an advisory jury for all equitable claims.

2.    Declaring that the Pension Plan:  (a) is an employee benefit plan within the meaning of ERISA § 3(2), 29 U.S.C. § 1002(2); and (b) is a defined benefit pension plan within the meaning of ERISA § 3(35), 29 U.S.C. § 1002(35).

3.    Declaring that the Pension Plan was not properly terminated in compliance with ERISA § 4041, 29 U.S.C. § 1341 and the Plan continues to be an ERISA-covered plan subject to all the funding requirements of ERISA for which HCH and HCH/Sinai are liable.

4.    Declaring that Sinai, as the sole corporate member of HCH, is part of a controlled group that is jointly and severally liable along with HCH for any unfunded benefits under the Plan.

2143907.1

5.     Declaring, with respect to Count IX, that the Church Plan exemption, as claimed by HCH, was an unconstitutional accommodation under the Establishment Clause of the First Amendment, and was therefore void and ineffective.

6.     Ordering HCH and Sinai, as successor to HCH's liabilities, to reform the Pension Plan to bring the Pension Plan into compliance with ERISA, including as follows:

    A.     Revising the Pension Plan documents to reflect that the Pension Plan is a defined benefit plan regulated by ERISA.

    B.     Requiring HCH and Sinai, as successor to HCH's liabilities, to fund the Pension Plan in accordance with ERISA's funding requirements, disclose required information to the Pension Plan's participants and beneficiaries, and otherwise comply with all other reporting, vesting, and funding requirements of Parts 1, 2 and 3 of ERISA, 29 U.S.C. §§ 1021-31, 1051-61, 1081-85.

    C.     Reforming the Pension Plan to comply with ERISA's accrual requirements and providing benefits in the form of a qualified joint and survivor annuity.

    D.     Requiring the adoption of an instrument governing the Pension Plan that complies with ERISA § 402, 29 U.S.C. § 1102.

    E.     Requiring HCH, Sinai (as successor to HCH's liabilities) and/or the HCH Pension Committee to comply with ERISA reporting and disclosure requirements, including by filing Form 5500 reports, distributing ERISA-compliant Summary Plan Descriptions, Summary Annual Reports and

2143907.1

Participant Benefit Statements, and providing Notice of the Pension Plan's funding status and deficiencies.

F.      Requiring the establishment of a Trust in compliance with ERISA § 403, 29 U.S.C. § 1103.

7.      Ordering HCH and Sinai, as successor to HCH's liabilities, to terminate the Plan in compliance with ERISA § 4041, 29 U.S.C. § 1341 and directing that HCH, as sponsor of the Plan, and Sinai, as successor to HCH's liabilities, are liable for the total amount of unfunded benefit liabilities as of the termination date to all participants and beneficiaries of the Pension Plan, together with interest pursuant to ERISA § 4062 (a) and (b), 29 U.S.C § 1362(a) and (b).

8.      Requiring HCH, the HCH Board, the HCH Pension Committee and the Individual Defendants, as fiduciaries of the Plan, to make the Pension Plan whole for any losses and disgorge any profits accumulated by such Defendants as a result of their fiduciary breaches.

9.      Appointing an Independent Fiduciary to hold the Pension Plan's assets in trust, to manage and administer the Pension Plan and their assets, and to enforce the terms of ERISA.

10.     Requiring HCH and Sinai, as successor to HCH's liabilities, to pay a civil money penalty of up to $110 per day to Plaintiffs and each Class member for each day they failed to inform Plaintiffs and each Class member of their failure to properly fund the Plan.

11.     Requiring HCH, Sinai, as successor to HCH's liabilities, and/or the Pension Committee to pay a civil money penalty of up to $110 per day to Plaintiffs and

2143907.1

each Class member for each day it failed to provide Plaintiffs and each Class member with a Funding Notice.

12. Requiring HCH, Sinai, as successor to HCH's liabilities, and/or the Pension Committee to pay a civil money penalty of up to $110 per day to Plaintiffs and each Class member for each day it failed to provide a benefit statement under ERISA § 105(a)(1)(B), 29 U.S.C. § 1025(a)(1)(B).

13. Ordering declaratory and injunctive relief as necessary and appropriate, including enjoining the Defendants from further violating the duties, responsibilities, and obligations imposed on them by ERISA with respect to the Plan.

14. Awarding to Plaintiffs attorneys' fees and expenses as provided by the common fund doctrine, ERISA § 502(g), 29 U.S.C. § 1132(g) and/or other applicable doctrine.

15. Awarding to Plaintiffs taxable costs pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g), 28 U.S.C. § 1920, and other applicable law.

16. Awarding to Plaintiffs pre-judgment interest on any amounts awarded pursuant to law.

17. Awarding, declaring or otherwise providing Plaintiffs and the Class all relief under ERISA § 502(a), 29 U.S.C. § 1132(a), or any other applicable law, that the Court deems proper.

2143907.1

June 6, 2016                                    Respectfully submitted,


                                               /s/ Karen L. Handorf
                                               Karen L. Handorf
                                               Michelle C. Yau
                                               Julie G. Reiser
                                               Mary J. Bortscheller, (IL Bar No. 6304457)
                                               Cohen Milstein Sellers & Toll PLLC
                                               1100 New York Ave., NW
                                               Suite 500
                                               Washington, D.C. 20005
                                               Telephone:  (202) 408-4600
                                               khandorf@cohenmilstein.com
                                               myau@cohenmilstein.com
                                               jreiser@cohenmilstein.com
                                               mbortscheller@cohenmilstein.com


                                               Lynn Lincoln Sarko
                                               Keller Rohrback, LLP
                                               Seattle, WA


                                               Ron Kilgard
                                               Keller Rohrback, LLP
                                               Phoenix, AZ


                                               Mark D. DeBofsky (IL Bar No. 3127892)
                                               DeBofsky & Associates P.C.
                                               200 W. Madison St., Suite 2670
                                               Chicago, Illinois 60606
                                               (312) 561-4040
                                               mdebofsky@debofsky.com


                                               **Attorneys for Plaintiffs**

56