IN THE UNITED STATES DISTRICT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CORINNE BUTLER and ANDREA FITZSIMMONS, *on behalf of themselves individually, and on behalf of all others similarly situated* | ) ) ) ) ) | |
| Plaintiffs, | ) ) | No. 16-CV-5907 |
| v. | ) ) | Judge Manish S. Shah |
| HOLY CROSS HOSPITAL, SINAI HEALTH SYSTEM, WAYNE LERNER, DIANE HOWARD, JOHN R. BALL, M.D, BARBARA FAHEY, SATYA AHUJA, M.D., CHIA HUANG, M.D., LARRY MARGOLIS, SIVARAMAPRASAD TUMMALA, M.D., HOWARD BERMAN, GARY J. NIEDERPRUEM, SHARON ROSSMARK, YOGI AHULUWALIA, M.D., JOHN BENEVIDES, CHARLES BROWN, DANIEL CANTRELL, ALAN H. CHANNING, JOHN DANAHER, M.D., LESLIE DAVIS, MARK J. FRISCH, AIDA GIACHELLO, NEAL GOLDSTEIN, ALBERT GRACE, JONATHAN JONAS, GARY KELLER, KENNETH A. LUCCIONI, ROBERT MARKIN, GLORIA MATERRE, BRET MAXWELL, WAYNE PIERCE, MAURICE SCHWARTZ, ROBERT SHAKNO, BEN SOLDINGER, ALAN SOLOW, ROBERT STEELE, STEVE TOPEL, TERRY WHEAT, and JOHN and JANE DOES, each an individual, 1-40, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | | |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR
PRELIMINARY APPROVAL OF SETTLEMENT AGREEMENT**

Plaintiffs Corinne Butler and Andrea Fitzsimmons ("Plaintiffs"), by and through their

attorneys, respectfully move the Court for an Order: (1) preliminarily approving the Class Action Settlement Agreement ("Settlement" or "Settlement Agreement")[1] attached hereto as Exhibit 1;[2] (2) preliminarily certifying the proposed Settlement Class pursuant to Federal Rule of Civil Procedure 23(b)(1) and/or 23(b)(2); (3) approving the form and method of Class Notice; and (4) setting a date and time for a hearing (the "Fairness Hearing") for consideration of final approval of the Settlement, and payment of attorneys' fees and expenses. The Defendants do not oppose the relief sought in the Preliminary Approval Motion. However, Defendants dispute and do not agree with many of the averments stated in this Memorandum.

## I.    INTRODUCTION

This Settlement resolves the claims of Plaintiffs in this case against all Defendants. The Complaint alleges that Defendants Holy Cross Hospital ("Holy Cross") and Sinai Health System ("SHS") denied ERISA[3] protections to the participants and beneficiaries of the Pension Plan for Employees of Holy Cross Hospital (the "Plan") by incorrectly claiming that the Plan qualifies as an ERISA-exempt "church plan." *See* 29 U.S.C. § 1002(33); Complaint – Class Action, Dkt. No. 1 ("Complaint"). Plaintiffs allege that Defendants purported to terminate the Plan in September 2015 (the "Termination"), and in December, 2015, distributed the Plan's assets to participants and beneficiaries, although those distributions allegedly were not sufficient to pay the full amounts owed. This Settlement was reached after extensive and protracted arm's-length

---

[1] A copy of the Settlement Agreement is attached as Exhibit 1 to this Unopposed Motion for Preliminary Approval of Settlement Agreement ("Preliminary Approval Motion"). Capitalized terms not otherwise defined in this memorandum shall have the same meaning ascribed to them in the Settlement Agreement.

[2] All references to "Exhibit" or "Ex." are to the exhibits attached to this Preliminary Approval Motion and filed concurrently herewith.

[3] "ERISA" is a reference to the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001, *et seq.*

negotiations with a mediator. It required a mediator's proposal before the parties could come to agreement on a settlement amount, and it offers various protections against contingencies of being unable to collect the settlement. The Settlement represents the best monetary result for the proposed Settlement Class of participants and beneficiaries of the Plan that could be achieved in light of the legal and practical risks, including Holy Cross' potential insolvency scenario if forced to satisfy a judgment in the amount Plaintiffs seek.

As a result of this Settlement, Defendants have agreed to settle all Released Claims against Defendants and other Released Parties in exchange for, among other terms, approximately $9 million, consisting of a settlement payment of $4 million in cash to an escrow account which will then be reduced by Plaintiff's attorneys fees, expenses and incentive awards to the Named Plaintiffs, with the net remaining amount being contributed to the Plan (the "Plan Payment"), plus approximately $5.1 million in undistributed assets held in the Plan Trust (the "Plan Trust Amount"). The Plan Trust Amount will be reduced by ongoing Plan expenses until the distribution date to the Class Members. Subject to satisfaction of certain conditions, the obligation to make the Plan Payment will be secured by a mortgage on Holy Cross' real property and improvements. Upon approval of this Settlement, the Plan Payment – plus interest thereon, will be combined with the approximately $5.1 million Plan Trust Amount for distribution to the Class. The Parties anticipate that the total amount distributed from the Plan following the Settlement, and less the expenses necessary to calculate and process the distribution of the Settlement, will be approximately $8.4 million. This amount will be distributed to members of the Class based upon the actuarial assumptions and methodologies used for the December 2015 Plan distributions. After the Plan distributes the Class Settlement Amount to Plan participants, the Plan shall be fully liquidated and formally terminated.

## II.     BACKGROUND

**A.          Procedural History and Settlement Negotiations**

On June 6, 2016, Plaintiffs Butler and Fitzsimmons filed a putative class action Complaint in this Court against Holy Cross and various other defendants (collectively, the "Defendants") alleging violations of ERISA. Compl., Dkt. No. 1. Plaintiffs are represented by Cohen Milstein Sellers & Toll PLLC, Keller Rohrback L.L.P., and DeBofsky, Sherman & Casciari, P.C. (collectively, "Class Counsel"). The Complaint alleges that Defendants denied ERISA protections to the participants and beneficiaries of the Plan, a defined benefit pension plan sponsored by Holy Cross, by incorrectly claiming that the Plan qualifies as an ERISA-exempt "church plan." *See* 29 U.S.C. § 1002(33). The Complaint further alleges that asserting this exemption caused Defendants to deny Plan participants the protections of ERISA. Among other violations, the Complaint alleges that Defendants: underfunded the Plan by $31 million; improperly terminated the Plan while it was underfunded; offered participants discounted lump sum distributions using calculations that violate ERISA; and unlawfully attempted to avoid liability for the Plan's underfunding by transferring control of the Plan to the Sisters of St. Casimir of Chicago ("SSC") while knowing that SSC lacked the financial resources to make up the shortfall.

On June 29, 2016, this Court granted the Parties' stipulation to vacate the initial responsive pleading date and to stay the case, to allow the Parties to mediate the dispute in an attempt at early resolution. On August 24, 2016, the Parties participated in mediation facilitated by nationally-known mediator Robert A. Meyer, Esq., of JAMS in Los Angeles, California. Mr. Meyer has substantial experience mediating cases involving ERISA and retirement plan issues, including cases involving the church plan exemption. Ex. 1 at § 2.4; Decl. of Julie G. Reiser

("Reiser Decl.") ¶ 5. Although the matter was not resolved at the first mediation, the Parties made progress and agreed to continue pursuing a settlement agreement. *Id.* ¶ 7. Accordingly, this Court granted the Parties' September 19, 2016 request to extend the stay for an additional 60 days. *Id.* During the extended stay, the Parties remained actively engaged in settlement negotiations and organized a second in-person meeting with the mediator and other professionals to examine the risks of continued litigation. *Id.* ¶ 8. The Court granted the Parties' November 16, 2016 second request for an extension of the stay to allow the Parties to attempt to bring the matter to a final resolution during a second meeting with the mediator. That mediation took place in Los Angeles on December 19, 2016, and numerous follow up sessions were held with the mediator by phone thereafter. *Id.* ¶ 9.

While developing the case and through settlement negotiations, Class Counsel expended a substantial amount of time investigating the legal issues and financial risks associated with trying to collect a judgment against the Defendants. *Id.* ¶ 11. This investigation included, *inter alia:* (a) inspecting, reviewing and analyzing documents produced by or otherwise relating to Defendants' business structure and financial condition; (b) researching the applicable law with respect to the claims asserted in the Complaint and the defenses and potential defenses thereto, including liability for the improper transfer of the Plan to SSC and for failing to obtain insurance from the Pension Benefit Guaranty Corporation ("PBGC"); (c) inspecting, reviewing and analyzing documents concerning the Plan and administration of the Plan; and (d) researching and analyzing governmental and other publicly-available information concerning Defendants and the Plan. *Id.*

During the negotiation phase, Class Counsel's investigation included discussions with professionals on both sides who considered detailed, confidential financial analyses with respect

to Defendants' financial condition, which information Defendants represented to be true, complete, and accurate. *See id.* ¶ 8. These analyses were and are confidential and legally privileged documents, protected by *Fed.R.Evid.* 408. *Id.* This information included historical results, future revenue streams, and also a potential insolvency scenario if Defendants were forced to satisfy a judgment in the amount Plaintiffs seek. Ex. 1 at §§ 2.9-2.10; Reiser Decl. ¶ 17.

After months of negotiations, the Parties finally agreed upon the non-monetary components of a settlement, yet were unable to reach a monetary figure for resolving the litigation. Reiser Decl. ¶ 12. On February 15, 2017, the mediator issued a mediator's proposal, giving the Parties until the next day to accept or reject the settlement amount. *Id.* ¶ 13. A Term Sheet was executed the next day and the Parties informed the Court they had reached a settlement. *Id.* ¶ 14.

The Court then set a schedule for preliminary approval proceedings. Dkt. No. 33. The Settlement Agreement now before the Court, Ex. 1, is a comprehensive agreement based on the Term Sheet. Reiser Decl. ¶ 16. It was executed by all Parties on March 1, 2017. *See* Ex. 1. As the chronology above demonstrates, the Settlement is the result of lengthy arm's-length negotiations between the Parties, supervised by a neutral third party. Reiser Decl. ¶ 16. The process was thorough, adversarial, and professional. *Id.*

**B.**        **Overview of the Settlement Agreement**

The principal terms of the Settlement Agreement are summarized below. *See* Ex. 1.

**1.**        **Monetary Consideration**

The Settlement includes approximately $9 million, as follows: Pursuant to the Settlement Agreement, the Defendants will make payments totaling $4 million into an interest-bearing

escrow account (the "Escrow Contribution") on the schedule set out in the Settlement Agreement, such that the entire Escrow Contribution will be held in the Escrow Account within ten business days after the Court enters a final order approving the Settlement Agreement. Ex. 1 § 8.1.2. Within fifteen days after the Settlement becomes Final,[4] the Escrow Contribution – plus accrued interest thereon, less any award of Plaintiff's attorneys' fees and expense reimbursements, and incentive awards to Named Plaintiffs – will be paid to the Plan (the "Plan Payment") and combined with the approximately $5.1 million Plan Trust Amount for distribution to the Class. *Id.* §§ 8.1.2, 8.1.3, 8.1.5. The combined Plan Trust Amount and the Plan Payment, referred to in the Settlement Agreement as the "Class Settlement Amount," will then be allocated and paid to Class Members based upon the same actuarial assumptions and methodologies used for the Plan Termination payments that occurred in December 2015, and shall include any income generated by the Plan Payment while it is held in the escrow account. *Id.* § 8.1.4. After notice and administrative costs, Defendants anticipate that approximately $8.4 million will be available for distribution to Plan participants. *Id.*

All amounts due under the Settlement Agreement will be secured by a mortgage on the Holy Cross Hospital real property and improvements, excluding Holy Cross Hospital personal property or equipment. Ex. 1 § 9.1. The mortgage will take effect ten days after either the Court preliminarily approves the settlement, or the Lender with which Holy Cross is currently engaged in receivables financing confirms that such a mortgage is permitted. *Id.* § 9.1.1. Plaintiffs have

---

[4] "Final" is defined in the Settlement Agreement as: "with respect to any judicial ruling or order in the Action, that the period for any appeals, petitions, motions for reconsideration, rehearing or certiorari or any other proceedings for review ("Review Proceeding") has expired without the initiation of a Review Proceeding, or, if a Review Proceeding has been timely initiated, that there has occurred a full and completed disposition of any such Review Proceeding, including the exhaustion of proceedings in any remand and/or subsequent appeal on remand." Ex. 1 at § 1.13.

the right, after April 15, 2017 if Holy Cross determines not to grant the mortgage due to the Lender's action or inaction, and after an opportunity to negotiate with Holy Cross for replacement collateral, to terminate the Settlement.  *Id.* The mortgage will be released when the Settlement becomes Final or if the Settlement fails. *Id.* §§ 9.1.2, 9.1.3.

The Settlement provides that Defendants will support approval of the Settlement if there are insolvency proceedings for Holy Cross or SHS, and if all or any portion of the Settlement is "clawed back" from the Class in such proceedings, Defendants agree that Plaintiffs are entitled to assert the claims asserted in the Complaint, subject to all of Defendants' defenses and counter-claims. *Id.* §§ 9.2, 9.3.

### 2. Liquidation and Termination of the Plan

After the final distribution of the Class Settlement Amount, the Plan will be fully liquidated and formally terminated. *Id.* § 1.18.

### 3. Certification of a Rule 23 Class

The Settlement contemplates that the Court will certify a non-opt-out class under Federal Rule of Civil Procedure 23(b)(1) or (b)(2). Ex. 1 § 3.2.2. The Settlement Class is defined as: "All Plan participants or Plan beneficiaries who received a distribution from the Plan on December 31, 2015, in connection with the Plan's intended termination and (i) who were not later identified as having died prior to September 1, 2015; or (ii) who were not included in the Plan's distribution on December 31, 2015, in connection with the Plan's intended termination, but who were identified after December 31, 2015, as being eligible for a benefit prior to the Settlement's effective date." *Id.* § 1.35.  The Settlement Class *excludes* all individual Defendants named in the Complaint. *Id.*

### 4. Releases

The Settlement Agreement provides for releases by and among Plaintiffs, Defendants, and certain other non-parties (such as affiliates, SSC, insurers, counsel, and Plan fiduciaries) related to the litigation. *Id*. §4. The persons to be released by Plaintiffs are defined as the "Releasees" and enumerated at § 1.29 of the Settlement Agreement. The Releasees will be released from the "Released Claims," which generally include all claims that could have been asserted by Plaintiffs, arising under federal or state law, related to the sponsorship, funding, maintenance, operation or termination of, or distributions from, the Plan. *Id.* § 4.1. Plaintiffs, the Settlement Class, and Class Counsel will be released from claims relating to the institution and prosecution of this case. *Id*. § 4.2.

### 5. Notice

The draft [Proposed] Preliminary Approval Order, attached as Exhibit 2, provides for the following proposed Class Notice Program: (a) a mailed postcard notice ("Summary Notice"), sent to the last known address of members of the Settlement Class and (b) an internet publication of the Settlement Agreement and long-form Class Notice at www.cohenmilstein.com/HCH-settlement and www.kellersettlements.com. *See* Ex. 2; *see also* Ex. 3 (Summary Notice) and Ex. 4 (Draft long-form Class Notice). The Plan will pay the costs for notice and other distribution expenses to the Settlement Class. Ex. 1 at § 3.2.3.

### 6. Attorneys' Fees, Costs and Incentive Awards

Plaintiffs' Counsel will seek district court approval to receive an amount not to exceed 15% of the Plan Payment as attorneys' fees ("Attorney's Fees Award") and also will seek their out of pocket costs, largely expended on mediator fees, not to exceed $30,000. Ex. 1 § 8.1.5.

Plaintiffs' Counsel also intend to ask the Court to award incentive fees to the Named Plaintiffs of $10,000, to be deducted from the Escrow Contribution, in light of their substantial contributions to the litigation, including: collecting and producing documents; maintaining regular contact with Class Counsel; reviewing and approving the Complaint, staying abreast of settlement negotiations; and advising on the settlement of this litigation. *Id.*; Reiser Decl. ¶ 18. The Settlement Class shall be notified of these details in the Class Notice. *See* Ex. 4. The attorneys' fees, expenses and incentive awards will be deducted from the amounts in escrow and will be distributed to Class Counsel within fifteen days of the Settlement becoming final. Ex. 1 at § 8.1.2.

**C.        Reasons for the Settlement**

Plaintiffs have entered into the Settlement Agreement with an understanding of the strengths and weaknesses of their claims. In reaching this agreement, Class Counsel and Plaintiffs have considered, among other things, the risks of litigation; the time necessary to achieve a complete resolution through litigation; the complexity of the claims set forth in the Complaint; the ability of Defendants to withstand judgment; and the benefit accruing to the Plan's participants under the Settlement. Reiser Decl. ¶ 15. They have also considered reports from professionals concerning Defendants' financial condition; reviewed materials produced in connection with the mediation; assessed the range of possible recovery; and considered the significant uncertainties in predicting the outcome of this litigation where the critical legal issue is pending before the U.S. Supreme Court. *Id.*; *see also* Ex. 1 at §§ 2.2 - 2.3, 2.9 - 2.11. Having weighed all of these factors, Class Counsel and Plaintiffs have concluded that the Settlement is fair, reasonable, and adequate, and should be presented to the Court for approval. Reiser Decl. ¶ 25.

### III. DISCUSSION

**A.**         **The Standards for Preliminary Approval**

Rule 23(e) of the Federal Rules of Civil Procedure governs settlements of class action lawsuits. It provides that "the claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). Approval under Rule 23(e) involves a two-step process: first, a "preliminary approval" order; and second, after notice of the proposed settlement has been provided to the class and a hearing has been held to consider the fairness, reasonableness, and adequacy of the proposed settlement, a "final approval" order or judgment.[5] *See MANUAL FOR COMPLEX LITIGATION* § 13.14 (4th ed. 2016). Rule 23(e) further provides that before a class action may be dismissed or compromised, notice of the proposed dismissal or compromise must be given to class members in the manner directed by the court, a hearing must be held, and judicial approval must be obtained.

In determining whether to *preliminarily* approve a settlement, the Court is not charged with engaging in the rigorous analysis of the Settlement Agreement required for *final* approval, but rather conducts a preliminary review to "ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing." *Armstrong v. Bd. of Sch. Dirs. of the City of Milwaukee*, 616 F.2d 305, 314 (7th Cir. 1980), *overruled on other grounds*, *Felsen v. Andreas*, 134 F.3d 873 (7th Cir. 1998). As a prominent treatise explains:

> At the stage of preliminary approval, the questions are simpler, and the court is not expected to, and probably should not, engage in analysis as rigorous as is appropriate for final approval…. In evaluating a settlement for preliminary approval, the court determines whether the proposed settlement discloses grounds

---

[5] A [Proposed] Order and Final Judgment is attached as Exhibit 5 to this memorandum.

to doubt its fairness or other obvious deficiencies such as unduly preferential treatment of class representatives or segments of the class, or excessive compensation of attorneys, and whether it appears to fall within the range of possible approval…. After a preliminary determination as to the fairness of a proposed settlement, the court must direct notice to class members and hold a final fairness hearing before formally approving the settlement.

David F. Herr, ANNOTATED MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.662 (2012); *see also Ledford v. City of Highland Park*, No. 00 C 4212, 2000 U.S. Dist. LEXIS 11101, at *5 (N.D. Ill. July 27, 2000) ("The . . . question is whether the proposed consent order falls within the range of reasonableness such that it can preliminarily be found to be a fair settlement.").

This low threshold acknowledges that the *final* approval hearing is the stage at which courts "adduce all information necessary to enable [them] intelligently to rule on whether the proposed settlement is 'fair, reasonable, and adequate.'" *Armstrong*, 616 F.2d at 314 (citing *MANUAL FOR COMPLEX LITIGATION* (rev'd ed.) § 1.46, at 57). [6] At preliminary approval, a court's role does not entail "resolving the merits of the controversy or making a precise determination of the parties' respective legal rights." *E.E.O.C. v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 889 (7th Cir. 1985) (collecting cases). A settlement does necessarily require a judgment and evaluation by the attorneys for the parties based upon a comparison of "the terms of the compromise with

---

[6] At the Final Approval Hearing, the Court has the discretion under Rule 23(e) to finally approve the Settlement if the Court finds it to be fair, adequate, and reasonable to the Class. The Seventh Circuit has set forth an eight-factor test to determine the fairness of a class action settlement: (1) the strength of the case for plaintiffs on the merits, balanced against the amount offered in settlement; (2) the defendant's ability to pay; (3) the complexity, length and expense of further litigation; (4) the degree of opposition to the settlement; (5) the presence of collusion in reaching a settlement; (6) the reaction of members of the class to the settlement; (7) the opinion of competent counsel; and (8) the stage of the proceedings and the amount of discovery completed. *See Armstrong*, 616 F.2d at 314 (quoting 3B Moore's Federal Practice ¶ 23.80[4] at 23-521 (2d ed. 1978)); *see also Hispanics United of Dupage Co. v. Village of Addison, Ill.*, 988 F. Supp. 1130, 1149-50 ( N.D. Ill. 1997); *Scholes v. Stone, McGuire & Benjamin*, 839 F. Supp. 1314 (N.D. Ill. 1993).

the likely rewards of litigation." *Depoister v. Mary M. Holloway Found.*, 36 F.3d 582, 586 (7th Cir. 1994) (quoting *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry v. Anderson*, 390 U.S. 414, 424-25 (1968)). An evaluation of the costs and benefits of settlement must also be tempered by the recognition that any compromise involves concessions on the part of all of the settling parties. Indeed, "the very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'" *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 624 (9th Cir. 1982) (citation omitted).

Finally, it is well-established that there is an overriding public interest in settling litigation, and this is particularly true in class actions. *See Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation."); *see also Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (discussing the "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned"). In *Goldsmith v. Tech. Solutions Co.*, No. 92 C 4374, 1995 U.S. Dist. LEXIS 15093 (N.D. Ill. Oct. 10, 1995), Judge Guzman recognized:

> [T]he federal courts look with great favor upon the voluntary resolution of litigation through settlement. In the class action context in particular, there is an overriding public interest in favor of settlement.

*Id.* at *6 (citations and quotation marks omitted); *see also Hispanics United*, 988 F. Supp. at1149 ("Compromise is particularly appropriate in complex class actions.").

**B.      This Settlement Is Within the Range of Reasonableness Justifying Preliminary Approval**

Applying these principles, the Settlement Agreement easily meets the "range of reasonableness" test for preliminary approval, particularly in light of the strong public policy in favor of settling class actions. The Settlement Agreement presents a strong case for sending out notice and proceeding with a final fairness hearing: it was reached after extended and contentious

negotiations involving the parties, their counsel, and other professionals, assisted by a skilled mediator; it takes into account the risks of litigation and the financial circumstances of Holy Cross and SHS; it promptly provides valuable benefits to the Settlement Class; it proposes reasonable limits on attorney compensation and class representative incentive fees; and it does not prefer any Settlement Class members over others.

### 1. The Settlement Provides Certain Relief and Eliminates the Uncertainty of Prevailing On the Merits

The Complaint alleges that the Plan had a $31 million Plan funding shortfall. Compl. ¶ 5. The approximately $9 million provided for in the Settlement Agreement includes a recovery of $4 million in addition to the $5.1 million of assets remaining in the Plan, enabling a net distribution to the Settlement Class (after deducting attorneys' fees and other Plan related expenses) of approximately $8.4 million. Other material components of the Settlement include provisions to secure payment of the $4 million Escrow Contribution and to protect the Settlement in the event that insolvency proceedings are initiated involving Holy Cross or SHS. Ex. 1 § 9. The Settlement thus promptly increases the amounts the Settlement Class will receive, while mitigating the risks and uncertainty of litigation.

This risk mitigation is significant, particularly in light of the fact that an important issue in this case is currently pending before the United States Supreme Court. *See* Ex. 1 § § 2.2, 2.3 (acknowledging that the Supreme Court granted certiorari to review *Stapleton v. Advocate Healthcare Network*, 817 F.3d 517, 530 (7th Cir. 2016), which decided that only a church could establish a church plan); Reiser Decl. ¶ 10. If the Supreme Court affirms, Defendants will attempt to establish, over Plaintiffs' objection, that Holy Cross Hospital is a "church"; if Defendants should prevail, or even if the Supreme Court reverses, Plaintiffs will pursue the other four independent theories plead in their Complaint. *See* Reiser Decl. ¶¶ 2, 10. Further, if

14

Plaintiffs succeed in demonstrating that Holy Cross is not a church and is liable, in order to recover from SHS they would still need to demonstrate that the transfer of Plan sponsorship to SSC prior to Holy Cross's acquisition by SHS was fraudulent or otherwise avoidable. *See id.* ¶¶ 10-11. Defendants have indicated that securing a judgment in the amount Plaintiffs seek would force them to seek bankruptcy protection. *See id.* ¶¶ 8-9. Accordingly, even if Plaintiffs were to prevail each step of the way, the litigation may yield no recovery whatsoever.

## 2. Class Counsel Endorse the Settlement Based on Information Defendants Provided During the Mediation Process with Respect to the Hospitals' Financial Condition

Courts recognize that the opinion of experienced counsel supporting a settlement is entitled to considerable weight. *See e.g., In re: Sears, Roebuck & Co. Front-loading Washer Prod. Liab. Litig.*, No. 06 C 7023, 2016 WL 772785, at *12 (N.D. Ill. Feb. 29, 2016); *Armstrong*, 616 F.2d at 325 (In determining the fairness of a class settlement, "the court is entitled to rely heavily on the opinion of competent counsel."). Here, Class Counsel — three law firms that are nationally recognized for their expertise in employee benefits law and church plan litigation — believe that this Settlement is fair, reasonable, and adequate in light of the circumstances in this case. Reiser Decl. ¶¶ 19, 25.

Their conclusion is the product of extensive, informed, arm's-length negotiations. Reiser Decl. ¶ 16. The Parties' negotiations were overseen by an experienced mediator, Robert Meyer, who has mediated many ERISA and retirement plan cases, including cases contesting the applicability of the church plan exemption. *Id.* ¶ 5. Class Counsel relied on Mr. Meyer's proposal for achieving settlement after considering all relevant factors. *Id.* ¶ 13.

Moreover, Class Counsel has deep familiarity with the factual and legal issues of this case and the risks associated with continued litigation. *Id.* ¶ 19. Cohen Milstein and Keller

Rohrback, two of the firms engaged as Class Counsel, are representing the plaintiffs-respondents before the Supreme Court in *Advocate*, 137 S. Ct. 546 (2016), as well as in two other cases from the Third and Ninth Circuits that reached the same conclusion as *Advocate*. *Kaplan v. Saint Peter's Healthcare Sys.*, 810 F.3d 175, 183 (3d Cir. 2015); *Rollins v. Dignity Health*, 830 F.3d 900, 905 (9th Cir.). Reiser Decl. ¶ 20. On January 24, 2017, the U.S. government filed an amicus brief in support of the defendants-petitioners' position. Though Class Counsel remain confident in the merits of the *Advocate* case, the pendency of the Supreme Court case interposes an undeniable risk that the existing Seventh Circuit law in Plaintiffs' favor could be reversed or altered.

As set forth above and as is apparent in the Settlement Agreement, Class Counsel also gave careful attention to the hospitals' ability to withstand judgment, and negotiated for various protections in the event that Holy Cross and/or SHS sought protection from insolvency during the course of the settlement process. Reiser Decl. ¶ 16. Class Counsel's views were informed by Defendants' historical results, future revenue streams, and also the state of healthcare reimbursements in Illinois and nationwide. *Id.* ¶ 17.

Finally, it is well-recognized that named plaintiffs are entitled to an incentive fee to induce them to participate in the lawsuit. *In re AT & T Mobility Wireless Data Servs. Sales Tax Litig.*, 792 F. Supp. 2d 1028, 1041-42 (N.D. Ill. 2011) (collecting cases) (noting the mean incentive fee is approximately $16,000). Such enhancements compensate class representatives for their time, effort, and willingness to play an active role if the parties continued litigating through trial. *Id.*; *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 503 (N.D. Ill. 2015). Here, each of the Named Plaintiffs made substantial contributions to the litigation, including: collecting and producing documents; maintaining regular contact with Class Counsel; reviewing and

16

approving the Complaint; staying abreast of settlement negotiations; and advising on the settlement of this litigation. Reiser Decl. ¶ 18. These actions provided great benefit to the members of the Settlement Class and thus the requested awards to Named Plaintiffs are appropriate. *See id.*

At this juncture, the Court need not consider the ultimate question: whether the proposed Settlement is fair, reasonable, and adequate. However, preliminary consideration of factors considered by courts in this Circuit in granting final approval lends support to Plaintiffs' belief that this settlement is well "within the range of possible approval." *Armstrong*, 616 F.2d at 310. For this and all the foregoing reasons, the Settlement deserves the Court's preliminary approval.

**C.      The Proposed Class Satisfies the Requirements for Certification Pursuant to Rule 23 of the Federal Rules of Civil Procedure.**

Plaintiffs request that the Court preliminarily certify the Class for settlement purposes only, under Federal Rule of Civil Procedure 23(a) and 23(b)(1) and (2). As set forth above, the Class is defined as "All Plan participants or Plan beneficiaries who received a distribution from the Plan on December 31, 2015, in connection with the Plan's intended termination and (i) who were not later identified as having died prior to September 1, 2015; or (ii) who were not included in the Plan's distribution on December 31, 2015, in connection with the Plan's intended termination, but who were identified after December 31, 2015, in connection with the Plan's intended termination, but who were identified after December 31, 2015 as being eligible for a benefit prior to the Settlement's effective date." Excluded from the Class are the Individual Defendants named in the Complaint. Plaintiffs also move the Court to preliminarily appoint Cohen Milstein Sellers & Toll PLLC, Keller Rohrback L.L.P., and DeBofsky, Sherman & Casciari, P.C. as class counsel.

17

### 1. Provisional Certification of the Settlement Class is Appropriate

A settlement class must meet the requirements for class certification under Rule 23(a) (numerosity, commonality, typicality, and adequacy). *In re: Sears, Roebuck & Co.*, 2016 WL 772785, at *8. These requirements readily are satisfied here.

**Numerosity.** The first requirement, numerosity, "is typically satisfied where there are at least forty members of a putative class." *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 491 (N.D. Ill. 2015), *appeal dismissed* (Jan. 27, 2016), *appeal dismissed* (Feb. 1, 2016), *appeal dismissed* (Feb. 3, 2016). *See also, e.g., Flanagan v. Allstate Ins. Co.*, 242 F.R.D. 421, 427 (N.D. Ill.), *modified*, 242 F.R.D. 434 (N.D. Ill. 2007) ("permissive joinder is usually deemed impractical where the class members number 40 or more"). Here, Plaintiffs allege that, as of December 2015, the Plan had approximately 2,000 participants (Compl. ¶ 102), a number roughly consistent with information provided by Defendants during mediation. Plaintiffs further allege that, as a result of the underfunding of the Plan, all participants and beneficiaries suffered reductions in pension benefits under the Plan at the time it was terminated. *Id.* As all of the participants and beneficiaries are members of the Class, the Class is so numerous that joinder of all members is impracticable.

**Commonality.** The commonality requirement set forth in Rule 23(a)(2) requires that a proposed class action raise "questions of law or fact common to the class." *See Barragan v. Evanger's Dog & Cat Food Co.*, 259 F.R.D. 330, 334 (N.D. Ill. 2009) ("Commonality requires that there be at least one question of law or fact common to the class.") (quoting *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992)). The common questions of law and fact include, for example: (1) whether the Plan is subject to ERISA, and, if so; (2) whether the fiduciaries of the Plan have failed to administer and failed to enforce the funding obligations of the Plan in

18

accordance with ERISA; (3) whether the fiduciaries of the Plan improperly terminated the Plan without complying with the requirements of ERISA; (4) whether as a consequence of the failure to properly terminate the Plan, Holy Cross continues to be liable for payment of unfunded benefits due to the participants under the Plan and unpaid minimum funding contributions, 29 U.S.C. §§ 1362, 1364; (5) and, whether SHS, as the sole corporate member of Holy Cross is part of a controlled group that is jointly and severally liable, along with Holy Cross, for any unfunded benefits under the Plan. *Brieger v. Tellabs, Inc.,* 245 F.R.D. 345, 349 (N.D. Ill. 2007) (finding that "because plaintiffs' claims derive from defendants' actions (or inactions) with respect to the Plan, plaintiffs have demonstrated that their claims involve a common nucleus of operative fact" and therefore that the putative ERISA class met the commonality requirement).

*Typicality.* Plaintiffs' claims are typical of Class Members' claims because all claims are based on Defendants' alleged wrongful conduct and all members of the Class were similarly affected by such conduct. The requirement of typicality is therefore satisfied. *See Rosario*, 963 F.2d at 1018 ("[A] plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory") (internal quotation marks omitted); *see also Brieger*, 245 F.R.D. at 350 (finding that typicality is met where a putative ERISA class "seek[s] relief on behalf of the plan…for alleged fiduciary violations as to the Plan").

*Adequacy.* Rule 23 also "requires that the representative parties fairly and adequately represent the class. A class is not fairly and adequately represented if class members have antagonistic or conflicting claims." *Id* at 355. Here, Plaintiffs Butler and Fitzsimmons, as the proposed class representatives, adequately represent the Class, as their claims are typical of the claims of the other members of the Class. Their claims, like the claims of the other Class

members, arise from the same event, practice and/or course of conduct—namely, Defendants' failure to maintain the Plan in accordance with ERISA. Plaintiffs' claims are also typical because all Class members are similarly affected by Defendants' conduct, and all Class members seek the same relief on behalf of the plan. *Brieger*, 245 F.R.D. at 356 (where a putative ERISA class "bring[s] claims on behalf of the Plan, not for individual relief . . . there is no inherent conflict between the claims of the named plaintiffs and those of the putative class" and the named plaintiffs satisfy the "adequacy" requirement).

2. **The Class Satisfies the Requirements of Rule 23(b)(1) and (b)(2).**

a. **Rule 23(b)(1): Individual Actions Would Create Inconsistent Adjudications or Be Dispositive of the Interests of Absent Members.**

A class may be certified under Federal Rule of Civil Procedure 23(b)(1) if, in addition to meeting the requirements of Federal Rule of Civil Procedure 23(a), the prosecution of separate actions by individual class members would create the risk of inconsistent adjudications, which would create incompatible standards of conduct for the defendant, or would as a practical matter be dispositive of the interest of absent members. Fed. R. Civ. P. 23(b)(1)(A) and (B).

There is a clear risk of inconsistent adjudication and incompatible standards here: in the absence of certification, two participants could bring identical actions and achieve different results, with one court holding that the Plan is an ERISA-regulated plan and the other holding that it is not. *See, e.g., Neil v. Zell*, 275 F.R.D. 256, 267 (N.D. Ill. 2011) ("ERISA class actions are commonly certified under either or both subsections of 23(b)(1) because recovery for a breach of the fiduciary duty owed to an ERISA plan, as is the predominant claim here, will inure to the plan as a whole, and because defendant-fiduciaries are entitled to consistent rulings regarding operation of the plan. Essentially, in an ERISA action in which relief is being sought on behalf of the plan as a whole (as it is here), a plaintiff's victory would necessarily settle the

issue for all other prospective plaintiffs"). Courts in this District have certified classes under Federal Rule of Civil Procedure 23(b)(1) in ERISA cases for those very reasons. *Id.* ("Numerous ERISA actions in this district have been certified under 23(b)(1)") (collecting cases).

Moreover, the Advisory Committee Notes on Rule 23 specifically acknowledge that actions which "charge[] a breach of trust by an indenture trustee or other fiduciary similarly affecting the members of a large class of . . . beneficiaries" – *i.e.*, an action like the present action – "should ordinarily be conducted as class actions" under Rule 23(b)(1)(B). *See* Fed. R. Civ. P. 23(b)(1)(B) advisory committee's note to 1966 amendment. As a result, certification of the proposed class under Rule 23(b)(1) is appropriate in this ERISA action.

### b. Rule 23(b)(2). Defendants Have Acted on Grounds Generally Applicable to the Class and Relief for the Class as a Whole Is Appropriate.

A class also may be certified under Federal Rule of Civil Procedure 23(b)(2) if it satisfies Rule 23(a)(1) and "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole[.]" Fed. R. Civ. P. 23(b)(2). Here, Plaintiffs allege that Defendants failed to comply with ERISA on a Plan-wide basis.

Specifically, Plaintiffs allege that the Plan was terminated as of September 1, 2015, at a time when its assets were insufficient to pay all accrued benefits to participants and beneficiaries. Plaintiffs allege that participants and beneficiaries of the Plan have received partial payment; Plaintiffs' actuarial expert estimated the Plan provided participants a substantial discount to their accrued benefits on account of that termination. Plaintiffs further allege that in 2013, at a time when the Plan was underfunded by $31 million, prior to the change of membership of Holy Cross to SHS, liability for the Plan was improperly transferred to an entity that lacked sufficient

assets or the ability to fund the Plan.

In the Complaint, Plaintiffs allege that Defendants (a) violated ERISA's reporting and disclosure provisions under §§ 101-105; (b) failed to adhere to ERISA's required minimum funding standards for the Plan under ERISA § 302; (c) failed to establish the Plan pursuant to a written instrument meeting the requirements of ERISA § 402; (d) failed to establish a trust meeting the requirements of ERISA § 403; (e) violated ERISA's anti-cutback provision under § 204(g); and (f) failed to terminate the Plan in compliance with ERISA § 4041. Plaintiffs allege that Defendants breached fiduciary duties owed to the Plan's participants and beneficiaries, including Plaintiffs, pursuant to ERISA §§ 404(a)(1), 406(a)(1), and 406(b)(1). Plaintiffs further allege that the Church Plan exemption, as claimed by Defendants, violates the Establishment Clause of the First Amendment of the United States Constitution. Plaintiffs also allege that Defendants failed to obtain pension insurance from the PBGC, as required by ERISA § 4022. Finally, Plaintiffs claim that Holy Cross and SHS are liable for the $31 million in underfunding, pursuant to ERISA §§ 302(a), 302(b)(2), and 4062.

Although Defendants deny each allegation of the Complaint and contend that defenses exist for every claim, each of Plaintiffs' allegations, if proven, would harm the entire class as a group. This is further underscored by the fact that Plaintiffs not only seek to represent themselves and all others similarly situated, but also seek to represent the Plan itself. As a result, certification of the proposed class under Rule 23(b)(2) is also appropriate in this ERISA action.

**D.**        **Rule 23(g) Is Satisfied.**

Federal Rule of Civil Procedure 23(g) requires that the Court examine the capabilities and resources of class counsel. Class Counsel has detailed the claims brought in this action, and the time and effort already expended in connection with this litigation. Moreover, Class Counsel are among the leading litigators of ERISA actions on behalf of plaintiffs, and possess unparalleled expertise in the specific types of ERISA claims brought in this lawsuit. Reiser Decl. ¶¶ 19-21. Class Counsel thus satisfy the requirements of Rule 23(g).

**E.**        **Appointment of Class Counsel to Hold Mortgage for Class**

As noted at page 7, above, Section 9 of the Settlement Agreement provides for Holy Cross to grant a mortgage securing performance of the Settlement for the benefit of the Settlement Class.  To facilitate the mortgage transaction, Plaintiffs request that the Court authorize and appoint DeBofsky, Sherman & Casciari, P.C., one of Class Counsel representing Plaintiffs herein, to be named as mortgagee on the mortgage.  Such appointment will allow Class Counsel, on behalf of the Settlement Class, to execute the release of mortgage to be held in escrow pursuant to Section 9.1.2 of the Settlement Agreement, and will allow Class Counsel, if necessary, to proceed with enforcement of the mortgage for the benefit of the Settlement Class.

**F.**        **The Proposed Notice Program Satisfies the Due Process Requirements of Rule 23.**

In order to satisfy due process considerations, and pursuant to Rule 23(c)(2), notice to class members must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank Trust Co.*, 339 U.S. 306, 314 (1950) (citation omitted). Here, the proposed Class Notice Program describes in plain English the Settlement; the considerations that

caused Plaintiffs and Class Counsel to conclude that the Settlement is fair and adequate; the maximum attorneys' fees and expenses, and Incentive Payment Awards to Named Plaintiffs that may be sought; the procedure for objecting to the Settlement; and the date and place of the Fairness Hearing. *See* Ex. 3.

With the Court's approval, Summary Notice, substantially in the form attached as Exhibit 3, will be mailed to each member of the Settlement Class by first class mail, no later than 60 days prior to the Fairness Hearing. The Summary Notice is designed to command the attention of Class members, provides summarized information about the Settlement, and directs Class Members to either of two websites (www.cohenmilstein.com/HCH-settlement and/or www.kellersettlements.com) where the Settlement Agreement and long-form Class Notice (Ex. 4) may be viewed and downloaded. This Notice Program will fairly apprise Class Members of the Settlement Agreement and their options with respect thereto, and therefore fully satisfy due process requirements. *See Newberg on Class Actions*, Vol. 3, §§ 8:12, 8:15, 8:28, 8:33 (5th ed. 2014).

The proposed Notice Program fulfills the requirements of due process because it alerts and informs those Settlement Class Members who can be identified through reasonable efforts of all of the information set forth above. Courts routinely find that comparable notice programs meet the requirements of due process and Rule 23. *See In re: BP p.l.c. Sec. Litig.*, No. 4:10-MD-2185, 2016 WL 7668474, at *2 (S.D. Tex. Nov. 4, 2016) (approving notice program that involved mailing a summary notice with instructions for obtaining long-form notice online); *Wright v. Nationstar Mortgage LLC, No.* 14 C 10457, 2016 WL 4505169, at *13 (N.D. Ill. Aug. 29, 2016)*, appeal dismissed* (Oct. 24, 2016) (same); *In re Mut. Funds Inv. Litig.*, No. 04-MD-15863, 2010 WL 2077972, at *4 (D. Md. May 19, 2010) (same); *In re Advanced Battery Techs.,*

*Inc. Sec. Litig.*, 298 F.R.D. 171, 182 (S.D.N.Y. 2014) (same); *Trombley v. Bank of Am. Corp.*,

No. 08-CV-456-JD, 2011 WL 3740488, at *2 (D.R.I. Aug. 24, 2011) (same). *See also In re*

*Enron Corp. Sec. & ERISA Litig.*,No. H-01-3624, 2003 WL 22494413, at *3 (S.D. Tex. July 24,

2003); *In re OCA, Inc. Sec. & Deriv. Litig.*,  No. 05-2165, 2008 WL 4681369, at *14-16 (E.D.

La. Oct. 17, 2008); *W. Wash. Laborers-Employers Pension Trust v. Panera Bread Co.*, No.

4:08CV00120 ERW, 2011 WL 720060, at *2-3 (E.D. Mo. Feb. 22, 2011).

## G.        Proposed Schedule

The Parties have agreed to the following set of deadlines, the specific dates of which will

be determined after the Court enters the Preliminary Approval Order and sets a Fairness Hearing

date:

| Event | Time for Compliance |
|---|---|
| Deadline for CAFA Notice | March 10, 2017 |
| Deadline for Mailing of Summary Notice and Posting Class Notice to Website | No later than 60 days prior to the Proposed Fairness Hearing |
| Deadline for Filing Plaintiffs' Motion for Final Approval, Attorneys' Fees and Expenses, and Incentive Fees for Plaintiffs | 45 days prior to the Proposed Fairness Hearing |
| Deadline for the Settlement Class to Comment upon or Object to the Proposed Settlement | 28 days prior to the Proposed Fairness Hearing |
| Deadline for Filing Plaintiffs' Reply in Support of Motion for Final Approval, Attorneys' Fees and Expenses, and Incentive Fees for Named Plaintiffs, and for the Parties to Respond to Any Comments or Objections | 7 days prior to the Proposed Fairness Hearing |
| Proposed Fairness Hearing | On or after June 27, 2017[7] |

---

[7] Pursuant to the U.S. Class Action Fairness Act of 2005, 28 U.S.C. § 1715(d), the date of the Fairness Hearing must be at least 90 days after notices are served on the appropriate state and federal officials.

## IV.     CONCLUSION

Class Counsel respectfully request that the Court grant Plaintiffs' motion and (i) enter the proposed Preliminary Approval Order, which provides for notice to the Class as described herein, and (ii) set a Fairness Hearing, along with deadlines for Plaintiffs to (a) file and serve the motion for award of attorneys' fees and expenses and for Incentive Payment Awards for Named Plaintiffs; and (b) file their motion for final approval of the proposed Settlement.

DATED this 1st day of March, 2017.

By:     s/ Julie Goldsmith Reiser
     Julie Goldsmith Reiser

Karen L. Handorf
Julie G. Reiser
COHEN MILSTEIN SELLERS & TOLL, PLLC
1100 New York Ave., NW, Suite 500 West
Washington, DC 20005

Lynn L. Sarko
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101

Chris Graver
KELLER ROHRBACK L.L.P.
3101 North Central Avenue, Suite 1400
Phoenix, AZ 85012

Mark D. DeBofsky
DEBOFSKY, SHERMAN & CASCIARI, PC
200 W. Madison Street, Suite 2670
Chicago, IL 60606

*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I certify that on March 1, 2017, I electronically filed the foregoing with the Clerk of the

Court using the CM/ECF system which will send notification of such filing to all counsel of

record.

s/ Julia Horwitz _____