# Exhibit 1

*Butler, et al. v. Holy Cross Hospital, et al.*
**Settlement Agreement, March 1, 2017**

## CLASS ACTION SETTLEMENT AGREEMENT

This CLASS ACTION SETTLEMENT AGREEMENT is entered into by and between Plaintiffs, as defined in § 1.21 below, on the one hand, and Defendants, as defined in § 1.8 below, on the other. Capitalized terms and phrases have the meanings provided in § 1 below or as specified elsewhere in this Settlement Agreement.

1.   DEFINITIONS

1.1.   "*Action*" shall mean: *Butler, et al. v. Holy Cross Hospital, et al.,* No. 16-05907, an action pending in the United States District Court for the Northern District of Illinois.

1.2.   "*Church Plan*" shall mean: a plan which meets the definition of a "church plan" under ERISA § 3(33), 29 U.S.C. § 1002(33) and Section 414(e) of the Internal Revenue Code of 1986, as amended.

1.3.   "*Class Counsel*" shall mean: Cohen Milstein Sellers & Toll PLLC, Keller Rohrback L.L.P., and DeBofsky, Sherman & Casciari, PC.

1.4.   "*Class Notice*" shall have the meaning provided in § 3.2.3.

1.5.   "*Class Settlement Amount*" shall have the meaning set forth in § 8.1.1.

1.6.   "*Complaint*" shall mean: the Class Action Complaint filed in the Action on June 6, 2016.

1.7.   "*Court*" shall mean: The United States District Court for the Northern District of Illinois.

1.8.   "*Defendants*" shall mean: Holy Cross Hospital ("HCH"); Sinai Health System ("SHS"); and the following individuals (collectively, the "*Individual Defendants*"): Wayne Lerner; Diane Howard; John R. Ball, M.D.; Barbara Fahey; Satya Ahuja, M.D.; Chia Huang, M.D.; Larry Margolis; Sivaramaprasad Tummala, M.D.; Howard Berman; Gary J. Niederpruem; Sharon Rossmark; Yogi Ahuluwalia, M.D.; John Benevides; Charles Brown; Daniel Cantrell; Alan H. Channing; John Danaher, M.D.; Leslie Davis; Mark J. Frisch; Aida Giachello; Neal Goldstein; Albert Grace; Jonathan Jonas; Gary Keller; Kenneth A. Luccioni; Robert Markin; Gloria Materre; Bret Maxwell; Wayne Pierce; Maurice Schwartz; Robert Shakno; Ben Soldinger; Alan Solow; Robert Steele; Steve Topel; Terry Wheat; and John and Jane Does 1-40, inclusive.

1.9.   "*Effective Date*" or "*Effective Date of Settlement*" shall mean: the date on which all of the conditions to settlement set forth in § 3 of this Settlement Agreement have been fully satisfied or waived and the Settlement shall have become Final.

1.10.   "*ERISA*" shall mean: the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.*, as amended, including all regulations promulgated thereunder.

1.11.   "*Escrow Account*" shall mean: the account, as detailed in Exhibit A to this Settlement Agreement, into which Defendants will cause $4 million to be deposited.

1.12.   *"Fairness Hearing"* shall have the meaning provided in § 3.2.5(a).

1.13.   *"Final"* shall mean: with respect to any judicial ruling or order in the Action, that the period for any appeals, petitions, motions for reconsideration, rehearing or certiorari or any other proceedings for review ("Review Proceeding") has expired without the initiation of a Review Proceeding, or, if a Review Proceeding has been timely initiated, that there has occurred a full and completed disposition of any such Review Proceeding, including the exhaustion of proceedings in any remand and/or subsequent appeal on remand.

1.14.   *"Final Approval Motion"* shall have the meaning provided in § 3.2.6.

1.15.   *"Final Approval Order"* shall have the meaning provided in § 3.2.5(a).

1.16.   *"HCH"* shall mean Holy Cross Hospital, a not-for-profit corporation organized in Illinois.

1.17.   *"Judgment"* shall have the meaning provided in § 3.2.5(a).

1.18.   *"Liquidation"* shall refer to Defendants' intent to liquidate and formally terminate the Plan upon the Settlement distribution described herein.

1.19.   *"Party"* or *"Parties"* shall mean the Plaintiffs and Defendants, either individually or collectively.

1.20.   *"Person"* shall mean: an individual, partnership, corporation or any other form of organization.

1.21.   *"Plaintiffs"* and *"Named Plaintiffs"* shall mean: Corinne Butler and Andrea Fitzsimmons.

1.22.   *"Plan"* shall mean: the Pension Plan for Employees of Holy Cross Hospital.

1.23.   *"Plan Payment"* shall mean the funds described in § 8.1.2 that are available for contribution to the Plan after payment of Attorneys' Fees and Expenses and Incentive Payment Awards described in § 8.1.5.

1.24.   *"Plan Termination"* shall mean Defendants' purported termination of the Pension Plan on September 1, 2015, which caused the Plan to distribute benefits on December 31, 2015.

1.25.   *"Plan Trust Amount"* shall mean the funds described in § 8.1.3.

1.26.   *"Preliminary Approval Motion"* shall have the meaning provided in § 3.2.1.

1.27.   *"Preliminary Approval Order"* shall have the meaning provided in § 3.2.1.

1.28.   *"Released Claims"* shall have the meaning provided in § 4.1.

1.29.    *"Releasees"* shall mean: all Individual Defendants, HCH, SHS, all Affiliates of SHS (defined as any entity controlling, controlled by, or under common control of or with SHS), all entities that are considered to be a single employer under IRC § 414, Sisters of St. Casimir as a religious institute recognized by the Roman Catholic Church as well as (or acting through) The Sisters of Saint Casimir of Chicago, an Illinois not-for profit corporation (collectively, the "Order") as well as each individual Sister of the Order, and all former and current directors, officers, Pension Plan Committee members (including members of any similar committee with a different name but with fiduciary and/or administrative responsibility for the Plan), employees, agents, counsel, other Plan fiduciaries, and insurers of any of the previous entities (for clarity, HCH, SHS, all Affiliates of SHS, all entities that are considered to be a single employer under IRC § 414, and the Order).

1.30.    *"Representatives"* shall mean: representatives, attorneys, agents, directors, officers, employees, insurers, and reinsurers.

1.31.    *"Settlement"* shall mean: the settlement to be consummated under this Settlement Agreement pursuant to the Final Approval Order.

1.32.    *"Settlement Agreement"* shall mean this Class Action Settlement Agreement entered into by and between Plaintiffs and Defendants.

1.33.    *"SHS"* shall mean: Sinai Health System, a not-for-profit corporation organized in Illinois.

1.34.    *"Settlement Class"* shall mean: All Plan participants or Plan beneficiaries who received a distribution from the Plan on December 31, 2015, in connection with the Plan's intended termination and (i) who were not later identified as having died prior to September 1, 2015; or (ii) who were not included in the Plan's distribution on December 31, 2015, in connection with the Plan's intended termination, but who were identified after December 31, 2015, as being eligible for a benefit prior to the Settlement's effective date. Excluded from the class are the Individual Defendants named in the Complaint.

1.35.    *"Successor-In-Interest"* shall mean: a Person's estate, legal representatives, heirs, successors, or assigns, and any other Person who can make a legal claim by or through such Person.

1.36.    *"Term Sheet"* shall mean: the document entitled "*Butler, et al. v. Holy Cross Hospital, et al.* Settlement Term Sheet" dated February 16, 2017.

2.    RECITALS

2.1.    Plaintiffs allege and seek declaratory relief against Defendants that the Plan is not a Church Plan within the meaning of ERISA § 3(33) and thus is subject to the provisions of Title I and Title IV of ERISA. Plaintiffs allege that the Plan was purportedly terminated as of September 1, 2015, at a time when its assets were insufficient to pay all accrued benefits to beneficiaries. Plaintiffs allege that, based upon an estimate by their actuarial expert, the Plan paid

participants only 50% of their accrued benefits upon the Plan's purported termination. Plaintiffs further allege that in 2013, at a time when the Plan was underfunded by $31 million, prior to the transfer of membership interests in HCH to SHS, liability for the Plan was improperly transferred to an entity that lacked sufficient assets or the ability to fund the Plan. In the Complaint, Plaintiffs allege that Defendants (a) violated ERISA's reporting and disclosure provisions under §§ 101-105; (b) failed to adhere to ERISA's required minimum funding standards for the Plan under ERISA § 302; (c) failed to establish the Plan pursuant to a written instrument meeting the requirements of ERISA § 402; (d) failed to establish a trust meeting the requirements of ERISA § 403; (e) violated ERISA's anti-cutback provision under § 204(g); and (f) failed to terminate the Plan in compliance with ERISA § 4041. Plaintiffs allege that Defendants breached fiduciary duties owed to the Plan's participants and beneficiaries, including Plaintiffs, pursuant to ERISA §§ 404(a)(1), 406(a)(1), and 406(b)(1). Plaintiffs further allege that the Church Plan exemption, as claimed by Defendants, violates the Establishment Clause of the First Amendment of the United States Constitution. Plaintiffs also allege that Defendants failed to obtain pension insurance from the Pension Benefit Guaranty Corporation ("PBGC"), as required by ERISA § 4022. Finally, Plaintiffs claim that HCH and SHS are liable for the $31 million in underfunding, pursuant to ERISA §§ 302(a), 302(b)(2), and 4062. Defendants deny each and every allegation of the Complaint and believe substantial and meritorious defenses exist for every claim alleged by Plaintiffs.

2.2.     Prior to this case being filed, another case concerning the church plan exception, *Stapleton v. Advocate Healthcare Network*, 76 F.Supp.3d 796 (N.D. Ill. 2014) ("*Advocate*"), was appealed to the Seventh Circuit Court of Appeals after the District Court ruled in favor of the plaintiffs and found that only a church could establish a church plan. On March 17, 2016, the Seventh Circuit issued its ruling in the *Advocate* case and held that (1) a church plan must be established by a church, and (2) a church plan must be maintained either by a church or by a principal-purpose organization. *Stapleton v. Advocate Health Care Network,* 817 F.3d 517, 530 (7th Cir. 2016).

2.3.     On December 2, 2016, the Supreme Court of the United States granted certiorari to review the Seventh Circuit's decision. *Advocate Health Care Network v. Stapleton*, 137 S. Ct. 546 (2016).   The Supreme Court has not ruled.

2.4.     This is a complex, multi-defendant case which will require the Parties and the Court to expend significant time and resources to litigate regardless of how the Supreme Court rules. Recognizing this, the Parties sought an early resolution of this matter and agreed to submit to formal mediation before a nationally-known mediator, Robert A. Meyer, of JAMS. (Dkt. No. 14).

2.5.     The Parties have thrice asked the Court to stay proceedings so that the Parties could continue to negotiate and explore whether early settlement could be achieved. (*See* Dkt. Nos. 14, 30, 32).

2.6.     While proceedings were stayed, the Parties remained actively engaged in settlement negotiations through informal mediation discovery, including Defendants' production of

*Butler, et al. v. Holy Cross Hospital, et al.*
**Settlement Agreement, March 1, 2017**

documents requested by Plaintiffs, analyses of Defendants' financial condition, and consultation with professionals and experts to assist in helping the parties assess the risk of continued litigation.

2.7.     In particular, on August 24, 2016, the Parties appeared before Robert A. Meyer in Los Angeles, California. And again, on December 19, 2016, the Parties held a second face-to-face meeting with the mediator, experts and professionals to continue negotiations and attempt to bring this matter to final resolution. Thereafter, on numerous occasions the Parties spoke telephonically in January and February, 2017 to arrive at the agreed-upon settlement terms.

2.8.     Defendants desire to resolve fully and settle with finality the Action and all of Plaintiffs' Released Claims for themselves, the Settlement Class, the Releasees, and the Plan, thereby avoiding the risk, expense, inconvenience, burden, distraction and diversion of their personnel and resources, and uncertainty of outcome that is inherent in any litigation, associated with the Action.

2.9.     Class Counsel has conducted an extensive investigation into the facts, circumstances and legal issues associated with the allegations made in the Action. This investigation has included, *inter alia:* (a) inspecting, reviewing and analyzing documents produced by or otherwise relating to Defendants' financial condition, including a potential insolvency scenario if Defendants were forced to satisfy a judgment in the amount Plaintiffs seek; (b) researching the applicable law with respect to the claims asserted in the Action and the defenses and potential defenses thereto; (c) inspecting, reviewing and analyzing documents concerning the Plan and administration of the Plan; (d) researching and analyzing governmental and other publicly-available information concerning the Defendants, the Plan, and the relevant industry; and (e) participating in lengthy settlement negotiations with Defendants' counsel, presided over by mediator Robert Meyer, Esq.

2.10.   Class Counsel's investigation also included discussion with professionals on both sides who considered and discussed detailed financial analyses prepared by Defendants' experts from information provided by Defendants and represented by Defendants to be true, complete, and accurate, including historical results, future revenue streams, and also a potential insolvency scenario if Defendants were forced to satisfy a judgment in the amount Plaintiffs seek.

2.11.   Class Counsel believes that the Settlement will provide a substantial benefit to the Settlement Class, and that, when that benefit is weighed against the attendant risks of continuing the prosecution of the Action as well as Defendants' ability to satisfy a judgment even if Plaintiffs were to prevail, the Settlement represents a reasonable, fair, and adequate resolution of the claims of the Settlement Class. In reaching this conclusion, Class Counsel has considered, among other things, the ability of Defendants to withstand a judgment; the risks of litigation; the time necessary to achieve a complete resolution through litigation; the complexity of the claims set forth in the Complaint; and the benefit accruing to the Plan's participants under the Settlement.

*Butler, et al. v. Holy Cross Hospital, et al.*
**Settlement Agreement, March 1, 2017**

2.12. Plaintiffs and Defendants have thus reached this Settlement by and through their respective counsel on the terms and conditions set forth herein, which they have had a full and meaningful opportunity to consider with the advice of their respective counsel.

2.13. Defendants contend that nothing in the Term Sheet and/or this Settlement Agreement should be construed as an agreement that the Plan is not properly treated as a Church Plan or that the Plan is subject to ERISA. Plaintiffs contend that nothing in the Term Sheet and/or this Settlement Agreement should be construed as an agreement that the Plan is properly treated as a Church Plan or that the Plan is not subject to ERISA. Notwithstanding these differences between the Parties, they agree jointly to the conditions set forth in this Settlement Agreement.

3. CONDITIONS PRECEDENT TO EFFECTIVENESS OF THE SETTLEMENT

3.1. *Effectiveness of This Settlement Agreement*. This Settlement Agreement shall not become binding unless and until each and every one of the following conditions in §§ 3.2 through 3.8 shall have been satisfied.

3.2. *Court Approval*. The Settlement contemplated under this Settlement Agreement shall have been approved by the Court, as provided for in this § 3.2. The Parties agree jointly to recommend to the Court that it approve the terms of this Settlement Agreement and the Settlement contemplated hereunder. The Parties agree to undertake their best efforts, including all steps and efforts contemplated by this Settlement Agreement, and any other steps or efforts which may become necessary by order of the Court (unless such order modifies the terms of this Settlement Agreement) or otherwise, to carry out this Settlement Agreement, including the following:

3.2.1 *Motion for Preliminary Approval of Settlement and of Notices*. The Court shall have approved the preliminary approval motion ("Preliminary Approval Motion") to be filed by Plaintiffs on or before March 1, 2017, and the Court shall issue an order (the "Preliminary Approval Order"), including a class notice to be agreed upon by the Parties (the "Class Notice"):

    (a)    Preliminarily approving this Settlement Agreement;

    (b)    Directing the time and manner of the Class Notice; and

    (c)    Finding that: (i) the proposed form of Class Notice fairly and adequately: (A) describes the terms and effect of this Settlement Agreement and of the Settlement, (B) gives notice to the Settlement Class of the time and place of the hearing of the motion for final approval of this Settlement Agreement, and (C) describes how the recipients of the Class Notice may object to approval of this Settlement Agreement; and (ii) the proposed manner of communicating the Class Notice to the members of the Settlement Class is the best notice practicable under the circumstances.

3.2.2 *Class Certification.*

(a) The Court shall have certified the Action as a non-opt-out class action for settlement purposes only, pursuant to Federal Rules of Civil Procedure 23(b)(1) and/or (b)(2), with Named Plaintiffs as the named Settlement Class representatives, Cohen Milstein Sellers & Toll PLLC, Keller Rohrback L.L.P., and DeBofsky, Sherman & Casciari, PC as Class Counsel, and with the Settlement Class as defined above.

(b) The Parties agree to stipulate to certification of the consolidated action as a non-opt out class action for settlement purposes only, pursuant to Federal Rules of Civil Procedure 23(b)(1) and/or (b)(2), on the foregoing terms. If the Settlement does not become Final, then no Settlement Class will be deemed to have been certified by or as a result of this Settlement Agreement, and the Action will for all purposes revert to its status as of December 16, 2016.

3.2.3 *Issuance of Class Notice.* On the date and in the manner set by the Court in its Preliminary Approval Order, HCH will cause notice of the Preliminary Approval Order to be delivered to the Settlement Class in the form and manner approved by the Court. The Parties shall confer in good faith with regard to the form of the Class Notice in an effort to utilize cost-effective forms of notice. The Parties agree that the Preliminary Approval Order shall provide that the last known addresses for members of the Settlement Class in the possession of the Plan's current record-keeper will suffice for all purposes in connection with this Settlement, including, without limitation, the mailing of the Class Notice. The Plan will pay the cost for notice to the Settlement Class as part of the settlement administration.

3.2.4 *Internet/Publication of Class Notice.* Class Counsel also shall have given notice by publication of the Settlement Agreement and Class Notice on www.cohenmilstein.com/HCH-settlement and www.kellersettlements.com.

3.2.5 *The Fairness Hearing.*

(a) On the date set by the Court in its Preliminary Approval Order, the Parties shall participate in the hearing (the "Fairness Hearing") during or after which the Court will determine by order (the "Final Approval Order") whether: (i) this Settlement Agreement is fair, reasonable and adequate and should be approved by the Court; (ii) final judgment approving this Settlement Agreement should be entered ("Judgment"); (iii) the Settlement Class should be certified as a mandatory non-opt-out class meeting the applicable requirements for a settlement class imposed by Federal Rule of Civil Procedure 23; (iv) the requirements of Federal Rule of Civil Procedure 23 and due process have been satisfied in connection with the distribution of the Class Notice to members of the Settlement Class; (v) the requirements of the Class Action Fairness Act have been satisfied; (vi)

to award attorneys' fees and further expenses to Class Counsel and if so, the amounts; and (vii) to authorize incentive awards to the Named Plaintiffs.

(b) The Parties covenant and agree that they will reasonably cooperate with one another in obtaining an acceptable Final Approval Order at the Fairness Hearing and will not do anything inconsistent with obtaining such a Final Approval Order.

3.2.6 *Motion for Final Approval of Class Action Settlement*. On the date set by the Court in its Preliminary Approval Order, Plaintiffs shall have filed a motion (the "Final Approval Motion") for a Final Approval Order. The Final Approval Motion shall seek the Court's finding that the Final Approval Order is a final judgment disposing of all claims and all Parties.

3.3. *Finality of Final Approval Order*. Subject to § 8.1.5, the Final Approval Order shall have become Final, as defined in § 1.13 of this Settlement Agreement.

3.4. *Compliance with the Class Action Fairness Act*. The Court shall have determined that Defendants complied with the Class Action Fairness Act of 2005 ("CAFA") and its notice requirements by providing appropriate federal and state officials with information about the Settlement.

3.5. *Dismissal of Action*. The Action shall have been dismissed with prejudice as against Defendants on the Effective Date of Settlement.

3.6. *No Termination.* The Settlement shall not have terminated pursuant to § 10 below.

3.7. *Materiality of Settlement Agreement Conditions*. The Parties expressly acknowledge that the effectiveness of this Settlement Agreement is specifically conditioned upon the occurrence of each and every one of the foregoing conditions precedent prior to the Effective Date of Settlement, and that a failure of any condition set forth in §§ 3.1 through 3.8 at any time prior to the Effective Date of Settlement shall make this Settlement Agreement, and any obligation to pay the amounts specified in § 8.1, or any portion thereof, null, void, and of no force and effect.

3.8. *Establishment of Effective Date of Settlement*. If Plaintiffs and Defendants disagree as to whether each and every condition set forth in § 3 has been satisfied, they shall promptly confer in good faith and, if unable to resolve their differences within five (5) business days thereafter, shall present their disputes for determination to Robert A. Meyer, the Parties' mediator, who shall retain jurisdiction for this purpose. No portion of the Class Settlement Amount shall be disbursed in the event of such a dispute pending the Court's ruling. Disbursement shall thereafter be made pursuant to the Court's order.

*Butler, et al. v. Holy Cross Hospital, et al.*
**Settlement Agreement, March 1, 2017**

4.     RELEASES AND COVENANT NOT TO SUE

4.1.   *Released Claims.* Any and all actual or potential claims, actions, causes of action, demands, obligations, liabilities, attorneys' fees, expenses and costs arising out of the allegations of the Complaint, or otherwise, in connection with the sponsorship, funding, maintenance, operation or termination of, or distributions (as described in § 8.1.4) from, the Plan, including any promissory estoppel claims related to the necessary delay in payment of the June 1, 2016 communicated final distribution from the Trust following the filing of the Litigation and any corresponding reduction in such communicated final distributions resulting from the necessity of keeping the Trust operational, that were brought or could have been brought under federal law or state law as of the date of this Settlement Agreement by any member of the Settlement Class, including any current or prospective challenge to the "church plan" status of the Plan. Released Claims do not include: the release of any obligation under this Settlement Agreement or any claim that a class member's final distribution benefit described in this Settlement Agreement is inconsistent with the same actuarial assumptions and methodologies used for the Plan distributions that occurred in December 2015.

    4.1.1   *Release by Named Plaintiffs and Settlement Class.* Subject to § 10 below, upon the Effective Date of Settlement, Named Plaintiffs on behalf of themselves and on behalf of the Settlement Class absolutely and unconditionally release and forever discharge the Releasees from any and all Released Claims that Plaintiffs or the Settlement Class have. The Settlement Class covenants and agrees: (i) not to file against any Released Party any claim based on, related to, and/or arising from any Released Claim; and (ii) that the foregoing covenants and agreements shall be a complete defense to any such claim against any Released Party.

4.2.   *Defendants' Releases of Named Plaintiffs, the Settlement Class, and Class Counsel.* Subject to § 10 below, upon the Effective Date of Settlement, Defendants absolutely and unconditionally release and forever discharge the Named Plaintiffs, the Settlement Class and Class Counsel from any and all claims relating to the institution or prosecution of the Action.

4.3.   *Releasees' Release of Other Releasees.* Subject to § 10 below, upon the Effective Date of Settlement, each of the Releasees also releases each of the other Releasees from any and all claims which were asserted in the Complaint or any pleading which would have been required to be filed in the Action or that would be barred by principles of res judicata or collateral estoppel had the claims asserted in the Complaint or any such other pleading in the Action been fully litigated and resulted in a Final judgment or order.

5.     COVENANTS

    Named Plaintiffs, on their own behalf and on behalf of the members of the Settlement Class, the Plan, and Defendants, hereby covenant as follows:

5.1.   *Taxation of Settlement Payments.* The Parties will act in good faith to attempt to minimize adverse tax consequences of the Class Settlement Amount to the recipients. However, Plaintiffs acknowledge that Defendants, Releasees and any of their Representatives or

*Butler, et al. v. Holy Cross Hospital, et al.*
**Settlement Agreement, March 1, 2017**

Successors-In-Interest shall not have any responsibility for any taxes that may be due on the Class Settlement Amount, or on any funds that the Plan or members of the Settlement Class receive from the Settlement Payments. Nothing herein shall constitute an admission or representation that any taxes will or will not be due on the Class Payments or any allocation or disbursement therefrom.

6.   REPRESENTATIONS AND WARRANTIES

6.1.   *Parties' Representations and Warranties.*

    6.1.1   Named Plaintiffs represent and warrant that they have not assigned or otherwise transferred any interest in any Released Claims against any Releasee, and further covenant that they will not assign or otherwise transfer any interest in any Released Claims.

    6.1.2   Named Plaintiffs represent and warrant that they shall have no surviving claim or cause of action against any of the Releasees for the Released Claims.

    6.1.3   The Parties, and each of them, represent and warrant that they are voluntarily entering into this Settlement Agreement as a result of arm's-length negotiations among their counsel; in executing this Settlement Agreement they are relying solely upon their own judgment, belief and knowledge, and the advice and recommendations of their own independently selected counsel, concerning the nature, extent and duration of their rights and claims hereunder and regarding all matters which relate in any way to the subject matter hereof; except as expressly stated herein, they have not been influenced to any extent whatsoever in executing this Settlement Agreement by any representations, statements or omissions pertaining to any of the foregoing matters by any other Party or its Representatives; and each Party assumes the risk of and unconditionally waives any and all claims or defenses arising out of any alleged mistake as to facts or law.

    6.1.4   The Parties, and each of them, represent and warrant that they have carefully read the contents of this Settlement Agreement; they have made such investigation of the facts and law pertaining to this Settlement Agreement and all of the matters pertaining thereto as they deem necessary; and this Settlement Agreement is executed freely by each Person executing it on behalf of each of the Parties.

6.2.   *Signatories' Representations and Warranties.* Each individual executing this Settlement Agreement on behalf of any other Person does hereby personally represent and warrant to the other Parties that he or she has the authority to execute this Settlement Agreement on behalf of, and fully bind, each principal which such individual represents or purports to represent.

7.   NO ADMISSION OF LIABILITY

    Defendants deny any and all allegations of wrongdoing made in the Complaint. Defendants aver that the Plan has been and continues to be properly administered as a Church

Plan as defined in Internal Revenue Code section 414(e), 26 U.S.C. § 414(e), and ERISA section 3(33), 29 U.S.C. § 3(33). This Settlement is not evidence of any liability of any type.

8.     SETTLEMENT PAYMENTS

8.1.     *The Class Settlement Amount.*

8.1.1     The "Class Settlement Amount" shall be approximately $9 million less any amounts expended for Plan operating costs. The Class Settlement Amount is comprised of two components, with each respectively described in Sections 8.1.2 and 8.1.3 below.

8.1.2     *Plan Payment.* Defendants will pay $4 million into an escrow account, which amounts will be used to satisfy any amounts awarded by the Court for Attorney's Fees, Costs, and Incentive Awards, as defined in § 8.1.5. Defendants will cause the $4 million payment to be made through installments into the Escrow Account. The payment schedule will be as follows: ten business days after the United States District Court grants Plaintiffs' Motion for Preliminary Approval, Defendants will cause $1 million to be transferred to the Escrow Account; forty days after the United States District Court grants Plaintiffs' Motion for Preliminary Approval, Defendants will cause $500,000 to be transferred to the Escrow Account; seventy days after the United States District Court grants Plaintiffs' Motion for Preliminary Approval, Defendants will cause $500,000 to be transferred to the Escrow Account; and then within ten business days after the United States District Court enters an order finally approving the Settlement, Defendants will cause a final amount equal to the difference between the amount then held in escrow and $4 million to be transferred to the Escrow Account. Within fifteen days after the Final Approval Order and Judgment becomes Final, the $4 million in the Escrow Account, plus interest thereon, minus the Attorneys' Fee and Expense Award and Incentive Payment Awards specified in § 8.1.5, shall be paid to the Plan. Should any deadline specified in this Paragraph fall on a weekend or holiday, the specified conduct will occur on the next business day after the weekend or holiday.

8.1.3     *Plan Trust Amount.* As of January 4, 2017, the Plan held approximately $5,154,000 in assets that had not been distributed. It is projected that approximately $5,038,000, less any amounts expended for Plan operating costs, will be available for distribution after payment of all Plan expenses necessary to calculate and process the final distribution.

8.1.4     *Distribution.* The final distributions to Plan participants and beneficiaries described in §§ 8.1.1, 8.1.2, and 8.1.3, less any amounts expended for Plan operating costs, will be allocated and paid to class members based upon the same actuarial assumptions and methodologies used for the Plan Termination payments that occurred in December 2015, and shall include any income generated by the funds held in the Escrow Account. Notwithstanding anything to the contrary, the amounts communicated previously to the Settlement Class as a final distribution in the June 1, 2016 letter from the Plan's Pension Committee is null and void and the distribution allocated and paid to the Settlement Class under this Section 8.1.4 shall be in lieu of and a complete replacement for such prior

*Butler, et al. v. Holy Cross Hospital, et al.*
**Settlement Agreement, March 1, 2017**

communicated distribution amounts. As a result of this Settlement, each member of the Settlement Class will receive a Plan distribution that is more than the amount communicated previously to the Settlement Class as a final distribution in the June 1, 2016 letter from the Plan's Pension Committee.

8.1.5   *Attorneys' Fees and Expenses and Incentive Payment Awards.* On the date set by the Court in its Preliminary Approval Order, Plaintiffs shall petition the Court for an award of attorneys' fees and costs, as specified in this § 8.1.5. Defendants expressly agree not to contest or take any position with respect to Plaintiffs' application to the Court for an award of attorney fees, out of pocket expenses, and incentive payment awards. Plaintiffs' application for fees shall not exceed $600,000 or 15% of the $4 million initial Escrow Account value, Plaintiffs' application for expenses shall be no more than $30,000; and the incentive payment awards shall be $10,000 for each of the Named Plaintiffs. The Parties agree that Defendants will cause these Attorneys' Fees, Expenses, and Incentive Payment Awards to be paid from and deducted from the $4 million initial Escrow Account value described in § 8.1.2 of this Settlement Agreement. Any Incentive Payment Awards, and Class Counsel's attorneys' fees and expenses will be subject to the discretion and approval of the District Court. Such attorneys' fees and expenses as are awarded by the Court in its discretion shall be paid to Plaintiffs' Counsel within fifteen days after the Court's entry of the Final Approval Order and Judgment. The procedure for and the allowance or disallowance of any application for Incentive Payment Awards, attorneys' fees and expenses are matters separate and apart from the Settlement and shall be requested to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement. Any order or proceeding relating solely to an award of Incentive Payment Awards, attorneys' fees and expenses, or any appeal from any order relating thereto, or any reversal or modification thereof, shall have no effect on the Settlement and shall not operate to, or be grounds to, terminate or cancel the Settlement Agreement or to affect or delay the finality of the Final Approval Order or Judgment.

8.2.   *Sole Monetary Contributions.* The payments provided for in § 8.1 shall be the full and sole consideration made by or on behalf of the Releasees in connection with the Action and this Settlement Agreement. The amount specified in § 8.1.5 specifically satisfies any claims for costs and attorneys' fees by Class Counsel.

9.   SECURING THIS SETTLEMENT AGREEMENT

9.1.   *Secured by Mortgage.* Subject to the limitations set out below, all amounts due under this Settlement Agreement will be secured by a mortgage on the HCH real property, excluding HCH personal property or equipment, in the form attached as Exhibit B to this Settlement Agreement.

9.1.1   The mortgage shall be filed of record within ten (10) business days after the later of: (i) the United States District Court grants Plaintiffs' Motion for Preliminary Approval, or (ii) the lender with which HCH is currently in process of documenting a receivables financing confirms in writing that it will move forward with the transaction in the same amount and upon the same terms previously negotiated with the mortgage described herein being a permitted lien. Notwithstanding the foregoing, should (a) the lender refuse to undertake the receivables

financing by reason of the existence or contemplated existence of the mortgage described herein, or (b) should the terms of the mortgage cause a reduction in the amount of the financing, HCH will not be required to grant the mortgage. HCH will notify Plaintiffs whether HCH will grant the mortgage promptly upon learning whether the lender will provide the confirmation described in subparagraph 9.1.1(ii), above, but in no event later than April 15, 2017. In the event HCH will not grant the mortgage, Plaintiffs may, in their sole discretion, terminate this Settlement Agreement. However, before exercising their sole discretion to terminate this Settlement Agreement, Plaintiffs will negotiate with Defendants as to whether there is any substitute security available in place of the mortgage.

9.1.2    The release of the mortgage will be executed and placed in escrow, to be filed so that the mortgage is released and cancelled upon final approval of the Settlement and the subsequent payment of the Settlement consideration to the Plan, to Plaintiffs' Counsel, and to the Named Plaintiffs, respectively, to the extent that fees, costs and incentive fees are awarded by the United States District Court. The escrow holder of the mortgage release shall have authorization to submit the mortgage release for recording upon the satisfaction by Defendants of the payment obligations described in the preceding sentence, in accordance with the procedures established by the escrow agreement.

9.1.3    The mortgage will be released and cancelled should the Settlement fail, after a full and completed disposition of any Review Proceeding described in §1.13, above. In such event, the escrow holder of the mortgage release shall have authorization to submit the mortgage release for recording once Defendants provide the escrow holder with evidence satisfactory to escrow holder of the full and completed disposition of any Review Proceeding described in §1.13, above, in accordance with the procedures established by the escrow agreement.

9.2.    *Plaintiffs' Claims in Insolvency Proceedings.* In the event of the insolvency, state proceedings for dissolution or winding up, or commencement of a proceeding under Title 11 of the United States Code for either of HCH or SHS which results in a final and no longer reviewable order for return to HCH or SHS of all or any part of the Class Settlement Amount, then notwithstanding anything to the contrary in this Settlement Agreement, Defendants agree that Plaintiffs shall be entitled to file and assert a claim in such proceedings for the claims asserted in the Complaint, subject to all of Defendants' defenses and counter-claims.

9.3.    *Defendants' Obligations in Insolvency Proceedings.* In the event either HCH or SHS commence a proceeding under Title 11 of the United States Code, HCH or SHS, as the case may be, agrees it will undertake best efforts to obtain final approval of this Settlement and the consummation thereof, including but not limited to supporting court approval of the Settlement, and supporting any request by Plaintiffs for relief from the automatic stay of 11 U.S.C. §362(a) for purposes of obtaining approval and/or consummation of the Settlement.

10.    TERMINATION OF THE SETTLEMENT AGREEMENT

10.1.    *Automatic Termination.* This Settlement Agreement shall automatically terminate, and thereupon become null and void, in the following circumstances:

10.1.1 If the Court declines to approve the Settlement, and if such order declining approval has become Final, then this Settlement Agreement shall automatically terminate, and thereupon become null and void, on the date that any such order becomes Final, provided, however, that if the Court declines to approve the Settlement for any reason, the Parties shall negotiate in good faith to cure any deficiency identified by the Court, and further provided that if necessary to cure any such deficiency, Class Counsel shall re-submit within a reasonable time the Preliminary or Final Approval Motion with an additional or substitute member of the Settlement Class as a named Class Representative.

10.1.2 If the Seventh Circuit reverses the District Court's order approving the Settlement, and if within ninety-one (91) days after the date of any such ruling the Parties have not agreed in writing to proceed with all or part of this Settlement Agreement as modified by the Seventh Circuit or by the Parties, then, provided that no Review Proceeding is then pending from such ruling, this Settlement Agreement shall automatically terminate, and thereupon become null and void, on the ninety-first day after issuance of the Seventh Circuit order referenced in this § 10.1.2.

10.1.3 If the Supreme Court of the United States reverses or remands a Seventh Circuit order approving the Settlement, and if within thirty-one (31) days after the date of any such ruling the Parties have not agreed in writing to proceed with all or part of the Settlement Agreement as modified by the Supreme Court or by the Parties, then this Settlement Agreement shall automatically terminate, and thereupon become null and void, on the thirty-first day after issuance of the Supreme Court order referenced in this § 10.1.3.

10.1.4 If a Review Proceeding is pending of an order declining to approve the Settlement Agreement or modifying this Settlement Agreement, this Settlement Agreement shall not be terminated until Final resolution or dismissal of any such Review Proceeding, except by written agreement of the Parties.

10.1.5 This Settlement is contingent upon SHS' insurer paying to SHS the amount agreed to during the mediation held on December 19, 2016, which will be used to pay SHS' defense costs and to help fund this Settlement. If SHS' insurer fails to agree in writing to pay the Plan Funding amount prior to execution of this Settlement Agreement, or fails to contribute to the agreed Plan Funding amount at the time that its funding is due, as determined by agreement between SHS and the insurer, consistent with §8.1 the Settlement shall become void *ab initio*, and the Parties shall revert back to the status of this matter as of December 16, 2016.

10.1.6 If the Settlement does not become Final by October 31, 2017, then Defendants have the option of replacing the escrowed funds by depositing with the escrow agent a letter of credit for the benefit of Plaintiffs in an amount equal to $4 million, plus accrued interest, described in §8.1.2, whereupon the escrow agent immediately shall release the escrowed funds to SHS. The letter of credit shall be issued by a financial institution acceptable to Plaintiffs, in a form satisfactory to Plaintiffs, and shall be renewed by Defendants as necessary to fully protect Plaintiffs' interests in this Settlement until Defendants' obligations under this Settlement Agreement have been fully performed or the Settlement has been terminated as provided herein.

Upon either (a) full performance of Defendants' obligations under this Settlement Agreement, or (b) termination of this Settlement Agreement in accordance with its terms, Plaintiffs will release the letter of credit to Defendants.

10.2. *Consequences of Termination of this Settlement Agreement.* If the Settlement Agreement is terminated and rendered null and void for any reason, the following shall occur:

10.2.1 The Action shall for all purposes with respect to the Parties revert to its status as of December 16, 2016.

10.2.2 All Releases given or executed pursuant to this Settlement Agreement shall be null and void; none of the terms of this Settlement Agreement shall be effective or enforceable; neither the fact nor the terms of this Settlement Agreement shall be offered or received in evidence in the Action or in any other action or proceeding for any purpose, except in an action or proceeding arising under this Settlement Agreement.

10.2.3 The Escrow funds and any interest generated by the funds therein revert to SHS.

11.    MISCELLANEOUS PROVISIONS

11.1. *Jurisdiction.* The Court shall retain jurisdiction over all Parties, the Action, and this Settlement Agreement to resolve any dispute that may arise regarding this Settlement Agreement or the orders and notice referenced in § 3 above, including any dispute regarding validity, performance, interpretation, administration, enforcement, enforceability, or termination of the Settlement Agreement and no Party shall oppose the reopening and reinstatement of the Action on the Court's active docket for the purposes of effecting this § 11.1.

11.1.1 Robert A. Meyer, mediator in the Action, will act as the final arbiter of any disagreements as to language regarding this Settlement Agreement and exhibits thereto.

11.2. *Plan Termination.* After distribution, as set forth in §§ 8.1.2 and 8.1.4, Defendants intend to fully liquidate and formally terminate the Plan.

11.3. *Insolvency.* In the event of the insolvency, state proceedings for dissolution or winding up, or commencement of a proceeding under Title 11 of the United States Code of either of HCH or SHS which results in a Final and no longer reviewable order for return to HCH or SHS of all or any part of the Settlement Payment, then notwithstanding anything to the contrary in this Settlement, Defendants agree that Plaintiffs shall be entitled to file and assert a claim in such proceedings for the claims asserted in the Complaint, subject to all of Defendants' defenses and counter-claims.

11.3.1 In the event either HCH or SHS commences a proceeding under Title 11 of the United States Code, the applicable Debtor (as defined in Title 11) agrees it will undertake best efforts to obtain final approval of this Settlement and the consummation thereof, including but

not limited to supporting Court approval of the Settlement, and supporting any request by Plaintiffs for relief from the automatic stay of 11 U.S.C. §362(a) for purposes of obtaining approval and/or consummation of the Settlement.

11.4. *No Limitation of Remedies.* In the event that the Defendants breach this Settlement Agreement, Plaintiffs will continue to have any and all remedies for such breach. In the event that Plaintiffs breach this Settlement Agreement, Defendants will continue to have any and all remedies for such breach.

11.5. *No Publicity.* Plaintiffs' Counsel agree not to disseminate any press release, newspaper or other media publication in written or electronic form, post on Facebook, Twitter or any social media, nor will they comment publicly about the Settlement either proactively or in response to any media or social media questions or posts. This clause will not limit Plaintiffs' Counsel and the Parties' ability to communicate with the United States District Court, class members, and/or clients to consummate the Settlement.

11.6. *Governing Law.* This Settlement Agreement shall be governed by the laws of the United States, including federal common law, except to the extent that, as a matter of federal law, state law controls, in which case Illinois law will apply without regard to conflict of law principles.

11.7. *Severability.* The provisions of this Settlement Agreement are not severable.

11.8. *Amendment.* Before entry of a Final Approval Order, any common law to the contrary notwithstanding, this Settlement Agreement may be modified or amended only by written agreement signed by or on behalf of all Parties. Following entry of a Final Approval Order, any common law to the contrary notwithstanding, this Settlement Agreement may be modified or amended only by written agreement signed on behalf of all Parties, and approved by the Court.

11.9. *Waiver.* The provisions of this Settlement Agreement may be waived only by an instrument in writing executed by the waiving Party. The waiver by any Party of any breach of this Settlement Agreement shall not be deemed to be or construed as a waiver of any other breach of this Settlement Agreement, whether prior, subsequent, or contemporaneous with this Settlement Agreement.

11.10. *Construction.* None of the Parties hereto shall be considered to be the drafter of this Settlement Agreement or any provision hereof for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against a drafter.

11.11. *Principles of Interpretation.* The following principles of interpretation apply to this Settlement Agreement:

11.11.1 *Headings.* The headings of this Settlement Agreement are for reference purposes only and do not affect in any way the meaning or interpretation of this Settlement Agreement.

11.11.2 *Singular and Plural*. Definitions apply to the singular and plural forms of each term defined.

11.11.3 *Gender*. Definitions apply to the masculine, feminine, and neuter genders of each term defined.

11.11.4 *Terms of Inclusion*. Whenever the words "include," "includes," or "including" are used in this Settlement Agreement, they shall not be limiting but rather shall be deemed to be followed by the words "without limitation."

11.12. *Further Assurances*. Each of the Parties agrees, without further consideration, and as part of finalizing the Settlement hereunder, that they will in good faith execute and deliver such other documents and take such other actions as may be necessary to consummate and effectuate the subject matter and purpose of this Settlement Agreement.

11.13. *Survival*. All representations, warranties and covenants set forth in this Settlement Agreement shall be deemed continuing and shall survive the Effective Date of Settlement.

11.14. *Notices*. Any notice, demand, or other communication under this Settlement Agreement (other than notices to members of the Settlement Class) shall be in writing and shall be deemed duly given if it is addressed to each of the intended recipients as set forth below and personally delivered, sent by registered or certified mail (postage prepaid), sent by confirmed facsimile, or delivered by reputable express overnight courier. Any Party may change the address at which it is to receive notice by written notice delivered to the other Parties in the manner described in this § 11.13.

A. IF TO NAMED PLAINTIFFS:

Karen L. Handorf
Julie Goldsmith Reiser
COHEN MILSTEIN SELLERS & TOLL, PLLC
1100 New York Ave., NW, Suite 500 West
Washington, DC 20005
Fax: (202) 408-4699

Lynn Lincoln Sarko
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
Fax: (206) 623-3384

Chris Graver
KELLER ROHRBACK L.L.P.
3101 North Central Ave., Suite 1400
Phoenix, AZ 85012
Fax: (206) 248-2822

Mark D. DeBofsky
DEBOFSKY, SHERMAN & CASCIARI, PC
200 W. Madison Street, Suite 2670
Chicago, IL 60606
Fax: (312) 929-0309

B.     IF TO DEFENDANTS:

Howard Shapiro
Stacey C.S. Cerrone
Lindsey Chopin
PROSKAUER ROSE LLP
650 Poydras Street,
Suite 1800
New Orleans, LA 70130
Fax: (504) 310-2022

Edward C. Young
PROSKAUER ROSE, LLP
Three First National Plaza
70 West Madison, Suite 3800
Chicago, IL 60602
Fax: (312) 962-3551

11.15. *Entire Agreement*. This Settlement Agreement contains the entire agreement among the Parties relating to the settlement of the Action. It specifically supersedes any settlement terms or settlement agreements relating to Defendants that were previously agreed upon orally or in writing by any of the Parties, including the terms of the Term Sheet and any and all discussions, representations, warranties, or the like prior to the Effective Date of Settlement.

11.16. *Counterparts*. This Settlement Agreement may be executed by exchange of faxed or emailed executed signature pages, and any signature transmitted by facsimile for the purpose of executing this Settlement Agreement shall be deemed an original signature for purposes of this Settlement Agreement. This Settlement Agreement may be executed in two or more counterparts, each of which shall be deemed to be an original, but all of which, taken together, shall constitute one and the same instrument.

11.17. *Binding Effect*. This Settlement Agreement binds and inures to the benefit of the parties hereto, their assigns, heirs, administrators, executors and Successors-in-Interest.

11.18. *Cost of Notice*. Defendants shall cause the Plan to pay the costs for Class Notice.

IN WITNESS WHEREOF, the Parties have executed this Settlement Agreement on the dates set forth below.

74329552v1

*Butler, et al. v. Holy Cross Hospital, et al.*
**Settlement Agreement, March 1, 2017**

*FOR NAMED PLAINTIFFS AND THE SETTLEMENT CLASS*

Dated this the 1st day of March, 2017.

By: _____
Julie Goldsmith Reiser

Karen L. Handorf
Julie G. Reiser
COHEN MILSTEIN SELLERS & TOLL,
PLLC
1100 New York Ave., NW, Suite 500 West
Washington, DC 20005

Lynn L. Sarko
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101

Chris Graver
KELLER ROHRBACK L.L.P.
3101 North Central Avenue, Suite 1400
Phoenix, AZ 85012

Mark D. DeBofsky
DEBOFSKY, SHERMAN & CASCIARI, PC
200 W. Madison Street, Suite 2670
Chicago, IL 60606

*Class Counsel*

*Butler, et al. v. Holy Cross Hospital, et al.*
**Settlement Agreement, March 1, 2017**

*FOR ALL DEFENDANTS*

Dated this the 1st day of March, 2017.

By: _____
Howard Shapiro
Stacey C.S. Cerrone
Lindsey Chopin
PROSKAUER ROSE LLP
650 Poydras Street, Suite 1800
New Orleans, LA 70130

Edward C. Young
PROSKAUER ROSE, LLP
Three First National Plaza
70 West Madison, Suite 3800
Chicago, IL 60602
Fax: (312) 962-3551

*Attorneys for Defendants*

74329552v1

# EXHIBIT A



# CHICAGO TITLE AND TRUST COMPANY

**10 S. LASALLE, STE 3100, CHICAGO, IL 60603**

Refer to: Krystina Cozzie
Phone no.: 312-223-3366
Fax no: 312-223-2323
krystina.cozzie@ctt.com

<u>ESCROW TRUST INSTRUCTIONS</u>

ESCROW TRUST NO:    _____          DATE:   _____, 2017

To: Chicago Title and Trust Company, Escrow Trustee:

<u>Customer Identification:</u>

HCH:  HOLY CROSS HOSPITAL, an Illinois not-for-profit corporation

Plaintiffs:  Corinne Butler and Andrea Fitzsimmons, in their individual capacities and for the benefit of any class certified in *Butler v. Holy Cross Hospital*, U.S. District Court for the Northern District of Illinois Case No. 1:16-cv-05907, as to which they serve as class representatives

Project Reference:  Butler Litigation Settlement

Proposed Disbursement Date:  To Be Determined

<u>Deposits:</u>

1. Cash deposits will be made by or on behalf of HCH to the Escrow Trustee in the amounts and at the times set forth in Section 8.1.2 of the Class Action Settlement Agreement dated March 1, 2017, by and between the "Defendants" (as defined therein, and which include HCH and Sinai Health System), and the "Plaintiffs" (as defined therein) (the "Settlement Agreement").  Solely with respect to the parties to the Settlement Agreement, in the event of any inconsistency between the provisions of the Settlement Agreement and the provisions of these escrow instructions, then the provisions of the Settlement Agreement shall govern and control.  The Escrow Trustee hereby acknowledges receipt of a copy of the Settlement Agreement

2. Cohen Milstein Sellers & Toll, P.L.L.C,, on behalf of Plaintiffs, hereby deposits with the Escrow Trustee a fully executed and acknowledged Release in for the form attached as <u>Exhibit A</u> hereto.

In the event that the Escrow Trustee does not receive written notice from HCH or Plaintiffs that the Settlement is Final (as those terms are defined in the Settlement Agreement) prior to 5:00 pm (Chicago time) on October 31, 2017, then HCH shall have the right to replace the cash deposits then held by Escrow Trustee hereunder with a letter of credit satisfying the requirements of Section 10.1.6 of the Settlement Agreement, whereupon Escrow Trustee will return the cash deposit to HCH (via wire transfer instructions to be provided by HCH).

***PLEASE NOTE: Uncertified checks are held for ten business days after date of deposit. No funds can be dispensed before 10 business days limit expires. To avoid delays, use Cashier's or Certified checks or wire transfer.***

<u>Funds:</u>

( X ) WILL     ( ) WILL NOT BE INVESTED
NOTE:  If funds are to be invested, an investment package will be sent.  Please complete and return to Escrow Trustee as soon as possible in order to begin accruing interest.

<u>Delivery of Deposits:</u>

The above-referenced escrow trust deposits ("deposits") are deposited with the Escrow Trustee to be delivered by it only upon the receipt of written instructions from Plaintiffs identified above or their legal representatives or assigns, or HCH or its legal representatives or assigns (a "Disbursement Notice"); provided, however, that (i) the party issuing the Disbursement Notice  shall deliver a copy of any Disbursement Notice to the other party  and their legal representatives concurrently with the delivery of the same to the Escrow Trustee, and (ii) the party who did not issue the Disbursement Notice  shall have a period of ten (10) business days following receipt of any Disbursement Notice within which to object in writing to such Disbursement Notice (the objection notice must be sent to both the party who issued the Disbursement Notice and the

Page 1

Escrow Trustee).  If the party who did not issue the Disbursement Notice objects in writing within said ten (10) business day period, then the Escrow Trustee shall take no action with respect to the applicable Disbursement Notice pending the joint order of HCH and the Plaintiffs or in obedience to the court order described below.  If the party who did not issue the Disbursement Notice fails to object in writing to the Disbursement Notice within the ten (10) business day period described above, then the Escrow Trustee shall follow the instructions set forth in the Disbursement Notice.  As used herein, the term "business day" shall mean any day that The Private Bank and Trust Company is open for business in Chicago, Illinois.

Billing Instructions:

Escrow trust fee will be deducted as follows:  $300 escrow fee.  If the transaction closes in the Chicago Title Loop office and if one of the parties purchases title insurance from Chicago Title, then the escrow fee will be waived.  Any overnight delivery or wire fee will be $35.

The parties acknowledge that beginning after a period of one year from the date of this agreement, Chicago Title and Trust Company will impose an administrative maintenance fee equivalent to the fee set forth on the Company's then current rate schedule.

This fee may be deducted from the outstanding escrow balance or billed.

PLEASE NOTE: The escrow trust fee for these escrow trust instructions is due and payable on or before _____, 2017.  In the event no projected disbursement date is ascertainable, said escrow trust fee is to be billed at acceptance and is due and payable within 30 days from the billing date. Chicago Title and Trust Company, at its sole discretion, may reduce or waive the escrow trust fee for these escrow instructions in the event the funds on deposit herein are transferred to or disbursed in connection with sale escrow trust instructions or an agency closing transaction established at Chicago Title.

Standard Provisions:

Investment:

Deposits made pursuant to these instructions may be invested on behalf of any party or parties hereto; provided that any direction to escrow trustee for such investment shall be expressed in writing and contain the consent of all parties to this escrow, and also provided that escrow trustee is in receipt of the taxpayer's identification number and investment forms as required. Escrow trustee will, upon request, furnish information concerning its procedures and fee schedules for investment.

In the event the escrow trustee is requested to invest deposits hereunder, Chicago Title and Trust Company is not to be held responsible for any loss of principal or interest which may be incurred as a result of making the investments or redeeming said investment for the purposes of these escrow trust instructions.

Direction Not to Invest/Right to Commingle:

Except as to deposits of funds for which escrow trustee has received express written direction concerning investment or other handling, the parties hereto direct the escrow trustee NOT to invest any funds deposited by the parties under the terms of this escrow and waive any rights which they may have under Section 2-8 of the Corporate Fiduciary Act (205 ILCS 620/2-8) to receive interest on funds deposited hereunder. In the absence of an authorized direction to invest funds, the parties hereto agree that the escrow trustee shall be under no duty to invest or reinvest any such funds at any time held by it hereunder; and, further, that escrow trustee may commingle such funds with other deposits or with its own funds in the manner provided for the administration of funds under said Section 2-8 and may use any part or all of such funds for its own benefit without obligation to any party for interest or earnings derived thereby, if any. Further, even with appropriate instructions to invest Escrow Deposits, Escrow Trustee may commingle the Escrow Deposits with other funds in a trust account in order to facilitate placing the Escrow Deposits into a segregated interest bearing account and to disburse the Escrow Deposits once they have been removed from such segregated interest bearing account as required by the terms of this Agreement.  Provided, however, nothing herein shall diminish escrow trustee's obligation to apply the full amount of such funds in accordance with the terms of these escrow instructions.

Compliance With Court Order:

The undersigned authorize and direct the escrow trustee to disregard any and all notices, warnings or demands given or made by the undersigned or by any other person (except as otherwise specifically set forth herein). The said undersigned also hereby authorize and direct the escrow trustee to accept, comply with, and obey any and all writs, orders, judgments or decrees entered or issued by any court with or without jurisdiction; and in case the said escrow trustee obeys or complies with any such writ, order, judgment or decree of any court, it shall not be liable to any of the parties hereto or any other person, by reason of such compliance, notwithstanding any such writ, order, judgment or decree be entered without jurisdiction or be subsequently reversed, modified, annulled, set aside or vacated. In case the escrow trustee is made a party defendant to any suit or proceedings regarding this escrow trust, the undersigned, for themselves, their heirs, personal representatives, successors, and assigns, jointly and severally, agree to pay to said escrow trustee, upon written demand, all costs, attorney's fees, and expenses incurred with respect thereto. The escrow trustee shall have a lien on the deposit(s)

herein for any and all such costs, fees and expenses. If said costs, fees and expenses are not paid, then the escrow trustee shall have the right to reimburse itself out of the said deposit(s).

Disputes/Circumstance not contemplated:

If any dispute arises with respect to the disbursement of any funds on deposit or if circumstances arise that were not contemplated or described in the original escrow agreement, and Escrow Agent is unsure as to its duties as a result, Escrow Agent may continue to hold said funds until either in receipt of a joint order from the parties or a court order directing payment. In such instance, Escrow Agent may elect to commence an action in interpleader and in conjunction therewith remit the Escrow Deposit to a court of competent jurisdiction pending resolution of such dispute, and the parties hereto hereby indemnify and hold harmless Escrow Agent for any action taken by it in good faith in the execution of its duties hereunder. The parties further agree that the cost of any such action shall be deducted from the Escrow Deposit prior to disbursement to the parties.

Disclaimer Re: Validity of Documentation:

In its capacity as Escrow Trustee, Escrow Trustee shall not be responsible for the genuineness or validity of any security, instrument, document or item deposited with it and shall have no responsibility other than to faithfully follow the instructions contained herein, and shall not be responsible for the validity or enforceability of any security interest of any party and it is fully protected in acting in accordance with any written instrument given to it hereunder by any of the parties hereto and reasonably believed by Escrow Trustee to have been signed by the proper person. Escrow Trustee may assume that any person purporting to give any notice hereunder has been duly authorized to do so.

Execution:

These escrow trust instructions are governed by and are to be construed under the laws of the state of Illinois. The escrow trust instructions, amendments or supplemental instructions hereto, may be executed in counterparts, each of which shall be deemed an original and all such counterparts together shall constitute one and the same instrument.

For HCH:

HOLY CROSS HOSPITAL, an Illinois not-for-profit corporation

For Plaintiffs:

Corinne Butler and Andrea Fitzsimmons, in their individual capacities and for the benefit of any class certified in *Butler v. Holy Cross Hospital*, U.S. District Court for the Northern District of Illinois Case No. 1:16-cv-05907, as to which they serve as class representatives

By: _____
Name: _____
Title: _____

By: _____
Name: _____
Cohen Milstein Sellers & Toll P.L.L.C.

Title: Attorneys for Plaintiffs

Address:

Address: 1100 New York Ave., NW, Suite 500
Washington, D.C. 20005

Phone:

Phone:

Fax:

Fax:

Email:

Email:

Accepted: Chicago Title and Trust Company, as Escrow Trustee

By: _____
Name: _____
Title: _____

Date: _____, 2017

**\*Upon receipt of the initial deposit of the funds, this escrow agreement becomes effective.**

Page 3

# EXHIBIT B

This instrument prepared by
and after recording return to:

Mark DeBofsky
DeBofsky, Sherman & Casciari, PC
200 West Madison Street, Suite 2670
Chicago, IL 60606

## MORTGAGE AND SECURITY AGREEMENT

        **THIS MORTGAGE AND SECURITY AGREEMENT** (this "**Mortgage**") is made as of the \_\_\_\_ day of _____, 2017, by **HOLY CROSS HOSPITAL**, an Illinois not-for-profit corporation (the "**Mortgagor**"), with an address at _____ in favor of DeBofsky, Sherman & Casciari, PC, for the benefit of Corinne Butler and Andrea Fitzsimmons, in their individual capacities and for the benefit of any class certified in *Butler v. Holy Cross Hospital*, U.S. District Court for the Northern District of Illinois Case No. 1:16-cv-05907, as to which they serve as class representatives (the "**Mortgagee**"), with an address at 200 West Madison Street, Suite 2670 Chicago, IL 60606.

        **WHEREAS,** the Mortgagor is the owner of a certain tract or parcel of land described in Exhibit A attached hereto and made a part hereof, together with the improvements now or hereafter erected thereon; and

        **WHEREAS,** the Mortgagor and certain other parties have entered into a Settlement Agreement dated as of March 1, 2017 (the "**Agreement**"). Mortgagor is one of the "Defendants" as defined in the Agreement. Mortgagee is counsel for "Plaintiffs" and the "Settlement Class", as those terms are defined in the Agreement, and is authorized and appointed to act as Mortgagee for the benefit of Plaintiffs and the Settlement Class by order of the Court entered _____, 2017 in *Butler v. Holy Cross Hospital*, U.S. District Court for the Northern District of Illinois Case No. 1:16-cv-05907. It is a requirement of the Agreement that Mortgagor execute and deliver this Mortgage in favor of Mortgagee as security for the payment by the Defendants to the Plaintiffs and the Settlement Class under the Agreement of the amount of $4,000,000, plus interest that may accrue in the Escrow Account provided for in the Agreement, and expenses, including reasonable attorneys' fees, incurred in enforcing the Agreement and/or this Mortgage (the "**Obligations**");

        **NOW, THEREFORE**, for the purpose of securing the payment and performance of the Obligations the Mortgagor, for good and valuable consideration, receipt of which is hereby

73617915v2

acknowledged, and intending to be legally bound hereby, hereby **MORTGAGES, WARRANTS, CONVEYS, TRANSFERS AND ASSIGNS TO MORTGAGEE AND ITS SUCCESSORS AND ASSIGNS, AND HEREBY GRANTS TO MORTGAGEE AND ITS SUCCESSORS AND ASSIGNS A CONTINUING SECURITY INTEREST IN, TO, AND UNDER ALL OF THE FOLLOWING DESCRIBED PROPERTY, ALL ACCESSIONS AND ADDITIONS THERETO, ALL SUBSTITUTIONS THEREFOR AND REPLACEMENTS AND PROCEEDS THEREOF, AND ALL REVERSIONS AND REMAINDERS OF SUCH PROPERTY NOW OWNED OR HELD OR HEREAFTER ACQUIRED** (collectively, the "**Property**"), to wit:

(a) All of the Mortgagor's estate in the premises described in <u>Exhibit A</u>, together with all of the easements, rights of way, privileges, liberties, hereditaments, gores, streets, alleys, passages, ways, waters, watercourses, rights and appurtenances thereunto belonging or appertaining including, without limitation all water rights and air rights, and all of the Mortgagor's estate, right, title, interest, claim and demand therein and in the public streets and ways adjacent thereto, either in law or in equity (the "**Land**");

(b) All the buildings, structures and improvements of every kind and description now or hereafter erected or placed on the Land (the "**Improvements**"); and

(c) All proceeds of the conversion, voluntary or involuntary, of any of the foregoing into cash or liquidated claims.

TO HAVE AND TO HOLD the Property unto Mortgagee, its successors and assigns, hereby expressly waiving and releasing any and all right, benefit, privilege, advantage or exemption under and by virtue of any and all statutes and laws of the State of Illinois providing for the exemption of homesteads from sale on execution or otherwise.

Provided, however, that if the Defendants shall pay to the Plaintiffs the Obligations in full in accordance with the terms of the Agreement, then the estate hereby granted and conveyed shall become null and void.

The total amount hereby secured at any one time outstanding shall not exceed the Obligations.

1. <u>**Representations and Warranties.**</u> The Mortgagor represents and warrants to the Mortgagee that its name, type of organization, jurisdiction of organization and chief executive office are true and complete as set forth in the heading of this Mortgage.

2. <u>**Legal Requirements.**</u> Until all of the Obligations shall have been fully paid, satisfied and discharged the Mortgagor shall in all material respects comply with and conform to all present and future laws, statutes, codes, ordinances, orders and regulations and all covenants, restrictions and conditions which may be applicable to the Mortgagor or to any of the Property (collectively, "**Legal Requirements**").

3. **Insurance.** The Mortgagor shall keep the Property continuously insured in the coverages and amounts in which the Mortgagor currently insures the Property on the date of this Mortgage.

4. **Rights of Mortgagee to Insurance Proceeds.** In the event of loss, the Mortgagor shall have the exclusive right to adjust, collect and compromise all insurance claims.

5. **Condemnation.** Any award or compensation for property taken or for damage to property not taken, whether as a result of such proceedings or in lieu thereof, shall be received and collected directly by the Mortgagor.

6. **Rights and Remedies of Mortgagee.** If the Defendants shall fail to pay the Obligations in accordance with the terms of the Agreement, the Mortgagee shall have the right immediately or at any time thereafter to foreclose the lien of this Mortgage:

(a) Upon the filing of any complaint for that purpose, the court in which such complaint is filed may, upon application of Mortgagee, in Mortgagee's sole and absolute discretion, appoint Mortgagee as a mortgagee-in-possession or appoint a receiver of the Property (a "**Receiver**") pursuant to the Illinois Mortgage Foreclosure Law, as amended (735 ILCS 5/15-1101, *et seq.*) (the "**Mortgage Foreclosure Act**").

(b) The court may, from time to time, authorize said Receiver to apply the net amounts remaining in his hands, after deducting reasonable compensation for the Receiver and his counsel as allowed by the court, in payment (in whole or in part) of any or all of the Obligations. The excess of the proceeds of sale, if any, shall then be paid to Mortgagor (or such other person or party as is applicable in accordance with applicable Legal Requirements).

(c) This Mortgage may be foreclosed once against all, or successively against any portion or portions, of the Property, as Mortgagee may elect, until all of the Property has been foreclosed against and sold, all in accordance with applicable law.

(d) In the case of any sale of the Property pursuant to any judgment or decree of any court at public auction or otherwise, Mortgagee may become the purchaser, and for the purpose of making settlement for or payment of the purchase price, shall be entitled to deliver over and use the Agreement and any claims for the debt in order that there may be credited as paid on the purchase price the amount of the debt.

7. **Application of Proceeds.** The Mortgagee shall apply the proceeds of any foreclosure sale of, or other disposition or realization upon, or rents or profits from, the Property to satisfy the Obligations in such order of application as the Mortgagee shall determine in its exclusive discretion.

8. **Certain Waivers.**

(a) The Mortgagor hereby waives and releases all benefit that might accrue to the Mortgagor by virtue of any present or future law exempting the Property, or any part of the proceeds arising from any sale thereof, from attachment, levy or sale on execution, or providing

3

for any stay of execution, exemption from civil process or extension of time for payment or any rights of marshalling in the event of any sale hereunder of the Property.

(b)    Mortgagor, on behalf of itself and all persons or other parties now or hereafter interested in the Property, to the fullest extent permitted by applicable Legal Requirements hereby waives all rights under all appraisement, homestead, moratorium, valuation, exemption, stay, extension, and redemption statutes, laws or equities now or hereafter existing, and hereby further waives the pleading of any statute of limitations as a defense to any and all Obligations secured by this Mortgage.  Mortgagor, on its own behalf and on behalf of each and every person or other party acquiring any interest in or title to the Property subsequent to the date of this Mortgage, hereby irrevocably waives any and all rights of redemption from sale under any order or decree of foreclosure of this Mortgage or under any power contained herein or under any sale pursuant to any statute, order, decree or judgment of any court.

9.    **Notices.**    All notices, demands, requests, consents, approvals and other communications required or permitted hereunder must be in writing and will be given in the manner for notices set forth in the Agreement.

10.    **Preservation of Rights.**    The Mortgagee's rights and remedies hereunder are cumulative and not exclusive of any other rights or remedies which the Mortgagee may have under other agreements, at law or in equity.

11.    **Illegality.**    If any provision contained in this Mortgage should be invalid, illegal or unenforceable in any respect, it shall not affect or impair the validity, legality and enforceability of the remaining provisions of this Mortgage.

12.    **Entire Agreement.**    This Mortgage (including the documents and instruments referred to herein) constitutes the entire agreement and supersedes all other prior agreements and understandings, both written and oral, between the parties with respect to the subject matter hereof.

13.    **Survival; Successors and Assigns.**    This Mortgage will be binding upon and inure to the benefit of the Mortgagor and the Mortgagee and their respective heirs, executors, administrators, successors and assigns.

14.    **Interpretation.**    In this Mortgage, unless the Mortgagor and Mortgagee otherwise agree in writing, the singular includes the plural and the plural the singular; words importing any gender include the other genders; references to statutes are to be construed as including all statutory provisions consolidating, amending or replacing the statute referred to; the word "or" shall be deemed to include "and/or", the words "including", "includes" and "include" shall be deemed to be followed by the words "without limitation"; references to articles, sections (or subdivisions of sections) or exhibits are to those of this Mortgage; and references to agreements and other contractual instruments shall be deemed to include all subsequent amendments and other modifications to such instruments, but only to the extent such amendments and other modifications are not prohibited by the terms of this Mortgage.  Section headings in this Mortgage are included for convenience of reference only and shall not constitute a part of this

Mortgage for any other purpose.   If this Mortgage is executed by more than one party as Mortgagor, the obligations of such persons or entities will be joint and several.

**15.    No Merger.**   It being the desire and intention of the parties hereto that this Mortgage and the lien hereof do not merge in fee simple title to the Property, it is hereby understood and agreed that should Mortgagee acquire an additional or other interests in or to the Property or the ownership thereof, then, unless a contrary intent is manifested by Mortgagee as evidenced by an express statement to that effect in an appropriate document duly recorded, this Mortgage and the lien hereof shall not merge in the fee simple title, toward the end that this Mortgage may be foreclosed as if owned by a stranger to the fee simple title.

**16.    Governing Law and Jurisdiction.**   This Mortgage has been delivered to and accepted by the Mortgagee and will be deemed to be made in the State of Illinois.

**17.    WAIVER OF JURY TRIAL.    THE MORTGAGOR IRREVOCABLY WAIVES ANY AND ALL RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY ACTION, PROCEEDING OR CLAIM OF ANY NATURE RELATING TO THIS MORTGAGE, ANY DOCUMENTS EXECUTED IN CONNECTION WITH THIS MORTGAGE OR ANY TRANSACTION CONTEMPLATED IN ANY OF SUCH DOCUMENTS.    THE MORTGAGOR ACKNOWLEDGES THAT THE FOREGOING WAIVER IS KNOWING AND VOLUNTARY.**

73617915v2

**WITNESS** the due execution hereof as a document under seal, as of the date first written above, with the intent to be legally bound hereby.

_____, a _____

By: _____
Print Name: _____
Title: _____

## ACKNOWLEDGMENT

STATE OF ILLINOIS          )
                           )          ss:
COUNTY OF COOK             )

On this, the _____ day of _____, 2017, before me, a Notary Public, the undersigned officer, personally appeared _____, known to me (or satisfactorily proven) to be the person whose name is subscribed to the foregoing instrument as Manager of _____, a _____, and acknowledged that he/she executed the same for the purposes therein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_____
Notary Public

My commission expires:

6

# EXHIBIT A

## Legal Description

BLOCKS 5 AND 6 (EXCEPT THE EAST 150 FEET OF BLOCK 6 AND EXCEPT THE WEST 35 FEET OF THE EAST 185 FEET OF THE SOUTH 180 FEET OF BLOCK 6) IN HIRSH AND YOUNGS SUBDIVISION OF THE NORTHWEST QUARTER OF THE SOUTHEAST QUARTER OF SECTION 24, TOWNSHIP 38 NORTH, RANGE 13, EAST OF THE THIRD PRICIPAL MERIDIAN, AND ALSO THAT PART OF VACATED WEST 68TH STREET LYING EASTERLY OF THE EAST LINE OF SOUTH CALIFORNIA AVENUE AND WESTERLY OF THE WEST LINE OF SOUTH WASHTENAW AVENUE (EXCEPT THE EAST 150 FEET OF THE SOUTH ONE HALF THEREOF, LYING NORTH OF AND ADJOINING BLOCK 6) IN HIRSH AND YOUNG'S SUBDIVISON OF THE NORTHWEST QUARTER OF THE SOUTHEAST QUARTER OF SECTION 24, TOWNSHIP 38 NORTH, RANGE 13, EAST OF THE THIRD PRINCIPAL MERIDIAN, ALL IN COOK COUNTY, ILLINOIS.

VACATED PART OF SOUTH FAIRFIELD AVENUE EAST OF AND ADJOINING THE EAST LINE OF BLOCK 5 AND WEST OF AND ADJOINING THE WEST LINE OF BLOCK 6, IN HIRSH AND YOUNG'S SUBDIVISION OF THE NORTHWEST QUARTER OF THE SOUTHEAST QUARTER OF SECTION 24, TOWNSHIP 38 NORTH, RANGE 13, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS, THAT PART OF SAID STREET BEING OTHERWISE COMMONLY DESCRIBED AS THAT PART OF SOUTH FAIRFIELD AVENUE BETWEEN THE SOUTH LINE OF WEST 68TH STREET AND THE NORTH LINE OF WEST 69TH STREET, CHICAGO IN COOK COUNTY, ILLINOIS.

LOTS 13, 14, 15 AND 16 IN WILLIAM H. BRITTIGAN'S RESUBDIVISON OF LOTS 1 TO 11, BOTH INCLUSIVE, IN BLOCK 1 AND LOTS 1 TO 11, BOTH INCLUSIVE, IN BLOCK 2 IN C.S. THORNTONS SUBDIVISION OF THE WEST HALF OF THE SOUTHWEST QUARTER OF THE SOUTHEAST QUARTER OF SECTION 24, TOWNSHIP 38 NORTH RANGE 13, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

LOTS 9 AND 10 IN WILLIAM BRITTIGAN'S RESUBDIVISON OF LOT 1 TO 11, BOTH INCLUSIVE, IN BLOCK 1 AND LOTS 1 TO 11, BOTH INCLUSIVE, IN BLOCK 2, IN C.S. THORNTON'S SUBDIVISON OF THE WEST HALF OF THE SOUTHWEST QUARTER OF THE SOUTHEAST QUARTER OF SECTION 24, TOWNSHIP 38 NORTH, RANGE 13, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

LOTS 11 AND 12 IN WILLIAM BRITTIGAN'S RESUBDIVISON OF LOT 1 TO 11, BOTH INCLUSIVE, IN BLOCK 1 AND LOTS 1 TO 11, BOTH INCLUSIVE, IN BLOCK 2, IN C.S. THORNTON'S SUBDIVISON OF THE WEST HALF OF THE SOUTHWEST QUARTER OF THE SOUTHEAST QUARTER OF SECTION 24, TOWNSHIP 38 NORTH, RANGE 13, EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

Commonly known as:  _____, _____, Illinois

P.I.N.s:  _____

73617915v2