IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CORINNE BUTLER and ANDREA FITZSIMMONS, *on behalf of themselves individually, and on behalf of all others similarly situated* | ) ) ) ) ) | |
| Plaintiffs, | ) ) | No. 16-CV-5907 |
| v. | ) ) ) | Judge Manish S. Shah |
| HOLY CROSS HOSPITAL, SINAI HEALTH SYSTEM, WAYNE LERNER, DIANE HOWARD, JOHN R. BALL, M.D, BARBARA FAHEY, SATYA AHUJA, M.D., CHIA HUANG, M.D., LARRY MARGOLIS, SIVARAMAPRASAD TUMMALA, M.D., HOWARD BERMAN, GARY J. NIEDERPRUEM, SHARON ROSSMARK, YOGI AHULUWALIA, M.D., JOHN BENEVIDES, CHARLES BROWN, DANIEL CANTRELL, ALAN H. CHANNING, JOHN DANAHER, M.D., LESLIE DAVIS, MARK J. FRISCH, AIDA GIACHELLO, NEAL GOLDSTEIN, ALBERT GRACE, JONATHAN JONAS, GARY KELLER, KENNETH A. LUCCIONI, ROBERT MARKIN, GLORIA MATERRE, BRET MAXWELL, WAYNE PIERCE, MAURICE SCHWARTZ, ROBERT SHAKNO, BEN SOLDINGER, ALAN SOLOW, ROBERT STEELE, STEVE TOPEL, TERRY WHEAT, and JOHN and JANE DOES, each an individual, 1-40, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | | |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION
<u>FOR FINAL APPROVAL OF THE SETTLEMENT</u>**

## **TABLE OF AUTHORITIES**

I.     INTRODUCTION ................................................................................................ 1

II.    FACTUAL AND PROCEDURAL BACKGROUND.......................................... 3

      A.   Overview of the Settlement Agreement................................................. 7

           1.     Monetary Consideration................................................... 7

           2.     Liquidation and Termination of the Plan ........................ 8

           3.     Certification of a Rule 23 Class ...................................... 8

           4.     Releases .......................................................................... 9

           5.     Notice ............................................................................. 9

           6.     Attorneys' Fees, Costs and Incentive Awards ................ 9

      B.   Reasons for the Settlement.................................................................. 10

III.   THE PROPOSED SETTLEMENT WARRANTS FINAL APPROVAL ........ 10

      A.   The Settlement Was Reached After Arm's-Length Negotiations with the Assistance of an Experienced Mediator and Is Procedurally Fair ....................................................... 11

      B.   Application of the *Synfuel* Factors Supports Approval of the Settlement as Fair, Reasonable and Adequate ............................................................................. 12

           1.     The Strength of Plaintiffs' Case Compared to the Amount of Settlement, As Well As the Complexity, Expense and Likely Duration of the Litigation Support Approval of the Settlement, Support Approval. ........................... 13

           2.     An Evaluation of the Amount of Opposition to Settlement Among Affected Parties Supports Approval of the Settlement. ............................................. 14

           3.     The Stage of the Proceedings and the Amount of Discovery Completed Support Approval of the Settlement, and the Opinion of Class Counsel Is That the Settlement Is Fair and Reasonable. ............................................... 16

IV.   NOTICE TO THE CLASS SATISFIED THE REQUIREMENTS OF RULE 23 AND DUE PROCESS ........................................................................................... 17

V.    THE REQUIREMENTS FOR CLASS CERTIFICATION HAVE BEEN MET AND THE CLASS SHOULD BE CERTIFIED.......................................................... 18

      A.   The Settlement Class Meets the Requirements of Rule 23(a). ................................ 19

B.    The Class Satisfies the Requirements of Rule 23(b)(1)............................................. 20

C.    Class Counsel Meets the Requirements of Rule 23(g). ............................................ 21

VI.    CONCLUSION................................................................................................................ 21

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Amchem Prods. v. Windsor*,
　521 U.S. 591 (1997) ...................................................................................................25

*Armstrong v. Bd. of Sch. Dirs. of the City of Milwaukee*,
　616 F.2d 305 (7th Cir. 1980) .....................................................................................16

*In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*,
　789 F. Supp. 2d 935 (N.D. Ill. 2011) .........................................................................18

*Baker v. Kingsley*,
　No. 03 C 1750, 2007 WL 1597654 (N. D. Ill. May 31, 2007) ...................................26

*In re Beef Indus. Antitrust Litig.*,
　607 F.2d 167 (5th Cir. 1979) .....................................................................................23

*Brieger v. Tellabs, Inc.*,
　245 F.R.D. 345 (N.D. Ill. 2007) ................................................................................26

*Gaspar v. Linvatec Corp.*,
　167 F.R.D. 51 (N.D. Ill. 1996) ..................................................................................24

*Cannon v. Burge*,
　752 F.3d 1079 (7th Cir. 2014) ...................................................................................16

*CE Design v. Beaty Constr., Inc.*,
　No. 07 C 3340, 2009 WL 192481 (N.D. Ill. Jan. 26, 2009) .......................................23

*EEOC v. Hiram Walker & Sons, Inc.*,
　768 F.2d 884 (7th Cir. 1985) .....................................................................................15

*Hispanics United of DuPage Cty. v. Vill. of Addison*,
　988 F. Supp. 1130 (N.D. Ill. 1997) ............................................................................16

*Isby v. Bayh*,
　75 F.3d 1191 (7th Cir. 1996) ...............................................................15, 18, 21, 23

*Jackson v. Sheriff of Cook Cty.*,
　No. 06 C 0493, 2006 WL 3718041 (N.D. Ill. Dec. 14, 2006) ...................................24

*Kaplan v. Saint Peter's Healthcare Sys.*,
　810 F.3d 175 (3d Cir. 2015) .................................................................................10, 18

*Keele v. Wexler*,
　149 F.3d 589 (7th Cir. 1998) .....................................................................................24

*Loomis v. Exelon Corp.*,
No. 06 C 4900, 2007 WL 2060799 (N. D. Ill. June 26, 2007) ................................................26

*Lukas v. Advocate Health Care Network & Subsidiaries*,
No. 1:14-CV-2740, 2015 WL 5006019 (N.D. Ill. Aug. 19, 2015) ..........................................24

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Adcock*,
176 F.R.D. 539 (N.D. Ill. 1997)................................................................................................16

*In re Mex. Money Transfer Litig.*,
164 F. Supp. 2d 1002 (N.D. Ill. 2000). Pursuant to the Preliminary Approval
Order ...................................................................................................................................20, 21

*Miksis v. Evanston Twp. High Sch. Dist. # 202*,
No. 12 C 8497, 2017 WL 386652 (N.D. Ill. Jan. 27, 2017), *as amended* (Feb.
2, 2017) ......................................................................................................................................16

*Mirfasihi v. Fleet Mortg. Corp.*,
450 F.3d 745 (7th Cir. 2006) ....................................................................................................17

*Muro v. Target Corp.*,
580 F.3d 485 (7th Cir. 2009) ....................................................................................................24

*Neil v. Zell*,
275 F.R.D. 256 (N.D. Ill. 2011)................................................................................................26

*Noll v. eBay, Inc.*,
309 F.R.D. 593 (N.D. Cal. 2015)..............................................................................................21

*Oshana v. Coca-Cola Co.*,
472 F.3d 506 (7th Cir. 2006) ....................................................................................................24

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
163 F.R.D. 200 (S.D.N.Y. 1995) ..............................................................................................23

*Rollins v. Dignity Health*,
830 F.3d 900 (9th Cir. 2016) ..............................................................................................10, 18

*Rosario v. Livaditis*,
963 F.2d 1013 (7th Cir. 1992) ..................................................................................................24

*In re Sears, Roebuck and Co. Front-loading Washer Prods. Liab. Litig.*,
No. 06 C 7023, 2016 WL 772785 (N.D. Ill. Feb. 29, 2016)....................................................16

*Smith v. Aon Corp.*,
238 F.R.D. 609 (N. D. Ill. 2006)...............................................................................................26

*Stapleton v. Advocate Health Care Network*,
    817 F.3d 517 (7th Cir. 2016) ......................................................................10, 18

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*,
    463 F.3d 646 (7th Cir. 2006) ......................................................................17, 18

*Tucker v. Walgreen Co.*,
    No. 05-440-GPM, 2007 WL 2915578 (S.D. Ill. Oct. 5, 2007) ................................22

*Williams v. Quinn*,
    748 F. Supp. 2d 892 (N.D. Ill. 2010) .................................................................17

*Williams v. Rohm & Haas Pension Plan*,
    658 F.3d 629 (7th Cir. 2011) .............................................................................15

## STATUTES

11 U.S.C. §362(a) ...........................................................................................19

28 U.S.C. § 1715 ...................................................................................7, 20, 21

29 U.S.C. § 1001, *et seq*............................................6, 7, 8, 9, 16, 19, 21, 24, 25, 26

## OTHER AUTHORITIES

Federal Rule of Civil Procedure 23 ...........................5, 7, 11, 12, 13, 15, 17, 22, 23, 24, 25, 26, 27

Federal Rule of Evidence 408................................................................................10

5 James Wm. Moore, MOORE'S FEDERAL PRACTICE § 23.164[4] (3d ed. 2004)..........................21

## I.    INTRODUCTION

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Plaintiffs Corinne Butler and Andrea Fitzsimmons ("Plaintiffs" or "Named Plaintiffs"), by and through their attorneys, respectfully submit this memorandum in support of their Unopposed[1] Motion for Final Approval of Settlement Agreement and Certification of Settlement Class.[2]  This Settlement resolves the claims of Plaintiffs in this case against all Defendants. The Complaint alleges that Defendants Holy Cross Hospital ("Holy Cross") and Sinai Health System ("SHS") denied ERISA[3] protections to the participants and beneficiaries of the Pension Plan for Employees of Holy Cross Hospital (the "Plan") by incorrectly claiming that the Plan qualifies as an ERISA-exempt "church plan."  The Complaint further alleges that Defendants purported to terminate the Plan in its underfunded state, with a resulting insufficient distribution to participants and beneficiaries.

The Settlement[4]  represents the best monetary result for the proposed Settlement Class of participants and beneficiaries of the Plan that could be achieved in the face of significant legal and practical risks. As this Memorandum is being filed, the Supreme Court is in the process of considering the scope of the ERISA church plan exemption—and specifically whether a hospital can claim that exemption, just as Holy Cross did here. Because that decision is still pending and the outcome uncertain, it is possible that Plaintiffs in this case could find themselves with diminished legal recourse in a few months' time. Furthermore, during the course of the Parties'

---

[1] Defendants do not agree with all averments stated in this Memorandum, however, Defendants do not oppose the ultimate relief sought herein.

[2] Plaintiffs file the instant Motion contemporaneously with their Motion for Awards of Attorneys' Fees and Expenses and for Incentive Awards to the Named Plaintiffs.

[3] "ERISA" is the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001, *et seq.*

[4] Capitalized terms not otherwise defined in this memorandum have the same meaning as ascribed to them in the Settlement Agreement, attached hereto as Ex. 1.

settlement discussions, Defendants indicated that they could face a potential insolvency scenario if forced to satisfy a judgment in the amount Plaintiffs seek. As a result, even if the Supreme Court were to decide that hospital pension plans are *not* exempt from ERISA under the church plan exemption and even if Plaintiffs were to succeed at trial in this case, Plaintiffs would risk facing a pyrrhic victory: a declaration that the Holy Cross Plan is subject to ERISA, at the expense of any potential for monetary relief.

Instead of continuing litigation despite the significant risks of non-recovery, Plaintiffs negotiated this Settlement. As a result of this Settlement, the Settlement Class will receive the Class Settlement Amount, which is comprised of two components totaling approximately $9 million: (i) a $4 million cash payment (from which attorneys' fees and expenses incurred by Plaintiffs will be deducted as well as specified incentive awards to be paid to Named Plaintiffs), and (ii) approximately $5.1 million in undistributed Plan assets held in the Plan Trust, from which Plan operational and actuarial costs will be deducted. In other words, Defendants will almost double the amount of assets held in the Plan Trust, resulting in a final distribution that approaches one-third of the shortfall in the Pension Plan. Each Class member will receive a *pro rata* share of those assets in the Plan Trust.

This Settlement was reached only after vigorous arm's-length negotiations by sophisticated counsel with the assistance of a third-party mediator who has had significant experience mediating ERISA and church plan cases. The Parties have fully complied with the terms of this Court's Order Preliminarily Approving Class Action Settlement Agreement, including providing notice of the Settlement to the Settlement Class and mailing the Class Action Fairness Act ("CAFA") notices to the requisite officials pursuant to the CAFA statute, 28 U.S.C. § 1715. Under the governing standards for evaluating class action settlements in this Circuit and

pursuant to Federal Rule of Civil Procedure 23(e)(2), this Settlement is fair, reasonable, and adequate, and therefore Plaintiffs respectfully ask that the Court approve it.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs Butler and Fitzsimmons are both former employees of Holy Cross. Declaration of Corinne Butler ("Butler Decl.") ¶ 3; Declaration of Andrea Fitzsimmons ("Fitzsimmons Decl.") ¶ 3. After learning that the Sisters of St. Casimir of Chicago ("SSC") planned to terminate the Plan, both Plaintiffs were offered a lump sum distribution that allegedly cut their respective pension benefits by more than half. Butler Decl. ¶ 4; Fitzsimmons Decl. ¶ 4. Plaintiff Butler further alleges she was told that, by investing the lump sum, she could generate 13.5% interest on that amount each year. Butler Decl. ¶ 4. This suggestion prompted Plaintiff Butler to contact an attorney. *Id.* ¶ 5. Plaintiff Fitzsimmons spent hours researching proper discount rates for pension benefits before concluding that the Pension Plan administrator had not fairly calculated her pension benefits. Fitzsimmons Decl. ¶ 5. Plaintiff Fitzsimmons contacted the U.S. Department of Labor, where a representative advised her that if Holy Cross had incorrectly claimed church plan status, she might have a case for litigation. *Id.* ¶ 6. Both Plaintiffs resolved to litigate their case and began to interview ERISA attorneys to ensure that they had confidence in the lawyers litigating these claims on behalf of Plan participants. *See* Butler Decl. ¶ 7; Fitzsimmons Decl. ¶ 7.

On June 6, 2016, Plaintiffs Butler and Fitzsimmons filed a putative class action Complaint in this Court against Holy Cross and various other defendants (collectively, the "Defendants") alleging violations of ERISA. Compl., Dkt. No. 1. Plaintiffs are represented by Cohen Milstein Sellers & Toll PLLC, Keller Rohrback L.L.P., and DeBofsky, Sherman & Casciari, P.C. (collectively, "Class Counsel"). The Complaint alleges that Defendants denied ERISA protections to the participants and beneficiaries of the Plan, a defined benefit pension

plan sponsored by Holy Cross, by incorrectly claiming that the Plan qualifies as an ERISA-exempt "church plan." *See* 29 U.S.C. § 1002(33). The Complaint further alleges that asserting this exemption caused Defendants to deny Plan participants the protections of ERISA. Among other violations, the Complaint alleges that Defendants: caused the Plan to be underfunded by $31 million; improperly terminated the Plan while it was underfunded; offered participants discounted lump sum distributions using calculations that violate ERISA; and unlawfully attempted to avoid liability for the Plan's underfunding by transferring control of the Plan to SSC while knowing that SSC lacked the financial resources to make up the shortfall.

On June 29, 2016, this Court granted the Parties' stipulation to vacate the initial responsive pleading date and to stay the case, to allow the Parties to mediate the dispute in an attempt at early resolution. On August 24, 2016, the Parties participated in mediation facilitated by nationally-known mediator Robert A. Meyer, Esq., of JAMS in Los Angeles, California. Mr. Meyer has substantial experience mediating cases involving ERISA and retirement plan issues, including cases involving the church plan exemption. Ex. A § 2.4; Class Counsel Decl. ¶ 22.

Although the matter was not resolved at the first mediation, the Parties made progress and agreed to continue pursuing a settlement agreement. Class Counsel Decl. ¶ 24. Accordingly, this Court granted the Parties' September 19, 2016 request to extend the stay for an additional 60 days. *Id.* During the extended stay, the Parties remained actively engaged in settlement negotiations and organized a second in-person meeting with the mediator and other professionals to examine the risks of continued litigation. *Id.* ¶ 25. The Court granted the Parties' November 16, 2016 second request for an extension of the stay to allow the Parties to attempt to bring the matter to a final resolution during the second meeting with the mediator. That mediation took place in Los Angeles on December 19, 2016, and numerous follow up sessions were held with

the mediator by phone thereafter. *Id.* ¶ 26. The Named Plaintiffs were available by telephone for all of the mediation sessions to advise Class Counsel on settlement strategy. *See* Butler Decl. ¶¶ 10, 12; Fitzsimmons Decl. ¶¶ 11-13.

While developing the case and through settlement negotiations, Class Counsel expended a substantial amount of time investigating the relevant facts, the legal issues related to Plaintiffs' claims, and the financial risks associated with trying to collect a judgment against the various groups of Defendants. Class Counsel Decl. ¶ 28. This investigation included, *inter alia:* (a) meeting with Plaintiffs Butler and Fitzsimmons, and other plan participants, to discuss their claims; (b) reviewing Named Plaintiffs' documents; (c) inspecting, reviewing and analyzing documents produced by or otherwise relating to Holy Cross, SHS, and SSC's business structure and financial condition; (d) researching the applicable law with respect to the claims asserted in the Complaint and the defenses and potential defenses thereto, including liability for the improper transfer of the Plan to SSC and for failing to obtain insurance from the Pension Benefit Guaranty Corporation ("PBGC"); (e) inspecting, reviewing and analyzing documents concerning administration and purported termination of the Plan; and (f) researching and analyzing governmental and other publicly-available information concerning Defendants and the Plan. *Id.*

During the settlement negotiation phase, the parties' discussions were informed by decisions concerning the church plan exemption that were issued by the Third, Seventh, and Ninth Circuit Courts of Appeals, and which are now pending before the Supreme Court. *See Kaplan v. Saint Peter's Healthcare Sys.*, 810 F.3d 175 (3d Cir. 2015); *Stapleton v. Advocate Health Care Network*, 817 F.3d 517 (7th Cir. 2016); *Rollins v. Dignity Health,* 830 F.3d 900 (9th Cir. 2016). In particular, the Parties considered the additional risk presented by the U.S. Solicitor General having filed a brief in support of the hospital petitioners. Class Counsel Decl. ¶ 27.

Class Counsel's diligence also included discussions with professionals on both sides who considered detailed, confidential financial analyses with respect to Defendants' financial condition. *See id.* ¶ 8. These analyses were and are confidential and legally privileged documents, protected by Federal Rule of Evidence 408 and the mediation privilege, which Defendants represented to be true, complete and accurate. *Id.* This information included historical results, future revenue streams, and also a potential insolvency scenario if Defendants were forced to satisfy a judgment in the amount Plaintiffs seek. Ex. A §§ 2.9-2.10; Class Counsel Decl. ¶ 25. Class Counsel provided these analyses to the Named Plaintiffs who reviewed these documents and considered the ramifications of the entities' financial condition as they directed Class Counsels' settlement negotiations.

After months of negotiations, the Parties finally agreed upon the non-monetary components of a settlement, yet were unable to reach a monetary figure for resolving the litigation. Class Counsel Decl. ¶ 29. On February 15, 2017, the mediator issued a mediator's proposal, giving the Parties until the next day to accept or reject the settlement amount. *Id.* ¶ 30. A Term Sheet was executed by all Parties on February 16, 2017, and the Parties informed the Court they had reached a settlement. *Id.* ¶ 32. *See* Ex. A. The process was thorough, adversarial, and professional. Class Counsel Decl. ¶ 34.

On March 1, 2017, Plaintiffs filed their Unopposed Motion for Preliminary Approval of the Settlement Agreement. Dkt. No. 39. This Court held a telephonic preliminary approval hearing on Plaintiffs' motion on March 9, 2017, and granted the motion the same day. In its Preliminary Approval Order, this Court preliminary certified the Class under Rule 23(b)(1); ordered that notice to the class be sent out by April 28, 2017; ordered that any objections to the settlement were due, in writing, by June 1, 2017; and set the Final Approval Hearing for June 29,

2017. Dkt. No. 43.

**A.      Overview of the Settlement Agreement**

The principal terms of the Settlement Agreement are summarized below. *See* Ex. A.

**1.      Monetary Consideration**

Pursuant to the Settlement Agreement, the Defendants will make (and have made, to the extent required by the Settlement Agreement) payments totaling $4 million into an interest-bearing escrow account (the "Escrow Contribution") on the schedule set out in the Settlement Agreement, such that the entire Escrow Contribution will be held in the Escrow Account within ten business days after the Court enters a final order approving the Settlement Agreement. Ex. A § 8.1.2. Within fifteen days after the Settlement becomes Final,[5] the Escrow Contribution – plus accrued interest, less any award of Plaintiffs' attorneys' fees and expense reimbursements, and incentive awards to Named Plaintiffs – will be paid to the Plan (the "Plan Payment") and combined with the approximately $5.1 million (less amounts for Plan operating expenses) Plan Trust Amount for distribution to the Class. *Id.* §§ 8.1.2, 8.1.3, 8.1.5. The combined Plan Trust Amount and the Plan Payment, referred to in the Settlement Agreement as the "Class Settlement Amount," will then be allocated and paid to Class Members based upon the same actuarial assumptions and methodologies used for the Plan Termination payments that occurred in December 2015. *Id.* § 8.1.4.   After notice and administrative costs, and payment of attorneys' fees, expenses, and incentive awards, Defendants anticipate that approximately $8.4 million will be available for distribution to Plan participants. *Id.*

---

[5] "Final" is defined in the Settlement Agreement as: "with respect to any judicial ruling or order in the Action, that the period for any appeals, petitions, motions for reconsideration, rehearing or certiorari or any other proceedings for review ("Review Proceeding") has expired without the initiation of a Review Proceeding, or, if a Review Proceeding has been timely initiated, that there has occurred a full and completed disposition of any such Review Proceeding, including the exhaustion of proceedings in any remand and/or subsequent appeal on remand." Ex. A at § 1.13.

Pursuant to the Settlement Agreement, all amounts due under the Settlement Agreement have been secured by a mortgage on the Holy Cross real property and improvements, excluding Holy Cross personal property or equipment. Class Counsel Decl. ¶ 35, Ex. A § 9.1. The mortgage was executed on April 11, 2017, and was recorded with the Cook County Recorder of Deeds on April 13, 2017. *Id.* The mortgage will be released when the Settlement becomes Final or if the Settlement fails. *Id*. §§ 9.1.2, 9.1.3.

The Settlement provides that Defendants will support approval of the Settlement if there are insolvency proceedings for Holy Cross or SHS, and if all or any portion of the Settlement is "clawed back" from the Class in such proceedings, Defendants agree that Plaintiffs are entitled to assert the claims asserted in the Complaint, subject to all of Defendants' defenses and counter-claims. *Id*. §§ 9.2, 9.3.

### 2. Liquidation and Termination of the Plan

After the final distribution of the Class Settlement Amount, the Plan will be fully liquidated and formally terminated. *Id*. § 1.18.

### 3. Certification of a Rule 23 Class

The Settlement contemplates that the Court will certify a non-opt-out class under Federal Rule of Civil Procedure 23(b)(1) or (b)(2).[6] Ex. A § 3.2.2. The Settlement Class is defined as: "All Plan participants or Plan beneficiaries who received a distribution from the Plan on December 31, 2015, in connection with the Plan's intended termination and (i) who were not later identified as having died prior to September 1, 2015; or (ii) who were not included in the Plan's distribution on December 31, 2015, in connection with the Plan's intended termination, but who were identified after December 31, 2015, as being eligible for a benefit prior to the

---

[6] In its March 9, 2017 Preliminary Approval Order, this Court preliminarily approved the settlement class under Rule 23(b)(1) only. Dkt. No. 43.

Settlement's effective date." *Id.* § 1.34. The Settlement Class *excludes* all individual Defendants named in the Complaint. *Id.*

**4.      Releases**

The Settlement Agreement provides for releases by and among Plaintiffs, Defendants, and certain other non-parties (such as affiliates, SSC, insurers, counsel, and Plan fiduciaries) related to the litigation. *Id.* § 4.   The persons to be released by Plaintiffs are defined as the "Releasees" and enumerated at § 1.29 of the Settlement Agreement. The Releasees will be released from the "Released Claims," which generally include all claims that could have been asserted by Plaintiffs, arising under federal or state law, related to the sponsorship, funding, maintenance, operation or termination of, or distributions from, the Plan. *Id.* § 4.1. Plaintiffs, the Settlement Class, and Class Counsel will be released from claims relating to the institution and prosecution of this case.  *Id.* § 4.2.

**5.      Notice**

The Preliminary Approval Order provided for the following proposed Class Notice Program: (a) a mailed postcard notice ("Summary Notice"), sent to the last known address of members of the Settlement Class and (b) an internet publication of the Settlement Agreement and long-form Class Notice at www.cohenmilstein.com/HCH-settlement and www.kellersettlements.com.  Class Counsel Decl. ¶ 42. The Plan paid the costs for notice, and the Summary Notice was sent out on April 27, 2017. Ex. A at § 3.2.3; Affidavit of John Cronin ("Cronin Aff."), ¶ 9, attached hereto as Ex. H.

**6.      Attorneys' Fees, Costs and Incentive Awards**

By separate application, Class Counsel seek an award of attorneys' fees, expenses, and incentive fees to the Named Plaintiffs, to be deducted from the Plan Payment. The Settlement

Class was notified of these details in the Class Notice. Class Counsel Decl. ¶¶ 40-42. The attorneys' fees, expenses and incentive awards will be deducted from the amounts in escrow and will be distributed to Class Counsel within fifteen days of the Settlement becoming final. Ex. A at § 8.1.2. Additional support for these requests is set forth in the accompanying Declarations from Class Counsel and the Named Plaintiffs themselves. Class Counsel Decl. ¶ 48; Butler Decl. ¶¶ 14-17; Fitzsimmons Decl. ¶¶ 18-19.

## B.        Reasons for the Settlement

Plaintiffs have entered into the Settlement Agreement with an understanding of the strengths and weaknesses of their claims. In reaching this agreement, Class Counsel and Plaintiffs have considered, among other things, the risks of litigation; the time necessary to achieve a complete resolution through litigation; the complexity of the claims set forth in the Complaint; the ability of Defendants to withstand judgment; and the benefit accruing to the Plan's participants under the Settlement. Class Counsel Decl. ¶ 33. They have also considered reports from professionals concerning Defendants' financial condition; reviewed materials produced in connection with the mediation; assessed the range of possible recovery; and considered the significant uncertainties in predicting the outcome of this litigation where the critical legal issue is pending before the U.S. Supreme Court. *Id.*; *see also* Ex. A §§ 2.2 - 2.3, 2.9 - 2.11. Having weighed all of these factors, Class Counsel and Plaintiffs have concluded that the Settlement is fair, reasonable, and adequate, and should be approved. Class Counsel Decl. ¶ 75.

## III.    THE PROPOSED SETTLEMENT WARRANTS FINAL APPROVAL

Under Rule 23(e) of the Federal Rules of Civil Procedure, the Settlement should be approved if the Court finds it "fair, reasonable, and adequate." *See* Fed. R. Civ. P. 23(e)(2); *Williams v. Rohm & Haas Pension Plan*, 658 F.3d 629, 634 (7th Cir. 2011) (citing Fed. R. Civ. P. 23(e)(2)); *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996)). In general, Federal courts favor

10

settlement of class action litigation. *Isby*, 75 F.3d at 1196; *EEOC v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 888-89 (7th Cir. 1985). "In the class action context in particular, there is an overriding public interest in favor of settlement. Settlement of the complex disputes often involved in class actions minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources." *In re Sears, Roebuck and Co. Front-loading Washer Prods. Liab. Litig.*, No. 06 C 7023, 2016 WL 772785, at *6 (N.D. Ill. Feb. 29, 2016) (citing *Armstrong v. Bd. of Sch. Dirs. of the City of Milwaukee*, 616 F.2d 305, 313 (7th Cir. 1980)). As a result, "[c]ourts do not easily disturb settlement agreements." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Adcock*, 176 F.R.D. 539, 544 (N.D. Ill. 1997); *see also Miksis v. Evanston Twp. High Sch. Dist. # 202*, No. 12 C 8497, 2017 WL 386652, at *17 (N.D. Ill. Jan. 27, 2017), *as amended* (Feb. 2, 2017) (approving a settlement agreement and noting that "the Court also cannot ignore the strong federal policy favoring the voluntary resolution of disputes"); *Cannon v. Burge*, 752 F.3d 1079, 1104 (7th Cir. 2014) ("Public policy in Illinois favors settlements") (citation omitted).

### A. The Settlement Was Reached After Arm's-Length Negotiations with the Assistance of an Experienced Mediator and Is Procedurally Fair

"A strong initial presumption of fairness attaches to the proposed settlement when it is shown to be the result of [an arm's-length] negotiating process." *Hispanics United of DuPage Cty. v. Vill. of Addison*, 988 F. Supp. 1130, 1150 n.6 (N.D. Ill. 1997). The Settlement here is entitled to this strong presumption of fairness because the Settling Parties in this action are represented by counsel experienced in litigating the ERISA "church plan" exemption; the Settlement was the result of arm's-length negotiations before an experienced mediator; and the Settling Parties understood the strengths and weaknesses of the claims and defenses before settlement was reached. Class Counsel Decl. ¶¶ 33-34, 56-57. As described in detail above and in

the Declaration of Class Counsel, throughout the development of the case, Class Counsel conducted an intense and thorough inspection of documents relating to Defendants' business structure, financial condition, and Plan administration. *See supra* Section II. Class Counsel also researched and analyzed applicable law and potential defenses as they argued these same issues before the Supreme Court this term. *Id.*

Based on this analysis, Class Counsel concluded that the Settlement reached here is the best monetary result that could be obtained under the circumstances. *Id.*

**B.    Application of the *Synfuel* Factors Supports Approval of the Settlement as Fair, Reasonable and Adequate**

Now that this Court has preliminarily approved the settlement and caused notice to issue to Settlement Class members consistent with Federal Rule of Civil Procedure 23(e)(1), the Court must decide whether final approval is warranted. While Seventh Circuit standards require that a court closely scrutinize class counsel's fiduciary duties to obtain the best settlement for the class, "[t]he purpose of a fairness hearing is not to resolve the merits of the case, but to determine whether the settlement is fair, reasonable, and adequate when viewed in its entirety, and not a product of collusion." *Williams v. Quinn*, 748 F. Supp. 2d 892, 897 (N.D. Ill. 2010) (citing *Mirfasihi v. Fleet Mortg. Corp.*, 450 F.3d 745, 748 (7th Cir. 2006)).

Courts in the Seventh Circuit consider five factors (the "*Synfuel* factors") to evaluate whether a class action settlement meets this fairness requirement:

a.    "the strength of plaintiffs' case compared to the amount of defendants' settlement offer;"

b.    "an assessment of the likely complexity, length and expense of the litigation;"

c.    "an evaluation of the amount of opposition to settlement among affected parties;"

d.    "the opinion of competent counsel;" and

12

e. "the stage of the proceedings and the amount of discovery completed at the time of settlement."

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006) ("*Synfuel*"). In reviewing these factors, courts view the facts "in the light most favorable to the settlement." *Isby*, 75 F.3d at 1199. As discussed in detail below, each of these factors strongly favors approval of the Settlement.

**1. The Strength of Plaintiffs' Case Compared to the Amount of Settlement, As Well As the Complexity, Expense and Likely Duration of the Litigation Support Approval of the Settlement, Support Approval.**

The "most important factor relevant to the fairness of a class action settlement" is "the strength of plaintiff's case on the merits balanced against the amount offered in the settlement."' *In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp. 2d 935, 958 (N.D. Ill. 2011). Under this factor, courts consider whether the proposed settlement is reasonable in light of the risks of proceeding with the litigation. *Id.* at 959, 961-63. Plaintiffs' case is strong and they have pursued it vigorously, but the litigation is not without risk or uncertainty. Moreover, the U.S. Supreme Court recently heard oral argument on the three consolidated appellate church plan cases, and will be deciding whether, as Plaintiffs contend, ERISA-exempt church plans must be established by churches; or whether, as Defendants contend, organizations "controlled by" or "associated with" churches may establish their own church plans. *See Advocate v. Stapleton*, 817 F.3d 517 (7th Cir. 2016), *Saint Peter's*, *Dignity*, Nos. 16-74, 16-86, 16-258 (*cert. granted*, 137 S. Ct. 546 (Dec. 2, 2016).

Moreover, a decision from the Supreme Court will not necessarily resolve all the issues in the litigation. The Parties would still need to litigate how the Supreme Court's ruling applies to the facts of each case, in addition to class certification and summary judgment briefing, trial preparation and presentation, and appeals of any judgment. Furthermore, the expense of taking

13

this case through trial would be considerable. It would require, among other things, a substantial amount of formal discovery (including many important depositions) and extensive motion practice. Class Counsel Decl. ¶ 9. Trial preparation would require great effort, both by the Parties and the Court. *Id.*

Though Class Counsel remain confident in the merits of Plaintiffs' claims, there is risk in light of the state of the law and because Defendants would undoubtedly otherwise continue to vigorously defend their actions through trial and on appeal if necessary. The monetary consideration to the Plan is far better for the Class now, than continuing litigation in the hopes of a more significant recovery where Defendants have indicated that payment of a judgment in the amount Plaintiffs seek could cause a potential insolvency scenario that may lead Defendants to seek bankruptcy protection. Class Counsel Decl. ¶ 25. The Settlement in this action is immediately realizable by the Class and eliminates all of these risks, including by having the cash component secured by a mortgage on Holy Cross' real property and requiring Defendants to "undertake best efforts to obtain final approval of this Settlement and the consummation thereof, including but not limited to supporting court approval of the Settlement, and supporting any request by Plaintiffs for relief from the automatic stay of 11 U.S.C. §362(a) for purposes of obtaining approval and/or consummation of the Settlement." *See* Ex. A §§ 9.3, 11.3.1.

## 2. An Evaluation of the Amount of Opposition to Settlement Among Affected Parties Supports Approval of the Settlement.

The reaction of Class Members to the Settlement strongly favors approval. First, the Settlement has the full support of Plaintiffs Butler and Fitzsimmons, who thoroughly investigated their ERISA claims for two years, interviewed counsel, reviewed mediation statements and supporting materials, and held Class Counsel accountable for Counsel's decision-making throughout the settlement process. Butler Decl. ¶¶ 4-13; Fitzsimmons Decl. ¶¶ 4-13.

After scrutinizing the agreement, both Named Plaintiffs came to the conclusion that this Settlement provides the best outcome that the Class was likely to achieve. Butler Decl. ¶ 11; Fitzsimmons Decl. ¶ 14.

Moreover, in this Circuit, where only a relatively small number of class members (or, as here, none) object, it suggests that Class Members deem the settlement to be fair. *In re Mex. Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1020 (N.D. Ill. 2000). Pursuant to the Preliminary Approval Order dated March 9, 2017 (Dkt. No. 43), the Court-appointed Claims Administrator, October Three, began mailing copies of the short form Notice to class members on April 27, 2017. Cronin Aff. ¶ 9. As of today, 1,934 copies of the short form Notice have been disseminated. *Id.* The Short Form Notice set out the essential terms of the Settlement and informed Class Members where they could find complete information about the settlement and all relevant preliminary approval documents. It also notified Class Members of their right to object and directed them to the settlement website or Class Counsel for further explanation. Class Counsel Decl. ¶¶ 41-42. The deadline to object to the Settlement is June 1, 2017. Preliminary Approval Order ¶ 6 (Dkt. No. 43). Here, despite targeted notice of the Settlement, no Class Member has objected. Class Counsel Decl. ¶ 45; Cronin Aff. ¶ 13. This reaction of the Class to date strongly supports approval of the Settlement.

Finally, pursuant to the Settlement, Defendants' Counsel also served the CAFA Notice upon the Attorney General of the United States and the appropriate state official of each state and United States Territories in which some or all of the matters alleged in the class action are subject to regulation on March, 7 2017, within the statutory limit of ten days from Plaintiffs' filing of the request for preliminary approval of the Settlement. Chopin Decl. ¶ 3. No objections from any of these officials has been received in response to the CAFA Notice, which further

indicates the reasonableness and adequacy of the Settlement. *Id*. ¶¶ 5-6; *Noll v. eBay, Inc*., 309 F.R.D. 593, 608 (N.D. Cal. 2015) (no response to CAFA Notice "indicat[es] that such officials [] do not object to the Settlement…. Thus, this factor favors the settlement.").

> ### 3. The Stage of the Proceedings and the Amount of Discovery Completed Support Approval of the Settlement, and the Opinion of Class Counsel Is That the Settlement Is Fair and Reasonable.

It further supports final approval that Class Counsel, who are solely responsible for the development of this area of ERISA law, strongly endorse the Settlement as fair and reasonable. *See, e.g.*, *Isby*, 75 F.3d at 1200; *In re Mex. Money Transfer Litig.*, 164 F. Supp. 2d at 1020. This case has been litigated by experienced and well-respected counsel on both sides, all of whom specialize in the area of ERISA litigation—and, more specifically, in litigation concerning ERISA's "church plan" exemption. Class Counsel Decl. ¶ 11-13. Class Counsel are well known for their success in complex ERISA class action litigation and have many years of experience in litigating church plan cases. *See* Resumes of Class Counsel (attached hereto as Exhibits J, K, and L). Based on their extensive experience and expertise, and for all of the reasons articulated herein, Class Counsel believe the Settlement is in the best interests of the Class and recommend its approval. This opinion should be granted substantial weight, as the recommendations of experienced and qualified counsel favor approval of a settlement. *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d at 1020 ("The court places significant weight on the unanimously strong endorsement of these settlements by Plaintiffs' well-respected attorneys"); *see also* 5 James Wm. Moore, MOORE'S FEDERAL PRACTICE § 23.164[4] at 23-509 (3d ed. 2004) ("The more experience that class counsel possesses, the greater weight a court tends to attach to counsel's opinions on fairness, reasonableness, and adequacy").

Moreover, Class Counsel's intensive investigation before filing suit and during the negotiation process strongly favors approval of the settlement, because it demonstrates that the Settlement was derived only after Plaintiffs procured the information that Class Counsel needed to intelligently evaluate the risks and benefits of continued litigation, drawing from their extensive experience and best judgment.

For all of these reasons, the Settlement is in all respects fair, reasonable and adequate, and should be approved.

## IV.    NOTICE TO THE CLASS SATISFIED THE REQUIREMENTS OF RULE 23 AND DUE PROCESS

The Notice provided to the Class satisfied the requirements of Rule 23(c)(2)(B), which requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).

The Notice also satisfied Rule 23(e)(1), which requires that notice of a settlement be "reasonable." Fed. R. Civ. P. 23(e)(1). Notice of a settlement is reasonable if it "fairly and adequately advises the class of the terms of the proposed settlement and the process available to class members to obtain monetary relief provided by the settlement, the rights of class members to object to the settlement and/or to opt-out of the monetary relief provided by the settlement, and the rights of class members to appear before the Court at the Final Fairness Hearing." *Tucker v. Walgreen Co.*, No. 05-440-GPM, 2007 WL 2915578, at *4 (S.D. Ill. Oct. 5, 2007). Both the substance of the Summary Notice and the method of its dissemination to potential class members satisfied these standards. Class Notice also defines the class and the class claims, issues, or defenses, and appointed class counsel, as required by Rule 23(c)(2)(B).

In accordance with the Court's Preliminary Approval Order, the Settlement Administrator has disseminated 1,934 copies of the Summary Notice to Class Members.  Cronin

17

Aff. ¶ 9. The Settlement Administrator previously contacted these Class Members about their December 2015 Plan distribution. *See* Cronin Aff. ¶¶ 5, 7. This combination of individual mail to all Class Members who had received payments less than two years ago, directing Class Members to the Long Form Notice and all of the relevant settlement documents on two dedicated settlement websites, constitutes the least costly and "best notice practicable under the circumstances." It therefore satisfies the requirements of due process and Rule 23. Fed. R. Civ. P. 23(c)(2)(B). *See, e.g., CE Design v. Beaty Constr., Inc.*, No. 07 C 3340, 2009 WL 192481, at *10 (N.D. Ill. Jan. 26, 2009) ("The Federal Rules, however, require the best notice that is 'practicable,' not perfect notice.").

## V.  THE REQUIREMENTS FOR CLASS CERTIFICATION HAVE BEEN MET AND THE CLASS SHOULD BE CERTIFIED

Named Plaintiffs also respectfully request that the Class be finally certified for the purposes of settlement. The Seventh Circuit has long acknowledged the propriety of certifying a class solely for purposes of a class action settlement. "Federal courts naturally favor the settlement of class action litigation" and certification of a settlement class is a necessary part of approving a class action settlement. *Isby*, 75 F.3d at 1196. Indeed, the certification of a settlement class "has been recognized throughout the country as the best, most practical way to effectuate settlements involving large numbers of claims by relatively small claimants." *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 205 (S.D.N.Y. 1995). "[S]ettlement classes are favored when there is little or no likelihood of abuse, and the settlement is fair and reasonable and under the scrutiny of the trial judge." *Id*. (quoting *In re Beef Indus. Antitrust Litig.*, 607 F.2d 167, 174 (5th Cir. 1979)). A settlement class, like other certified classes, must satisfy all the requirements of Rule 23(a) and (b). Here, those requirements are easily met.

A.      **The Settlement Class Meets the Requirements of Rule 23(a).**

*Numerosity*. Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Defendants have identified, and the Class Notice has been sent to, 1,934 members of the Settlement Class. *See* Cronin Aff. ¶ 9. Thus, the element of numerosity is met. *See, e.g., Jackson v. Sheriff of Cook Cty.,* No. 06 C 0493, 2006 WL 3718041, at *3 (N.D. Ill. Dec. 14, 2006) ("While there is no set minimum number of plaintiffs required for class certification, Courts have generally recognized that joinder is impracticable where a class contains more than 40 members."); *Lukas v. Advocate Health Care Network & Subsidiaries,* No. 1:14-CV-2740, 2015 WL 5006019, at *4 (N.D. Ill. Aug. 19, 2015) (certifying an ERISA class of 282 members); *c.f. Gaspar v. Linvatec Corp.,* 167 F.R.D. 51, 56 (N.D. Ill. 1996) (certifying an ERISA class of 18 members).

*Commonality*. Rule 23(a)(2) requires that there be "questions of law or fact common to the class," and "[a] common nucleus of operative fact is usually enough to satisfy" this requirement. *Keele v. Wexler,* 149 F.3d 589, 594 (7th Cir. 1998) (quoting *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992)). In the instant case, members of the Settlement Class share multiple issues of law and fact, such as whether the Plan is exempt from ERISA as a church plan,; if not, whether the fiduciaries of the Plan failed to administer and fund the Plan in accordance with ERISA; whether the fiduciaries of the Plan improperly terminated the Plan without complying with ERISA; and whether Defendants are liable for unfunded benefits under the Plan. The core questions and issues are common to the Settlement Class. Thus, commonality is satisfied.

*Typicality.* The typicality element broadly requires "that the claims or defenses of the representative party be typical of the claims or defenses of the class." *Muro v. Target Corp.*, 580 F.3d 485, 492 (7th Cir. 2009). "A claim is typical if it 'arises from the same event or practice or course of conduct that gives rise to the claims of other class members and ... [the] claims are based on the same legal theory.'" *Oshana v. Coca-Cola Co.,* 472 F.3d 506, 514 (7th Cir. 2006) (internal citations omitted). Here, Plaintiffs' claims arise from the same course of events as the

19

claims of the Settlement Class—Defendants' alleged failure to administer, fund, and terminate the Plan in accordance with ERISA. Accordingly, typicality is met.

*Adequacy*. Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class," which "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem Prods. v. Windsor*, 521 U.S. 591, 625 (1997). The "adequacy" test is easily met in this case. The claims and interests of the Named Plaintiffs were congruent with those of the other members of the Settlement Class: all seek to enhance their retirement security under this Plan. There can be no question that the Named Plaintiffs' interests are aligned with those of the Settlement Class and that they have retained qualified counsel with extensive experience representing plaintiffs in class litigation, including ERISA cases and Church Plan cases specifically. Class Counsel Decl. ¶¶ 14, 17, Exs. J, K, L. Accordingly, this class action satisfies all the requirements of Rule 23(a).

**B.      The Class Satisfies the Requirements of Rule 23(b)(1).**

A class may be certified under Federal Rule of Civil Procedure 23(b)(1) if, in addition to meeting the requirements of Federal Rule of Civil Procedure 23(a), the prosecution of separate actions by individual class members would create the risk of inconsistent adjudications, which would create incompatible standards of conduct for the defendant, or would as a practical matter be dispositive of the interests of absent members. Fed. R. Civ. P. 23(b)(1)(A) & (B). Here, the risk of inconsistent adjudications and incompatible standards is obvious: in the absence of certification, two participants could bring identical actions and achieve different results, with one court holding that the Plans are ERISA-regulated and the other holding that they are not. As this Court has noted, "ERISA class actions are commonly certified under either or both subsections of 23(b)(1) because recovery for a breach of the fiduciary duty owed to an ERISA plan, as is the predominant claim here, will inure to the plan as a whole, and because defendant-fiduciaries are entitled to consistent rulings regarding operation of the plan." *Neil v. Zell*, 275 F.R.D. 256, 267

(N.D. Ill. 2011); *see also Brieger v. Tellabs, Inc*., 245 F.R.D. 345, 348 (N.D. Ill. 2007) (certifying a 23(b)(1) class in an ERISA case alleging breach of fiduciary duty for imprudent investment decisions); *Loomis v. Exelon Corp.*, No. 06 C 4900, 2007 WL 2060799, at *1, 5 (N. D. Ill. June 26, 2007) (certifying a 23(b)(1) class alleging breach of fiduciary duty for charging excessive fees and making imprudent investment decisions); *Baker v. Kingsley*, No. 03 C 1750, 2007 WL 1597654, at *5 (N. D. Ill. May 31, 2007) ("Because the relief sought by plaintiffs involves the recovery and distribution of plan assets, separate actions by individual plaintiffs would impair the ability of other class members to protect their interests. Plaintiffs therefore meet the requirements of 23(b)[(1)]."); *Smith v. Aon Corp*., 238 F.R.D. 609, 613 (N. D. Ill. 2006) (certifying ESOP class action under 23(b)(1)). As a result, certification of the proposed class under Rule 23(b)(1) is appropriate in this ERISA action.

### C.  Class Counsel Meets the Requirements of Rule 23(g).

Federal Rule of Civil Procedure 23(g) requires the Court to examine the capabilities and resources of Class Counsel.  Class Counsel have detailed the claims brought in this action, and the time and effort already expended in connection with this litigation.  *See supra* Section II; *see also* Class Counsel Decl. ¶ 51.  Moreover, Class Counsel are among the leading ERISA plaintiffs' firms, and possess unparalleled expertise in the specific types of ERISA claims brought in this lawsuit.  Class Counsel Decl. ¶¶ 11-13; Exs. J, K, L.  Class Counsel thus satisfy the requirements of Rule 23(g).

### VI.  CONCLUSION

For the foregoing reasons, Plaintiffs respectfully submit that the Settlement should be granted final approval because it is a fair and reasonable result when viewed against the governing standard.  Moreover, the Settlement Class meets all the requirements of Rule 23 and should be finally certified.

Dated: May 15, 2017

By: _/s/ Julie Goldsmith Reiser_____
    Julie Goldsmith Reiser

    Karen L. Handorf
    Julie G. Reiser
    COHEN MILSTEIN SELLERS & TOLL, PLLC
    1100 New York Ave., NW, Suite 500 West
    Washington, DC 20005
    Tel: (202) 408-4600
    Fax: (202) 408-4699
    Email: khandorf@cohenmilstein.com
           jreiser@cohenmilstein.com

    Lynn L. Sarko
    KELLER ROHRBACK L.L.P.
    1201 Third Avenue, Suite 3200
    Seattle, WA 98101
    Tel: (206) 623-1900
    Fax: (206) 623-3384
    Email: lsarko@kellerrohrback.com

    Mark D. DeBofsky
    DEBOFSKY, SHERMAN & CASCIARI, PC
    200 W. Madison Street, Suite 2670
    Chicago, IL 60606
    Tel: (312) 561-4040
    Fax: (312) 929-0309
    Email: mdebofsky@debofsky.com

    *Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I certify that on May 15, 2017, I electronically filed the foregoing with the Clerk of the

Court using the CM/ECF system which will send notification of such filing to all counsel of

record.

<u>s/ Julia Horwitz</u>